APPEAL,CONSOL,TYPE–L

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00946–CKK</u>
### *Internal Use Only*

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS et al v. EXECUTIVE OFFICE OF THE PRESIDENT et al | Date Filed: 03/31/2025 |
| | Jury Demand: None |
| Assigned to: Judge Colleen Kollar–Kotelly | Nature of Suit: 441 Voting |
| Member cases: | Jurisdiction: U.S. Government Defendant |

Member cases:
   1:25–cv–00952–CKK
   1:25–cv–00955–CKK

Related Cases:  1:25–cv–00952–CKK
                    1:25–cv–00955–CKK

Cause: 28:1331 Fed. Question

**<u>Plaintiff</u>**

**LEAGUE OF UNITED LATIN AMERICAN CITIZENS**      represented by  **Jacob Kovacs–Goodman**
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, DC 20003
202–594–9958
Email: jacob@statedemocracydefenders.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, DC 20003
202–594–9958
Email: norman@statedemocracydefenders.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pooja Chaudhuri**
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, DC 20003
202–594–9958
Email: pooja@statedemocracydefenders.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
ACLU FOUNDATION OF THE

1

DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, DC 20045
202–601–4267
Email: smichelman@acludc.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia Fernandez Gold**
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, DC 20003
202–594–9958
Email: Sofia@statedemocracydefenders.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tianna Jade Mays**
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Ave SE
Unit 15180
Washington, DC 20003
202–662–8383
Email: Tianna@statedemocracydefenders.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Marks Baldwin**
CAMPAIGN LEGAL CENTER
1101 14th St. NW
Suite 400
Washington, DC 20005
202–736–2200
Fax: 202–736–2222
Email: abaldwin@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Benjamin Phillips**
CAMPAIGN LEGAL CENTER
1101 14th St. NW
Suite 400
Washington, DC 20005
202–683–4895
Email: bphillips@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Heather Szilagyi**
CAMPAIGN LEGAL CENTER
1101 14th St. NW
Suite 400
Washington, DC 20005

202–736–2200
Email: hszilagyi@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Jon M. Greenbaum**
JUSTICE LEGAL STRATEGIES PLLC
P.O. Box 27015
Washington, DC 20038–7015
202–601–8678
Email: jgreenbaum@justicels.com
*ATTORNEY TO BE NOTICED*

**Jonathan M. Diaz**
CAMPAIGN LEGAL CENTER
1101 14th Street, NW
Suite 400
Washington, DC 20005
(202) 868–4758
Email: jdiaz@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
3465 Holmead Place NW
Washington, DC 20010
918–576–4318
Email: bferguson@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
CAMPAIGN LEGAL CENTER
1101 14th Street, NW
Suite 400
Washington, DC 20005
(202) 736–2200
Fax: (202) 736–2222
Email: dlang@campaignlegalcenter.org
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**SECURE FAMILIES INITIATIVE**          represented by   **Jacob Kovacs–Goodman**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Norman Larry Eisen**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Pooja Chaudhuri**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Sofia Fernandez Gold**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tianna Jade Mays**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Marks Baldwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Szilagyi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon M. Greenbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan M. Diaz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ARIZONA STUDENTS'**
**ASSOCIATION**

represented by **Jacob Kovacs–Goodman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Norman Larry Eisen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Pooja Chaudhuri**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sofia Fernandez Gold**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tianna Jade Mays**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anna Marks Baldwin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Benjamin Phillips**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Heather Szilagyi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jon M. Greenbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan M. Diaz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Brent Ferguson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LEAGUE OF WOMEN VOTERS OF**          represented by   **Andrew Garber**
**THE UNITED STATES**                                   BRENNAN CENTER FOR JUSTICE AT
                                                        NYU SCHOOL OF LAW
                                                        120 Broadway
                                                        Suite 1750
                                                        New York, NY 10271
                                                        301–525–1572
                                                        Email: andrew.garber@nyu.edu
                                                        *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eliza Sweren–Becker**
BRENNAN CENTER FOR JUSTICE
120 Broadway
New York, NY 10271
917–597–9040
Email: sweren–beckere@brennan.law.nyu.edu
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
AMERICAN CIVIL LIBERTIES UNION
Voting Rights Project
915 15th Street NW
Washington, DC 20005
740–632–0671
Email: mkeenan@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Voting Rights Project
125 Broad Street
Ste 18th Floor
New York, NY 10004
212–519–7836
Email: slakin@aclu.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Weiser**
BRENNAN CENTER FOR JUSTICE
120 Broadway
New York, NY 10271
646–292–8318
Email: weiserw@brennan.law.nyu.edu

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
AMERICAN CIVIL LIBERTIES UNION
OF DC
529 14th Street NW
Ste 722
Washington, DC 20045
202–457–0800
Email: ashah@acludc.org
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
ADVANCING JUSTICE – AAJC
1620 L Street NW
Ste 1050
Washington, DC 20036
202–868–1636
Email: aahmad@advancingjustice–aajc.org
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street
Ste 5th Floor
New York, NY 10006
212–965–2233
Email: bwright@naacpldf.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
LATINOJUSTICE PRLDEF
475 Riverside Drive
Suite 1901
New York, NY 10115
212–392–4752
Email: cruiz@latinojustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St
17th Fl
Ste 1769
New York, NY 10004
510–520–8501

Email: cpierce@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
212–549–2613
Email: drosborough@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
LATINOJUSTICE PRLDEF
4700 Millenia Blvd.
Suite 500
Orlando, FL 32839
321–418–6354
Email: dalicea@latinojustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
908–246–3198
Email: eherenstein@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
603–277–0314
Email: jvanleer@aclu.org
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
BRENNAN CENTER FOR JUSTICE
120 Broadway
New York, NY 10271
646–292–8389
Email: singhj@brennan.law.nyu.edu
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector St
5th Floor
New York, NY 10006
212–965–2200
Email: jcusick@naacpldf.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street
18th Floor
New York, NY 10004
212–549–2640
Email: jtopaz@aclu.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND,
INCORPORATED
40 Rector Street
5th Floor
New York, NY 10006
(212) 965–2200
Fax: (212) 226–7592
Email: laden@naacpldf.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
777 6th Street NW
Suite 1100
Washington, DC 20001
202–650–6397
Email: tulinl@brennan.law.nyu.edu
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
529 14th Street NW
Suite 722

Washington, DC 20045
202–457–0800
Email: mperloff@acludc.org
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
LATINOJUSTICE PRLDEF
Southeast Regional Office
743 41st Ave NE
St Petersburg, FL 33703
917–209–7834
Email: mgalindo@latinojustice.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
ASIAN AMERICANS ADVANCING
JUSTICE–AAJC
1620 L Street, NW
Ste 1050
Washington, DC 20036
202–815–1098
Email: nshah@advancingjustice–aajc.org
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
BRENNAN CENTER FOR JUSTICE
120 Broadway
New York, NY 10271
646–292–8363
Email: morales–doyles@brennan.law.nyu.edu
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LEAGUE OF WOMEN VOTERS OF ARIZONA**          represented by    **Andrew Garber**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eliza Sweren–Becker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Weiser**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HISPANIC FEDERATION**                    represented by **Alizeh Ahmad**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Delmarie Alicea**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Jacob Van Leer**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Michael Krevans Perloff**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Miranda Galindo**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Niyati Shah**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Sean Morales–Doyle**
                                                        (See above for address)
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**NATIONAL ASSOCIATION FOR**          represented by **Andrew Garber**
**THE ADVANCEMENT OF**                                 (See above for address)
**COLORED PEOPLE**                                     *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Danielle M. Lang**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Eliza Sweren–Becker**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *PRO HAC VICE*
                                                        *ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**OCA ASIAN PACIFIC AMERICAN ADVOCATES**    represented by  **Andrew Garber**
(See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eliza Sweren–Becker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **HISPANIC FEDERATION** | represented by | **Andrew Garber** |

(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eliza Sweren–Becker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*

*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LEAGUE OF WOMEN VOTERS**           represented by   **Andrew Garber**
**EDUCATION FUND**                                   (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Danielle M. Lang**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Eliza Sweren–Becker**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Megan Christine Keenan**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Scott Michelman**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Sophia Lin Lakin**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Wendy Weiser**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Krevans Perloff**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ASIAN AND PACIFIC ISLANDER AMERICAN VOTE**

represented by **Andrew Garber**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Danielle M. Lang**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eliza Sweren–Becker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Megan Christine Keenan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Scott Michelman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Aditi Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Alizeh Ahmad**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Brenda Wright**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Cesar Z. Ruiz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Clayton Pierce**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Davin McKay Rosborough**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Delmarie Alicea**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ethan Herenstein**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jacob Van Leer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen Kaur Singh**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**John Spencer Cusick**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jonathan Topaz**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah C. Aden**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Leah J. Tulin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Miranda Galindo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Niyati Shah**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Morales–Doyle**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| **DEMOCRATIC NATIONAL COMMITEE** | represented by | **Lalitha Madduri**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001<br>202–968–4593<br>Email: lmadduri@elias.law<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Marc Erik Elias**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001<br>202–968–4510<br>Email: eliasm@elias.law<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Aria C. Branch**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001<br>202–968–4518<br>Email: abranch@elias.law<br>*ATTORNEY TO BE NOTICED*<br><br>**Christopher D. Dodge**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001<br>202–987–4928<br>Email: cdodge@elias.law<br>*ATTORNEY TO BE NOTICED*<br><br>**Harleen Kaur Gambhir**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001<br>202–968–4490<br>Email: hgambhir@elias.law<br>*ATTORNEY TO BE NOTICED*<br><br>**Jacob D. Shelly**<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Avenue NW<br>Suite 400<br>Washington, DC 20001 |

202–968–4496
Email: jshelly@elias.law
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–987–5634
Email: jpinchak@elias.law
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
203–451–1615
Email: jzuckerbrod@elias.law
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
ELIAS LAW GROUP LLP
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
202–985–0628
Email: tbishop@elias.law
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DEMOCRATIC GOVERNORS ASSOCIATION**

represented by **Lalitha Madduri**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harleen Kaur Gambhir**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob D. Shelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DSCC**                                represented by    **Lalitha Madduri**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harleen Kaur Gambhir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob D. Shelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DCCC**                          represented by   **Lalitha Madduri**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harleen Kaur Gambhir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob D. Shelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHARLES E. SCHUMER**           represented by   **Lalitha Madduri**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harleen Kaur Gambhir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob D. Shelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**HAKEEM S. JEFFRIES**                represented by    **Lalitha Madduri**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Aria C. Branch**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christopher D. Dodge**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Harleen Kaur Gambhir**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob D. Shelly**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Justin Pinchak**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Julie Zuckerbrod**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tyler Bishop**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EXECUTIVE OFFICE OF THE
PRESIDENT**                    represented by    **Bridget O'Hickey**
U.S. DEPARTMENT OF JUSTICE
Civil Division
950 Pennsylvania Avenue, NW
Washington, DC 20530−0001
202−856−4511
Email: bridget.k.ohickey@usdoj.gov
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
DOJ−Civ
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street NW, Ste 12th Floor, #12102
Washington, DC 20005
202−353−1819
Email: marianne.f.kies@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**

DOJ–Crt
950 Pennsylvania Avenue, NW
Washington, DC 20530–0001
714–458–5591
Email: michael.gates2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
DOJ–Crt
950 Pennsylvania Ave NW
Washington DC, DC 20530
202–550–5305
Email: andrew.darlington@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
DOJ
FEDERAL PROGRAMS BRANCH –
Civil Division
1100 L Street, N.W.
Washington, DC 20005
202–353–5980
Email: christian.r.dibblee@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Winston Shi**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202–880–0387
Email: winston.g.shi@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**UNITED STATES ELECTION**      represented by   **Bridget O'Hickey**
**ASSISTANCE COMMISSION**                        (See above for address)
                                                 *TERMINATED: 10/24/2025*
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Marianne F. Kies**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Michael Gates**
                                                 (See above for address)
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BRIANNA SCHLETZ**                    represented by    **Bridget O'Hickey**
*in her official capacity as Executive*                  (See above for address)
*Director of the United States Election*                 *TERMINATED: 10/24/2025*
*Assistance Commission*                                  *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Marianne F. Kies**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Michael Gates**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Andrew Darlington**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Christian Dibblee**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Winston Shi**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**DONALD PALMER**                      represented by    **Bridget O'Hickey**
*in his official capacity as Commissioner*               (See above for address)
*and Chairman of the United States*                      *TERMINATED: 10/24/2025*
*Election Assistance Commission*                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Marianne F. Kies**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**THOMAS HICKS**                     represented by   **Bridget O'Hickey**
*in his official capacity as Commissioner*          (See above for address)
*and Vice−Chair of the United States*               *TERMINATED: 10/24/2025*
*Election Assistance Commission*                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**CHRISTY MCCORMICK**                represented by   **Bridget O'Hickey**
*in her official capacity as Commissioner*          (See above for address)

*of the United States Election Assistance Commission*

*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**BENJAMIN HOVLAND**
*in his official capacity as Commissioner of the United States Election Assistance Commission*

represented by   **Bridget O'Hickey**
(See above for address)
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**          represented by    **Bridget O'Hickey**
(See above for address)
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**          represented by    **Bridget O'Hickey**
*in her official capacity as Attorney*          (See above for address)
*General of the United States*          *TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**US DEPARTMENT OF DEFENSE**　　　represented by　**Bridget O'Hickey**
(See above for address)
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**PETER B. HEGSETH**　　　represented by　**Bridget O'Hickey**
*in his official capacity as United States*　　　(See above for address)
*Secretary of Defense*　　　*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**FEDERAL VOTING ASSISTANCE PROGRAM**

represented by **Bridget O'Hickey**
(See above for address)
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**J. SCOTT WIEDMANN**
*in his official capacity as Director of the*
*Federal Voting Assistance Program*

represented by **Bridget O'Hickey**
(See above for address)
*TERMINATED: 10/24/2025*
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Marianne F. Kies**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Gates**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew Darlington**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christian Dibblee**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Winston Shi**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**REPUBLICAN NATIONAL COMMITTEE**                    represented by    **Thomas R. McCarthy**
CONSOVOY MCCARTHY, PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
703–243–9423
Email: tom@consovoymccarthy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Conor Woodfin**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
806–773–0286
Email: conor@consovoymccarthy.com
*ATTORNEY TO BE NOTICED*

**Gilbert Dickey**
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
22201

Arlington, VA 22201
703−243−9423
Email: gilbert.dickey@gmail.com
*ATTORNEY TO BE NOTICED*

**William Bock , IV**
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd.
Suite 700
Arlington, VA 22209
703−243−9423
Email: wbock@consovoymccarthy.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Movant**

**CONSTITUTIONAL                    represented by  Brianne Jenna Gorod**
**ACCOUNTABILITY CENTER**                          CONSTITUTIONAL
                                                   ACCOUNTABILITY CENTER
                                                   1730 Rhode Island Ave. NW
                                                   Suite 1200
                                                   Washington, DC 20005
                                                   202−296−6889
                                                   Email: brianne@theusconstitution.org
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Amicus**

**BIPARTISAN FORMER STATE           represented by  Alex Matthew Goldstein**
**SECRETARIES OF STATE**                           CITIZENS FOR RESPONSIBILITY AND
                                                   ETHICS IN WASHINGTON (CREW)
                                                   1331 F St. NW Suite 900
                                                   Washington, DC 20004
                                                   202−408−5565
                                                   Email: agoldstein@citizensforethics.org
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **John B. Hill**
                                                   CITIZENS FOR RESPONSIBILITY AND
                                                   ETHICS IN WASHINGTON
                                                   PO Box 14596
                                                   Washington, DC 20044
                                                   202−408−5565
                                                   Email: jhill@citizensforethics.org
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Kalyn Mizelle McDaniel**
                                                   CITIZENS FOR RESPONSIBILITY AND

ETHICS IN WASHINGTON
1331 F Street NW
Washington, DC 20004
512–630–4061
Email: kmizellemcdaniel@citizensforethics.org
*TERMINATED: 08/01/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**RESTORING INTEGRITY AND
TRUST IN ELECTIONS, INC.**

represented by **Kory A. Langhofer**
STATECRAFT PLLC
649 North 4th Ave.
Suite B
Phoenix, AZ 85003
602–571–4275
Email: kory@statecraftlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**REPUBLICAN PARTY OF
ARIZONA, LLC**

represented by **Kory A. Langhofer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LAWYERS DEFENDING
AMERICAN DEMOCRACY, INC**

represented by **Aderson Bellegarde Francois**
GEORGETOWN UNIVERSITY LAW
CENTER
Civil Rights Clinic
600 New Jersey Avenue, NW
Suite 352
Washington, DC 20001
(202) 661–6721
Fax: 202–662–9634
Email: aderson.francois@georgetown.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ROBERT THOMAS PETERSON**

represented by **ROBERT THOMAS PETERSON**
1825 Tamiami Trail
Unit J #1014
Port Charlotte, FL 33948
PRO SE

| Date Filed | # | Docket Text |
|---|---|---|
| 03/31/2025 | 1 | |

| | | |
|---|---|---|
| | | COMPLAINT against All Defendants ( Filing fee $ 405 receipt number ADCDC−11579551) filed by SECURE FAMILIES INITIATIVE, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ARIZONA STUDENTS' ASSOCIATION. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Summonses for All Defendants)(Lang, Danielle) (Entered: 03/31/2025) |
| 04/01/2025 | | NOTICE OF NEW CASE ERROR regarding 1 Complaint,. The following error(s) need correction: Noncompliance with LCvR 5.1(c). Please file a Notice of Errata stating the error and attach the corrected initiating pleading to include the name & full residence address of each party and file using the event Errata. **COMPLIANCE DEADLINE is by close of business today. This case will not proceed any further until all errors are satisfied.** (zmtm) (Entered: 04/01/2025) |
| 04/01/2025 | 2 | ERRATA by LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE, ARIZONA STUDENTS' ASSOCIATION. (Attachments: # 1 Errata Corrected Complaint)(Lang, Danielle) (Entered: 04/01/2025) |
| 04/01/2025 | 3 | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 1:25−cv−952. (Lang, Danielle) (Entered: 04/01/2025) |
| 04/01/2025 | 4 | NOTICE OF RELATED CASE by All Plaintiffs. Case related to Case No. 1:25−cv−955. (Lang, Danielle) (Entered: 04/01/2025) |
| 04/01/2025 | 5 | NOTICE of Appearance by Jonathan M. Diaz on behalf of All Plaintiffs (Diaz, Jonathan) (Entered: 04/01/2025) |
| 04/01/2025 | 6 | NOTICE of Appearance by Heather Szilagyi on behalf of All Plaintiffs (Szilagyi, Heather) (Entered: 04/01/2025) |
| 04/01/2025 | | Case Assigned to Judge Colleen Kollar−Kotelly. (zmtm) (Entered: 04/01/2025) |
| 04/01/2025 | 7 | SUMMONS (14) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 04/01/2025) |
| 04/01/2025 | 8 | ORDER ESTABLISHING PROCEDURES FOR CIVIL CASES ASSIGNED TO JUDGE COLLEEN KOLLAR−KOTELLY. Signed by Judge Colleen Kollar−Kotelly on 04/01/2025. (lcckk1) (Entered: 04/01/2025) |
| 04/01/2025 | 9 | NOTICE of Appearance by Pooja Chaudhuri on behalf of LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE, ARIZONA STUDENTS' ASSOCIATION (Chaudhuri, Pooja) (Entered: 04/01/2025) |
| 04/01/2025 | 10 | NOTICE of Appearance by Norman Larry Eisen on behalf of All Plaintiffs (Eisen, Norman) (Entered: 04/01/2025) |
| 04/02/2025 | 11 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/1/2025. Answer due for ALL FEDERAL DEFENDANTS by 5/31/2025. (Lang, Danielle) (Entered: 04/02/2025) |
| 04/03/2025 | 12 | MEMORANDUM OPINION & ORDER granting Plaintiffs' Motion to Consolidate, ECF No. 18 (Case No. 25−cv−0952). The cases *League of United Latin American Citizens et al. v. Executive Office of the President et al.*, No. 25−cv−0946, *Democratic National Committee et al. v. Trump et al.*, No. 25−cv−0952, and *League of Women Voters Education Fund et al. v. Trump et al.*, No. 25−cv−0955, are |

| | | |
|---|---|---|
| | | CONSOLIDATED for purposes of adjudication in this Court. The parties shall make all future filings in these cases only on the docket for the earliest–numbered case, Civil Action No. 25–cv–0946, and the parties shall make no further filings on the dockets for Civil Action Nos. 25–cv–0952 and 25–cv–0955. See Memorandum Opinion and Order for further details. Signed by Judge Colleen Kollar–Kotelly on 04/03/2025. (lcckk1) (Entered: 04/03/2025) |
| 04/03/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Anna Baldwin, Filing fee $ 100, receipt number ADCDC–11588122. Fee Status: Fee Paid. by LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE, ARIZONA STUDENTS' ASSOCIATION. (Attachments: # 1 Declaration Attorney Declaration of Anna Baldwin, # 2 Text of Proposed Order, # 3 Exhibit Certificate of Good Standing of Anna Baldwin)(Lang, Danielle) (Entered: 04/03/2025) |
| 04/03/2025 | | MINUTE ORDER: For good cause shown, the 13 Motion for Leave to Appear *Pro Hac Vice* filed on behalf of Attorney Anna Baldwin is GRANTED, CONTINGENT ON Attorney Baldwin filing a declaration certifying her familiarity with the Local Rules of this Court on or before **April 9, 2025**. Because Attorney Baldwin is an active member of the District of Columbia Bar practicing on behalf of an organization with an office in this District and has a filed an application admission to this Court's Bar, Attorney Baldwin's admission *pro hac vice* is also CONTINGENT on her becoming a full member of this Court's Bar no later than **May 9, 2025**. **Counsel shall promptly register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 04/03/2025. (lcckk1) (Entered: 04/03/2025) |
| 04/03/2025 | | Cases Consolidated: The following cases have been consolidated with this case: 25–cv–00952–CKK and 25–cv–00955–CKK, pursuant to 12 Order on Motion to Consolidate Cases. From this date forward, all pleadings shall be filed ONLY in this case. Parties are advised NOT to elect the SPREAD TEXT option when filing in ECF, as this will result in repetitive docketing. (zjm) (Entered: 04/04/2025) |
| 04/04/2025 | 14 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. US DEPARTMENT OF DEFENSE served on 4/3/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 15 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. US DEPARTMENT OF JUSTICE served on 4/3/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES ELECTION ASSISTANCE COMMISSION served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 17 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. FEDERAL VOTING ASSISTANCE PROGRAM served on 4/3/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 18 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PETE HEGSETH served on 4/3/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 19 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. THOMAS HICKS served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 20 | |

| | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BENJAMIN HOVLAND served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
|---|---|---|
| 04/04/2025 | 21 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CHRISTY MCCORMICK served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 22 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD PALMER served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 23 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BRIANNA SCHLETZ served on 4/2/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 24 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. J. SCOTT WIEDMANN served on 4/3/2025 (Lang, Danielle) (Entered: 04/04/2025) |
| 04/04/2025 | 25 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jasleen K. Singh, Filing fee $ 100, receipt number ADCDC–11592887. Fee Status: Fee Paid. by LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ARIZONA, Hispanic Federation, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Tulin, Leah) (Entered: 04/04/2025) |
| 04/04/2025 | 26 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Sean Morales–Doyle, Filing fee $ 100, receipt number ADCDC–11592931. Fee Status: Fee Paid. by LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ARIZONA, Hispanic Federation, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Tulin, Leah) (Entered: 04/04/2025) |
| 04/04/2025 | 27 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Eliza M. Sweren–Becker, Filing fee $ 100, receipt number ADCDC–11592939. Fee Status: Fee Paid. by LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ARIZONA, Hispanic Federation, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Tulin, Leah) (Entered: 04/04/2025) |
| 04/04/2025 | 28 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Wendy R. Weiser, Filing fee $ 100, receipt number ADCDC–11593015. Fee Status: Fee Paid. by LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ARIZONA, Hispanic Federation, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Tulin, Leah) (Entered: 04/04/2025) |
| 04/04/2025 | | MINUTE ORDER: For good cause shown, the 25 , 26 , 27 , and 28 Motions for Leave to Appear *Pro Hac Vice* filed on behalf of Attorneys Jasleen K. Singh, Sean Morales–Doyle, Eliza M. Sweren–Becker, and Wendy R. Weiser are GRANTED, CONTINGENT ON Attorneys Singh, Morales–Doyle, Sweren–Becker, and Weiser filing declarations certifying their familiarity with the Local Rules of this Court on or before **April 11, 2025**. **Counsel shall promptly register for e–filing via PACER and file notices of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 04/04/2025. (lcckk1) (Entered: 04/04/2025) |
| 04/04/2025 | 29 | NOTICE OF RELATED CASE by All Defendants. Case related to (Darlington, Andrew) (Entered: 04/04/2025) |

| 04/04/2025 | 30 | Emergency MOTION to Clarify *The Consolidation Order*, MOTION to Expedite *Hearing and Briefing on Plaintiffs' Motion for Preliminary Injunction* by LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE, ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, LEAGUE OF WOMEN VOTERS OF ARIZONA, Hispanic Federation, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Text of Proposed Order)(Perloff, Michael) (Entered: 04/04/2025) |
|---|---|---|
| 04/05/2025 | 31 | ORDER granting, in part, and deferring ruling on, in part, the 30 Emergency Motion filed by the League Plaintiffs and the LULAC Plaintiffs. The League Plaintiffs and LULAC Plaintiffs may brief the issues in this case separately from the Democratic Party Plaintiffs. The League Plaintiffs and LULAC Plaintiffs shall file their Motion for a Preliminary Injunction on or before **April 7, 2025**. The Democratic Party Plaintiffs shall file their separate Motion for a Preliminary Injunction on or before **April 7, 2025**. The Defendants shall file any Memoranda in Opposition to the Plaintiffs' separate Motions on or before **April 14, 2025**. The Plaintiffs shall file any replies in support of their separate Motions on or before **April 16, 2025**. The Court shall set a hearing on the Plaintiffs' forthcoming Motions by further order. See Order for further details. Signed by Judge Colleen Kollar–Kotelly on 04/05/2025. (lcckk1) (Entered: 04/05/2025) |
| 04/05/2025 | 32 | NOTICE of Appearance by Scott Michelman on behalf of Hispanic Federation, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Michelman, Scott) (Entered: 04/05/2025) |
| 04/07/2025 | 33 | SUMMONS (1) Issued Electronically as to U.S. Attorney General (Attachment: # 1 Notice and Consent)(zjm) (Entered: 04/07/2025) |
| 04/07/2025 | 34 | Joint MOTION for Preliminary Injunction *of League and LULAC Plaintiffs* by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 – EAC Mem. of Decision (Dkt. No. EAC–2013–0004), # 3 Exhibit 2 – Exec. Order No. 14248, 90 Fed. Reg. 14,005, # 4 Exhibit 3 – Brennan Center for Justice, House Bill Would Hurt American Voters, # 5 Exhibit 4 – YouGov, Adults Under 30 Are More Likely Than Older Americans to Have a Current U.S. Passport, # 6 Exhibit 5 – Declaration of Tyler Sterling (NAACP), # 7 Exhibit 6 – Bur. of Consular Affairs, Passport Fees, # 8 Exhibit 7 – Bur. Of Consular Affairs, Get Your Processing Time, # 9 Exhibit 8 – Bay Area News Grp., Can Californias Real ID Be Used as Proof of U.S. Citizenship, # 10 Exhibit 9 – DHS, Enhanced Drivers Licenses, # 11 Exhibit 10 – VT DMV, Drivers License Fees, # 12 Exhibit 11 – DoD, Next Generation Uniformed Services ID Card, # 13 Exhibit 12 – Declaration of Sarah Streyder (Secure Families Initiative), # 14 Exhibit 13 – Pew Research Center, About 8 in 10 Women in Opposite–Sex Marriages Say They Took Their Husbands Last Name, # 15 Exhibit 14 – Ian Vandewalker, The Effects of Requiring Documentary Proof of Citizenship to Register to Vote, # 16 Exhibit 15 – |

| | | |
|---|---|---|
| | | UCLA School of Law, Williams Institute, How Many Adults and Youth Identify as Transgender in the United States, # 17 Exhibit 16 – Susan J. Pearson, The Birth Certificate – An American History (Chapter 8), # 18 Exhibit 17 – Betsy L. Fisher, Citizenship, Federalism, and Delayed Birth Registration in the United States, # 19 Exhibit 18 – SSA, Acceptance of Puerto Rico Birth Certificates, # 20 Exhibit 19 – Declaration of Frankie Miranda (Hispanic Federation), # 21 Exhibit 20 – AZ SOS, Arizona Voter Registration Instructions, # 22 Exhibit 21 – AZ SOS, Registration Requirements, # 23 Exhibit 22 – Declaration of Pinny Sheoran (LWVAZ), # 24 Exhibit 23 – Declaration of Juan Proano (LULAC), # 25 Exhibit 24 – Declaration of Kyle Nitschke (ASA), # 26 Exhibit 25 – AZ SOS, Federal Only Registrants as of January 2, 2025, # 27 Exhibit 26 – Jen Fifield, Longtime Arizona Voters Receive Letters Asking for Proof of Citizenship, # 28 Exhibit 27 – Wayne Schutsky, Arizona Counties Are Contacting 200,000 Voters Who Havent Provided Proof of Citizenship, # 29 Exhibit 28 – Declaration of Celina Stewart (LWV), # 30 Exhibit 29 – Declaration of Thu Nguyen (OCA), # 31 Exhibit 30 – Declaration of Christine Chen (APIAVote), # 32 Exhibit 31 – AZ SOS, 2025 Cong. Dist. 7 Special Primary and Special General Election Information, # 33 Text of Proposed Order)(Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | 35 | NOTICE of Appearance by Megan Christine Keenan on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Leah C. Aden, Filing fee $ 100, receipt number ADCDC–11594860. Fee Status: Fee Paid. by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of Leah Aden, # 2 Certificate of Good Standing)(Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | 37 | DECLARATION *of Attorney Anna Baldwin in support of Pro Hac Vice Admission* by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Baldwin, Anna) (Entered: 04/07/2025) |
| 04/07/2025 | 38 | NOTICE of Appearance by Anna Marks Baldwin on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Baldwin, Anna) (Entered: 04/07/2025) |
| 04/07/2025 | 39 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– John S. Cusick, Filing fee $ 100, receipt number ADCDC–11594892. Fee Status: Fee Paid. by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED |

| | | |
|---|---|---|
| | | PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of John Cusick, # 2 Certificate of Good Standing)(Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | 40 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Brenda Wright, Filing fee $ 100, receipt number ADCDC–11594902. Fee Status: Fee Paid. by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of Brenda Wright, # 2 Certificate of Good Standing)(Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | 41 | NOTICE of Appearance by Robert Brent Ferguson on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Ferguson, Robert) (Entered: 04/07/2025) |
| 04/07/2025 | 42 | ERRATA *Correcting Cover Page of Exhibit 5* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES re 34 Motion for Preliminary Injunction,,,,,,,,,,,. (Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | | MINUTE ORDER: For good cause shown, the 36 , 39 , and 40 Motions for Leave to Appear *Pro Hac Vice* filed on behalf of Attorneys Leah C. Aden, John S. Cusick, and Brenda Wright are GRANTED, CONTINGENT ON Attorneys Aden, Cusick, and Wright filing declarations certifying their familiarity with the Local Rules of this Court on or before **April 14, 2025**. **Counsel shall promptly register for e–filing via PACER and file notices of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 04/07/2025. (lcckk1) (Entered: 04/07/2025) |
| 04/07/2025 | 43 | ERRATA *Correcting Cover Pages of Exhibits 5 and 18* by ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE re 34 Motion for Preliminary Injunction,,,,,,,,,,,. (Attachments: # 1 Exhibit 5 – Declaration of Tyler Sterling (corrected), # 2 Exhibit 18 – SSA, Acceptance of Puerto Rico Birth Certificates (corrected))(Keenan, Megan) (Entered: 04/07/2025) |
| 04/07/2025 | | Set/Reset Deadlines: Motions for a Preliminary due by 4/7/2025. Responses due by 4/14/2025. Replies due by 4/16/2025. (dot) (Entered: 04/07/2025) |
| 04/07/2025 | 44 | NOTICE of Appearance by Marc Erik Elias on behalf of DEMOCRATIC NATIONAL COMMITTEE, DEMOCRATIC GOVERNORS ASSOCIATION, DSCC, DCCC, CHARLES E. SCHUMER, HAKEEM S. JEFFRIES (Elias, Marc) (Entered: |

| | | |
|---|---|---|
| | | 04/07/2025) |
| 04/07/2025 | 45 | NOTICE of Appearance by Lalitha Madduri on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Madduri, Lalitha) (Entered: 04/07/2025) |
| 04/07/2025 | 46 | NOTICE of Appearance by Aria C. Branch on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Branch, Aria) (Entered: 04/07/2025) |
| 04/07/2025 | 47 | NOTICE of Appearance by Jacob D. Shelly on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Shelly, Jacob) (Entered: 04/07/2025) |
| 04/07/2025 | 48 | NOTICE of Appearance by Christopher D. Dodge on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Dodge, Christopher) (Entered: 04/07/2025) |
| 04/07/2025 | 49 | NOTICE of Appearance by Tyler Bishop on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Bishop, Tyler) (Entered: 04/07/2025) |
| 04/07/2025 | 50 | NOTICE of Appearance by Julie Zuckerbrod on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Zuckerbrod, Julie) (Entered: 04/07/2025) |
| 04/07/2025 | 51 | DECLARATION *of James J. Pinchak in Support of Motion for Admission Pro Hac Vice* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Pinchak, James) (Entered: 04/07/2025) |
| 04/07/2025 | 52 | NOTICE of Appearance by James Justin Pinchak on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Pinchak, James) (Entered: 04/07/2025) |
| 04/07/2025 | 53 | MOTION for Preliminary Injunction by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Text of Proposed Order)(Elias, Marc) (Entered: 04/07/2025) |
| 04/08/2025 | 54 | DECLARATION *in Support of Motion for Admission Pro Hac Vice* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED |

| | | |
|---|---|---|
| | | PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Pierce, Clayton) (Entered: 04/08/2025) |
| 04/08/2025 | 55 | NOTICE of Appearance by Clayton Pierce on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Pierce, Clayton) (Entered: 04/08/2025) |
| 04/08/2025 | 56 | DECLARATION *in Support of Motion for Admission Pro Hac Vice* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Rosborough, Davin) (Entered: 04/08/2025) |
| 04/08/2025 | 57 | NOTICE of Appearance by Davin McKay Rosborough on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Rosborough, Davin) (Entered: 04/08/2025) |
| 04/08/2025 | 58 | DECLARATION *in Support of Motion for Admission Pro Hac Vice* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Herenstein, Ethan) (Entered: 04/08/2025) |
| 04/08/2025 | 59 | NOTICE of Appearance by Ethan Herenstein on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Herenstein, Ethan) (Entered: 04/08/2025) |
| 04/08/2025 | 60 | DECLARATION *in Support of Motion for Admission Pro Hac Vice* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Topaz, Jonathan) (Entered: 04/08/2025) |
| 04/08/2025 | 61 | NOTICE of Appearance by Jonathan Topaz on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF |

| | | |
|---|---|---|
| | | ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Topaz, Jonathan) (Entered: 04/08/2025) |
| 04/08/2025 | 62 | DECLARATION *in Support of Motion for Admission Pro Hac Vice* by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Lakin, Sophia) (Entered: 04/08/2025) |
| 04/08/2025 | 63 | NOTICE of Appearance by Sophia Lin Lakin on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Lakin, Sophia) (Entered: 04/08/2025) |
| 04/08/2025 | 64 | NOTICE of Appearance by Michael Gates on behalf of All Defendants (Gates, Michael) (Entered: 04/08/2025) |
| 04/08/2025 | 65 | NOTICE of Appearance by Eliza Sweren–Becker on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Sweren–Becker, Eliza) (Entered: 04/08/2025) |
| 04/08/2025 | 66 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 4/8/2025. (Lang, Danielle) (Entered: 04/08/2025) |
| 04/08/2025 | 67 | NOTICE of Appearance by Andrew Darlington on behalf of All Defendants (Darlington, Andrew) (Entered: 04/08/2025) |
| 04/09/2025 | 68 | MOTION to Modify *Scheduling Order as to Section 7 of the Executive Order* by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Text of Proposed Order)(Lang, Danielle) (Entered: 04/09/2025) |
| 04/09/2025 | 69 | NOTICE of Appearance by Alizeh Ahmad on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Ahmad, Alizeh) (Entered: 04/09/2025) |
| 04/09/2025 | 70 | ENTERED IN ERROR.....RESPONSE re 68 MOTION to Modify *Scheduling Order as to Section 7 of the Executive Order* filed by PAMELA BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, |

| | | |
|---|---|---|
| | | PETE HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, US DEPARTMENT OF JUSTICE, J. SCOTT WIEDMANN. (Darlington, Andrew) Modified on 4/9/2025 (zjm). (Entered: 04/09/2025) |
| 04/09/2025 | 71 | NOTICE of Appearance by Niyati Shah on behalf of ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA – ASIAN PACIFIC AMERICAN ADVOCATES Associated Cases: 1:25–cv–00946–CKK, 1:25–cv–00952–CKK, 1:25–cv–00955–CKK(Shah, Niyati) (Entered: 04/09/2025) |
| 04/09/2025 | 72 | REPLY to opposition to motion re 68 Motion to Modify, filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Lang, Danielle) (Entered: 04/09/2025) |
| 04/09/2025 | | NOTICE OF ERROR regarding 70 Response to motion,. The following error(s) need correction: Invalid attorney signature– signature on document must match PACER login. Please refile. (zjm) (Entered: 04/09/2025) |
| 04/09/2025 | 73 | RESPONSE re 68 MOTION to Modify *Scheduling Order as to Section 7 of the Executive Order* filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Elias, Marc) (Entered: 04/09/2025) |
| 04/09/2025 | 74 | NOTICE of Appearance by Michael Krevans Perloff on behalf of HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Perloff, Michael) (Entered: 04/09/2025) |
| 04/10/2025 | 75 | RESPONSE re 68 MOTION to Modify *Scheduling Order as to Section 7 of the Executive Order* filed by US DEPARTMENT OF JUSTICE. (Gates, Michael) (Entered: 04/10/2025) |
| 04/10/2025 | 76 | NOTICE of Appearance by Jasleen Kaur Singh on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Singh, Jasleen) (Entered: 04/10/2025) |
| 04/10/2025 | 77 | NOTICE of Appearance by Sean Morales–Doyle on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, |

| | | |
|---|---|---|
| | | NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Morales–Doyle, Sean) (Entered: 04/10/2025) |
| 04/10/2025 | | MINUTE ORDER: The LULAC Plaintiffs' 68 Motion to Modify the briefing schedule set forth in the Court's 12 Order consolidating these cases is DENIED WITHOUT PREJUDICE. The LULAC Plaintiffs have not shown good cause to delay adjudication of the Democratic Party Plaintiffs' request for preliminary injunctive relief against the implementation of Section 7 of Executive Order No. 14,248. It is also premature to set a briefing schedule on motions for summary judgment before the Court has resolved the pending 34 & 53 Motions for Preliminary Injunctions. Signed by Judge Colleen Kollar–Kotelly on 04/10/2025. (lcckk1) (Entered: 04/10/2025) |
| 04/10/2025 | 78 | NOTICE of Appearance by Wendy Weiser on behalf of LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES (Weiser, Wendy) (Entered: 04/10/2025) |
| 04/10/2025 | 79 | RESPONSE re 68 MOTION to Modify *Scheduling Order as to Section 7 of the Executive Order* filed by PAMELA BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETE HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, US DEPARTMENT OF JUSTICE, J. SCOTT WIEDMANN. (Darlington, Andrew) (Entered: 04/10/2025) |
| 04/10/2025 | 80 | NOTICE of Appearance by Leah C. Aden on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Aden, Leah) (Entered: 04/10/2025) |
| 04/10/2025 | 81 | NOTICE of Appearance by John Spencer Cusick on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Cusick, John) (Entered: 04/10/2025) |
| 04/10/2025 | 82 | NOTICE of Appearance by Brenda Wright on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Wright, Brenda) (Entered: 04/10/2025) |
| 04/11/2025 | 83 | NOTICE of Appearance by Jacob Van Leer on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, |

| | | |
|---|---|---|
| | | NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Van Leer, Jacob) (Entered: 04/11/2025) |
| 04/14/2025 | 84 | Memorandum in opposition to re 53 Motion for Preliminary Injunction, filed by US DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration)(Gates, Michael) (Entered: 04/14/2025) |
| 04/14/2025 | 85 | Memorandum in opposition to re 34 Motion for Preliminary Injunction,,,,,,,,,,,,, filed by US DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration)(Gates, Michael) (Entered: 04/14/2025) |
| 04/14/2025 | 93 | REQUEST FOR LEAVE TO FILE REVIEW. The attached document requires leave to file: CHRISTOPHER M. HUNT – Motion for Joinder. Reason(s): Document is not signed in ink (electronic signature not permitted by pro se filers). Filer is not a party to the case. (znmw) (Entered: 04/16/2025) |
| 04/15/2025 | 86 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. EXECUTIVE OFFICE OF THE PRESIDENT served on 4/15/2025 (Lang, Danielle) (Entered: 04/15/2025) |
| 04/15/2025 | 87 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/2/2025. Answer due for ALL FEDERAL DEFENDANTS by 6/1/2025. (Madduri, Lalitha) (Entered: 04/15/2025) |
| 04/15/2025 | 88 | ORDER. Counsel for all parties in these consolidated cases shall appear for a joint hearing on the Plaintiffs' pending 34 & 53 Motions for Preliminary Injunctions at **1:30 p.m. ET on April 17, 2025**, in Courtroom 28–A. See Order for further details. Signed by Judge Colleen Kollar–Kotelly on 04/15/2025. (lcckk1) (Entered: 04/15/2025) |
| 04/15/2025 | | Set/Reset Hearings: Motion Hearing re 34 & 53 set for 4/17/2025 at 1:30 PM in Courtroom 28A– In Person before Judge Colleen Kollar–Kotelly. (Entered: 04/16/2025) |
| 04/16/2025 | 89 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Emily Miranda Galindo, Filing fee $ 100, receipt number ADCDC–11620094. Fee Status: Fee Paid. by HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of Emily Miranda Galindo, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Perloff, Michael) (Entered: 04/16/2025) |
| 04/16/2025 | 90 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Delmarie Alicea, Filing fee $ 100, receipt number ADCDC–11620183. Fee Status: Fee Paid. by HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of Delmarie Alicea, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Perloff, Michael) (Entered: 04/16/2025) |
| 04/16/2025 | 91 | |

| | | |
|---|---|---|
| | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Cesar Z. Ruiz, Filing fee $ 100, receipt number ADCDC–11620223. Fee Status: Fee Paid. by HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Declaration of Cesar Z. Ruiz, # 2 Certificate of Good Standing, # 3 Text of Proposed Order)(Perloff, Michael) (Entered: 04/16/2025) |
| 04/16/2025 | 92 | NOTICE of Appearance by Sofia Fernandez Gold on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Gold, Sofia) (Entered: 04/16/2025) |
| 04/16/2025 | | MINUTE ORDER: For good cause shown, the 89 , 90 , and 91 Motions for Leave to Appear *Pro Hac Vice* filed on behalf of Attorneys Emily Miranda Galindo, Delmarie Alicea, and Cesar Z. Ruiz are GRANTED, CONTINGENT ON Attorneys Galindo, Alicea, and Ruiz filing declarations certifying their familiarity with the Local Rules of this Court on or before **April 23, 2025**. **Counsel shall promptly register for e–filing via PACER and file notices of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 04/16/2025. (lcckk1) (Entered: 04/16/2025) |
| 04/16/2025 | | MINUTE ORDER: The Court will hold a hearing on the pending 34 & 53 Motions for Preliminary Injunctions in these consolidated cases at **1:30 p.m. ET on April 17, 2025**, in Courtroom 28–A. Members of the public can access the hearing telephonically by dialing the toll–free number: **(833) 990–9400 (Meeting ID: 585620654)**. Attendees using the public access telephone line can listen to proceedings but cannot speak during the hearing. Attendees are also reminded of the general prohibition against photographing, recording, or rebroadcasting any court proceedings (including those held by telephone or videoconference). Violation of these prohibitions may result in sanctions, including removal of court–issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Signed by Judge Colleen Kollar–Kotelly on 04/16/2025. (lcckk1) (Entered: 04/16/2025) |
| 04/16/2025 | 94 | MOTION for Leave to File Amicus Brief *IN SUPPORT OF LEAGUE AND LULAC PLAINTIFFS JOINT MOTION FOR PRELIMINARY INJUNCTION* by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (Attachments: # 1 Exhibit Proposed Brief, # 2 Text of Proposed Order)(Mizelle McDaniel, Kalyn) (Entered: 04/16/2025) |
| 04/16/2025 | | MINUTE ORDER regarding 93 Request for Leave to File Review: Leave to file is denied. The *pro se* Movant is neither a party to these consolidated cases nor a necessary party who must be joined under Federal Rule of Civil Procedure 19. The Clerk of the Court is respectfully directed to mail a copy of this Minute Order to the *pro se* Movant. Signed by Judge Colleen Kollar–Kotelly on 04/16/2025. (lcckk1) Modified date filed on 5/21/2025 (znmw). (Entered: 04/16/2025) |
| 04/16/2025 | 95 | Joint MOTION for Leave to File *Supplemental Declaration* by ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, |

| | | |
|---|---|---|
| | | SECURE FAMILIES INITIATIVE. (Attachments: # 1 Exhibit 32 – Declaration of Jennette Sawyer, # 2 Text of Proposed Order)(Lakin, Sophia) (Entered: 04/16/2025) |
| 04/16/2025 | 96 | REPLY to opposition to motion re 34 Motion for Preliminary Injunction,,,,,,,,,,,, filed by ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Exhibit 33 – EAC Standards Board Agenda)(Lakin, Sophia) (Entered: 04/16/2025) |
| 04/16/2025 | 97 | REPLY to opposition to motion re 53 Motion for Preliminary Injunction, filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Exhibit 1 – EAC Letter to Election Officials, # 2 Exhibit 2 – Guide to SAVE Verification Responses)(Elias, Marc) (Entered: 04/16/2025) |
| 04/17/2025 | | MINUTE ORDER: The League Plaintiffs' and LULAC Plaintiffs' 95 Motion for Leave to File Supplemental Declaration is GRANTED. The proposed supplemental declaration provides updated factual information about actions that Defendant Brianna Schletz, Executive Director of the Election Assistance Commission, took on April 11 and 16, 2025. Because these actions occurred after the Plaintiffs filed their pending 34 Motion for Preliminary Injunction, there is good cause to allow the declaration to be filed as a supplement. *See* LCvR 65.1(c). The Clerk of the Court is respectfully directed to docket the document at ECF No. 95–1 as a Supplemental Exhibit to the Plaintiffs' 34 Motion for Preliminary Injunction. Signed by Judge Colleen Kollar–Kotelly on 04/17/2025. (lcckk1) (Entered: 04/17/2025) |
| 04/17/2025 | | Minute Entry for proceedings held before Judge Colleen Kollar–Kotelly: Motion Hearing held on 4/17/2025 re 34 Joint MOTION for Preliminary Injunction *of League and LULAC Plaintiffs* filed by NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, OCA ASIAN PACIFIC AMERICAN ADVOCATES, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, SECURE FAMILIES INITIATIVE, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS EDUCATION FUND, HISPANIC FEDERATION, ARIZONA STUDENTS' ASSOCIATION, 53 MOTION for Preliminary Injunction filed by HAKEEM S. JEFFRIES, DSCC, DEMOCRATIC GOVERNORS ASSOCIATION, DCCC, CHARLES E. SCHUMER, DEMOCRATIC NATIONAL COMMITEE. Motions heard and taken under advisement. (Court Reporter Bryan Wayne.) (dot) (Entered: 04/17/2025) |
| 04/21/2025 | 98 | NOTICE of Appearance by Cesar Z. Ruiz on behalf of All Plaintiffs (Ruiz, Cesar) (Entered: 04/21/2025) |
| 04/21/2025 | 99 | NOTICE of Appearance by Miranda Galindo on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED |

| | | |
|---|---|---|
| | | PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Galindo, Miranda) (Entered: 04/21/2025) |
| 04/21/2025 | 100 | TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING before Judge Colleen Kollar–Kotelly held on April 17, 2025; Page Numbers: 1–107. Date of Issuance: 4/21/2025. Court Reporter: Bryan A. Wayne. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/12/2025. Redacted Transcript Deadline set for 5/22/2025. Release of Transcript Restriction set for 7/20/2025.(Wayne, Bryan) (Entered: 04/21/2025) |
| 04/22/2025 | 101 | NOTICE of Appearance by Delmarie Alicea on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Alicea, Delmarie) (Entered: 04/22/2025) |
| 04/23/2025 | 102 | Proposed MOTION for Leave to Appear Pro Hac Vice :Attorney Name– John B. Hill, Filing fee $ 100, receipt number ADCDC–11639486. Fee Status: Fee Paid. by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (Attachments: # 1 Declaration FOR PRO HAC VICE ADMISSION, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Mizelle McDaniel, Kalyn) (Entered: 04/23/2025) |
| 04/24/2025 | | MINUTE ORDER: A bipartisan group of former secretaries of state moved for leave to file an amicus curiae brief in support of the Nonpartisan Plaintiffs' Joint Motion for Preliminary Injunction. Amici report that the Nonpartisan Plaintiffs do not object. Amici report that counsel for Defendants represented that "USDOJ does not support or consent" to amici's participation because CREW (counsel for amici) cannot "offer proof of its standing under Article III." The Court understands this to mean that Defendants oppose amici's participation.<br><br>Nevertheless, exercising its broad discretion to receive amicus briefs, the Court GRANTS amici's 94 Motion for Leave to File. Third parties filing amicus briefs do not require Article III standing to do so. Nor do attorneys need to show standing in their own right. Moreover, amici satisfy the relevant standards. As former state election officials, amici offer a unique perspective not presented by the parties. And their proposed brief is relevant and helpful. Signed by Judge Colleen Kollar–Kotelly |

| | | |
|---|---|---|
| | | on 4/24/2025. (lcckk3) (Entered: 04/24/2025) |
| 04/24/2025 | | MINUTE ORDER: For good cause shown, the 102 Motion for Leave to Appear *Pro Hac Vice* filed on behalf of Attorney John B. Hill is GRANTED, CONTINGENT ON Attorney Hill filing a declaration certifying familiarity with the Local Rules of this Court on or before **May 1, 2025**. **Counsel shall promptly register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 04/24/2025. (lcckk1) (Entered: 04/24/2025) |
| 04/24/2025 | 103 | ORDER granting the Joint 34 Motion for a Preliminary Injunction filed by the LULAC Plaintiffs and League Plaintiffs and granting in part and denying in part the 53 Motion for a Preliminary Injunction filed by the Democratic Party Plaintiffs. Signed by Judge Colleen Kollar–Kotelly on 04/24/2025. (lcckk1) (Entered: 04/24/2025) |
| 04/24/2025 | 104 | MEMORANDUM OPINION accompanying 103 Order. Signed by Judge Colleen Kollar–Kotelly on 4/24/2025. (lcckk3) (Entered: 04/24/2025) |
| 04/24/2025 | 105 | AMICUS BRIEF by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (zjm) (Entered: 04/25/2025) |
| 04/28/2025 | 106 | NOTICE of Appearance by John B. Hill on behalf of BIPARTISAN FORMER STATE SECRETARIES OF STATE (Attachments: # 1 Declaration Decl. of Familiarity with Local Rules)(Hill, John) (Entered: 04/28/2025) |
| 04/28/2025 | | MINUTE ORDER: At the conclusion of the hearing on the Plaintiffs' 34 & 53 Motions for Preliminary Injunctions, the Court discussed with the parties their plans for further proceedings. Now that the Court has ruled on the Plaintiffs' Motions, it would be helpful to understand how the parties intend to proceed. Accordingly, it is ORDERED that all parties in these consolidated cases shall MEET AND CONFER to discuss a schedule for further proceedings, including proposed briefing deadlines for dispositive motions and a proposed schedule for any discovery that may be necessary. The parties shall then file a joint scheduling proposal no later than **May 5, 2025**. Signed by Judge Colleen Kollar–Kotelly on 04/28/2025. (lcckk1) (Entered: 04/28/2025) |
| 04/28/2025 | | Set/Reset Deadlines: Joint scheduling proposal due by 5/5/2025. (dot) (Entered: 04/29/2025) |
| 04/29/2025 | 107 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Andrew B. Garber, Filing fee $ 100, receipt number ADCDC–11653739. Fee Status: Fee Paid. by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Tulin, Leah) (Main Document 107 replaced on 4/30/2025) (zjm). (Entered: 04/29/2025) |
| 04/30/2025 | | MINUTE ORDER: For good cause shown, the 107 Motion for Leave to Appear *Pro Hac Vice* filed on behalf of Attorney Andrew B. Garber is GRANTED, CONTINGENT ON Attorney Garber filing a declaration certifying familiarity with the Local Rules of this Court on or before **May 7, 2025**. **Counsel shall promptly register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on |

| | | 04/30/2025. (lcckk1) (Entered: 04/30/2025) |
|---|---|---|
| 04/30/2025 | 108 | NOTICE of Appearance by Andrew Garber on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Garber, Andrew) (Entered: 04/30/2025) |
| 04/30/2025 | 109 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General April 28, 2025. (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 110 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DONALD PALMER served on 4/10/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 111 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. THOMAS HICKS served on 4/9/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 112 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. CHRISTY MCCORMICK served on 4/10/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 113 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BENJAMIN HOVLAND served on 4/9/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 114 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. BRIANNA SCHLETZ served on 4/9/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 115 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. UNITED STATES ELECTION ASSISTANCE COMMISSION served on 4/30/2025 (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 04/30/2025 | 116 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 4/8/2025. Answer due for ALL FEDERAL DEFENDANTS by 6/7/2025. (Attachments: # 1 Declaration of Service of Process)(Keenan, Megan) (Entered: 04/30/2025) |
| 05/05/2025 | 117 | NOTICE of Appearance by Adriel I. Cepeda Derieux on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Cepeda Derieux, Adriel) (Entered: 05/05/2025) |
| 05/05/2025 | 118 | NOTICE of Appearance by Sarah E Brannon on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS |

| | | |
|---|---|---|
| | | EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Brannon, Sarah) (Entered: 05/05/2025) |
| 05/05/2025 | 119 | PROPOSED BRIEFING SCHEDULE by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITTEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER, ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE. Associated Cases: 1:25−cv−00946−CKK, 1:25−cv−00952−CKK, 1:25−cv−00955−CKK(Lang, Danielle) (Entered: 05/05/2025) |
| 05/06/2025 | 120 | NOTICE of Appearance by Bridget O'Hickey on behalf of All Defendants (O'Hickey, Bridget) (Entered: 05/06/2025) |
| 05/06/2025 | 121 | NOTICE of Appearance by Benjamin Phillips on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Phillips, Benjamin) (Entered: 05/06/2025) |
| 05/06/2025 | 122 | ORDER. Defendants shall file an Answer or otherwise respond on or before **May 31, 2025** to the Complaint in Case No. 25−cv−0946; on or before **June 1, 2025** to the Complaint in Case No. 25−cv−0952; and on or before **June 7, 2025** to the Complaint in Case No. 25−cv−0955. The parties shall file a Local Rule 16.3 report on or before **June 13, 2025**. Counsel for all parties shall appear for an initial scheduling conference at **9:00 a.m. ET on June 18, 2025**, in Courtroom 28−A. See Order for further details. Signed by Judge Colleen Kollar−Kotelly on 05/06/2025. (lcckk1) (Entered: 05/06/2025) |
| 05/06/2025 | | Set/Reset Deadlines & Hearings: Answer due by 5/31/2025; Meet & Confer Statement due by 6/13/2025; Initial Scheduling Conference set for 6/18/2025 at 09:00 AM in Courtroom 28A (in person) before Judge Colleen Kollar−Kotelly. (mhp) (Entered: 05/07/2025) |
| 05/31/2025 | 123 | ANSWER to Complaint by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, US DEPARTMENT OF JUSTICE, J. SCOTT WIEDMANN.(O'Hickey, Bridget) (Entered: 05/31/2025) |
| 06/01/2025 | 124 | ANSWER to Complaint *in 1:25−cv−952* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, US DEPARTMENT OF JUSTICE, J. SCOTT WIEDMANN.(O'Hickey, Bridget) (Entered: 06/01/2025) |
| 06/03/2025 | 125 | |

| | | |
|---|---|---|
| | | MOTION to Intervene by REPUBLICAN NATIONAL COMMITTEE. (Attachments: # 1 Exhibit Ambrosini Declaration, # 2 Proposed Answer to DNC Complaint, # 3 Proposed Answer to LULAC Complaint, # 4 Proposed Answer to League Complaint, # 5 Text of Proposed Order, # 6 Corporate Disclosure Statement)(McCarthy, Thomas) (Entered: 06/03/2025) |
| 06/04/2025 | | MINUTE ORDER: The Court is in receipt of the 125 Motion to Intervene filed by the Republican National Committee. Any party in these consolidated cases that intends to file a response to the Motion shall do so no later than **12:00 p.m. ET on June 6, 2025**. The Republican National Committee shall then file any reply in support of its Motion no later than **5:00 p.m. ET on June 9, 2025**. Signed by Judge Colleen Kollar–Kotelly on 06/04/2025. (lcckk1) (Entered: 06/04/2025) |
| 06/04/2025 | 126 | NOTICE of Appearance by Conor Woodfin on behalf of REPUBLICAN NATIONAL COMMITTEE (Woodfin, Conor) (Entered: 06/04/2025) |
| 06/04/2025 | 127 | NOTICE of Appearance by Gilbert Dickey on behalf of REPUBLICAN NATIONAL COMMITTEE (Dickey, Gilbert) (Entered: 06/04/2025) |
| 06/04/2025 | 128 | NOTICE of Appearance by Thomas R. McCarthy on behalf of REPUBLICAN NATIONAL COMMITTEE (McCarthy, Thomas) (Entered: 06/04/2025) |
| 06/04/2025 | 129 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– William Bock IV, Filing fee $ 100, receipt number ADCDC–11736415. Fee Status: Fee Paid. by REPUBLICAN NATIONAL COMMITTEE. (Woodfin, Conor) (Entered: 06/04/2025) |
| 06/05/2025 | | MINUTE ORDER: For good cause shown, the 129 Motion for Leave to Appear *Pro Hac Vice* filed on behalf of Attorney William Bock IV is GRANTED, CONTINGENT ON Attorney Bock filing a declaration certifying familiarity with the Local Rules of this Court on or before **June 12, 2025. Counsel shall promptly register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 06/05/2025. (lcckk1) (Entered: 06/05/2025) |
| 06/06/2025 | 130 | Memorandum in opposition to re 125 MOTION to Intervene filed by ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE. (Lang, Danielle) (Entered: 06/06/2025) |
| 06/07/2025 | 131 | ANSWER to Complaint *in 1:25–cv–955* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, US DEPARTMENT OF JUSTICE, J. SCOTT WIEDMANN.(O'Hickey, Bridget) (Entered: 06/07/2025) |
| 06/09/2025 | | NOTICE OF ERROR regarding 131 Answer to Complaint,. Please note the following for future filings: Please include court case number 25–cv–00946–CKK on all pleadings. (zjm) (Entered: 06/09/2025) |

| 06/09/2025 | 132 | REPLY to opposition to motion re 125 Motion to Intervene, filed by REPUBLICAN NATIONAL COMMITTEE. (McCarthy, Thomas) (Entered: 06/09/2025) |
| 06/09/2025 | 133 | DECLARATION *of Attorney William Bock IV in support of Pro Hac Vice Admission* by REPUBLICAN NATIONAL COMMITTEE. (Bock, William) (Entered: 06/09/2025) |
| 06/09/2025 | 134 | NOTICE of Appearance by William Bock, IV on behalf of REPUBLICAN NATIONAL COMMITTEE (Bock, William) (Entered: 06/09/2025) |
| 06/12/2025 | 135 | MEMORANDUM OPINION & ORDER granting in part and denying in part the 125 Motion to Intervene filed by the Republican National Committee (RNC). The RNC may intervene as a Defendant against all Plaintiffs' claims for relief from the implementation of Sections 2(a), 2(b), 2(d), 3(a), and 7(a) of Executive Order 14,248. <br><br> The Clerk of the Court is respectfully directed to join the RNC as a Defendant–Intervenor in Case Nos. 25–cv–0946, 25–cv–0952, and 25–cv–0955, and to docket the documents at ECF Nos. 125–2, 125–3, and 125–4 in Case No. 25–cv–0946 as the RNC's Answers to the Plaintiffs' Complaints. <br><br> The deadline for counsel for all parties, including the RNC, to meet, confer, and file a joint Local Rule 16.3 report is CONTINUED to **5:00 p.m. ET on June 16, 2025**. See Order for further details. Signed by Judge Colleen Kollar–Kotelly on 06/12/2025. (lcckk1) (Entered: 06/12/2025) |
| 06/12/2025 | 138 | ANSWER to LULAC Complaint by REPUBLICAN NATIONAL COMMITTEE.(zjm) Modified on 6/20/2025 to correct docket text (zjm). (Entered: 06/20/2025) |
| 06/12/2025 | 139 | ANSWER to THE DEMOCRATIC PARTY's Complaint by REPUBLICAN NATIONAL COMMITTEE.(zjm) (Entered: 06/20/2025) |
| 06/12/2025 | 140 | ANSWER to THE LEAGUE's Complaint by REPUBLICAN NATIONAL COMMITTEE.(zjm) (Entered: 06/20/2025) |
| 06/16/2025 | 136 | NOTICE of Appearance by Jacob Kovacs–Goodman on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Kovacs–Goodman, Jacob) (Main Document 136 replaced on 6/17/2025) (zjm). (Entered: 06/16/2025) |
| 06/16/2025 | 137 | MEET AND CONFER STATEMENT. (Branch, Aria) (Entered: 06/16/2025) |
| 06/18/2025 | | Minute Entry for proceedings held before Judge Colleen Kollar–Kotelly: Initial Scheduling Conference held on 6/18/2025. Order forthcoming. (Court Reporter Stacy Johns.) (dot) (Entered: 06/18/2025) |
| 06/20/2025 | 141 | SCHEDULING ORDER. Signed by Judge Colleen Kollar–Kotelly on 06/20/2025. (lcckk1) (Entered: 06/20/2025) |
| 07/09/2025 | 142 | NOTICE of Appearance by Marianne F. Kies on behalf of All Defendants (Kies, Marianne) (Entered: 07/09/2025) |
| 07/10/2025 | 143 | NOTICE of Appearance by Tianna Jade Mays on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Mays, Tianna) (Entered: 07/10/2025) |

| 07/11/2025 | 144 | Unopposed MOTION for Leave to File *To Identify Two Declarants by Pseudonym* by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Text of Proposed Order Proposed Order)(Lang, Danielle) (Entered: 07/11/2025) |
|---|---|---|
| 07/11/2025 | | MINUTE ORDER: For good cause shown, the 144 LULAC Plaintiffs' Unopposed Motion for Leave to Identify Two Declarants by Pseudonym is GRANTED. The LULAC Plaintiffs' two proposed declarants may proceed by pseudonym. Signed by Judge Colleen Kollar–Kotelly on 07/11/2025. (lcckk1) (Entered: 07/11/2025) |
| 07/11/2025 | 145 | Partial MOTION for Partial Summary Judgment by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Memorandum in Support of Motion for Partial Summary Judgment, # 2 Statement of Facts, # 3 Declaration of Ethan Herenstein, # 4 Exhibit 01 – Exec. Order, # 5 Exhibit 02 – Sawyer Decl., # 6 Exhibit 03 – LULAC v. EOP, PI Hearing Transcript, # 7 Exhibit 04 – Stewart Suppl. Decl. (League), # 8 Exhibit 05 – Sheoran Suppl. Decl. (LWVAZ), # 9 Exhibit 06 – Chen Suppl. Decl. (APIAVote), # 10 Exhibit 07 – Nguyen Suppl. Decl. (OCA), # 11 Exhibit 08 – Sterling Decl. (NAACP), # 12 Exhibit 9 – Guttlein Suppl. Decl. (HF), # 13 Exhibit 10 – Proano Suppl. Decl. (LULAC), # 14 Exhibit 11 – Streyder Suppl. Decl. (SFI), # 15 Exhibit 12 – Nitschke Suppl. Decl. (ASA), # 16 Exhibit 13 – DOS Passport, # 17 Exhibit 14 – DOS Passport FAQ, # 18 Exhibit 15 – DOS Reports and Statistics, # 19 Exhibit 16 – Census CVAP, # 20 Exhibit 17 – DHS Real ID FAQ, # 21 Exhibit 18 – DHS Enhanced Drivers License, # 22 Exhibit 19 – VT DMV, # 23 Exhibit 20 – DoD Uniformed Services ID, # 24 Exhibit 21 – AZ SOS, Registration Instructions, # 25 Exhibit 22 – AZ SOS Federal Only, # 26 Exhibit 23 – Fifield Article, # 27 Exhibit 24 – Schutsky Article, # 28 Exhibit 25 – Maricopa County DPOC, # 29 Exhibit 26 – Doe 1 Decl. (ASA), # 30 Exhibit 27 – Doe 2 Decl. (ASA), # 31 Exhibit 28 – EAC Mem. of Decision, # 32 Exhibit 29 – EAC Technical Mem Tr., # 33 Exhibit 30 – Consulate Affairs Passport Fees, # 34 Exhibit 31 – Consulate Affairs Processing Time, # 35 Exhibit 32 – Census Bureau Foreign Born Report, # 36 Exhibit 33 – DHS Fee Schedule, # 37 Exhibit 34 – DHS Processing Times, # 38 Exhibit 35 – Pew Research, # 39 Exhibit 36 – UCLA Law Article, # 40 Exhibit 37 – Pearson Article, # 41 Exhibit 38 – Fisher Article, # 42 Exhibit 39 – SSA, Puerto Rico Birth Certs, # 43 Exhibit 40 – AZ SOS, Registration Reqs, # 44 Exhibit 41 – Mi Familia Vota, Bench Trial Tr., # 45 Exhibit 42 – Ariz. Dep't of Transp. Report, # 46 Text of Proposed Order)(Lakin, Sophia) (Entered: 07/11/2025) |
| 07/11/2025 | 146 | MOTION for Partial Summary Judgment by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration, # 4 Text of Proposed Order)(Elias, Marc) (Entered: 07/11/2025) |
| 07/18/2025 | 147 | MOTION to Compel *Responses to Interrogatories* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Text of Proposed Order)(Branch, Aria) (Entered: 07/18/2025) |

| 07/18/2025 | 148 | MOTION to Compel *and Memorandum in Support* by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Text of Proposed Order)(Szilagyi, Heather) (Entered: 07/18/2025) |
|---|---|---|
| 07/25/2025 | 149 | Memorandum in opposition to re 148 MOTION to Compel *and Memorandum in Support*, 147 MOTION to Compel *Responses to Interrogatories* filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Kies, Marianne) (Entered: 07/25/2025) |
| 07/25/2025 | 150 | MOTION for Protective Order *Under Federal Rules of Civil Procedure 37(a)(5)(B) and 26(c)* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Text of Proposed Order)(Kies, Marianne) (Entered: 07/25/2025) |
| 07/25/2025 | | MINUTE ORDER: The Court is in receipt of the 147 and 148 Motions to Compel Responses to Interrogatories filed by the Democratic Party Plaintiffs and the LULAC Plaintiffs, respectively, and the 146 Memorandum in Opposition and 150 Motion for Protective Order filed by the Defendants. Upon consideration of these submissions, and in the interest of promptly resolving the parties' discovery dispute, it is ORDERED that Plaintiffs shall file any replies in support of their Motions to Compel and any responses to the Defendants' 150 Motion for Protective Order no later than **10:00 a.m. ET on August 1, 2025**. It is further ORDERED that, by the same deadline, **10:00 a.m. ET on August 1, 2025**, Plaintiffs shall file a proposed set of no more than 25 total Interrogatories that are narrowly tailored to determining "the existence *vel non* of final agency actions and the 'contours'" of those actions. *See* Scheduling Order, ECF No. 141, at 2 (quoting *Hispanic Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018)). Signed by Judge Colleen Kollar–Kotelly on 07/25/2025. (lcckk1) (Entered: 07/25/2025) |
| 07/25/2025 | | Set/Reset Deadlines: Plaintiffs shall file any replies in support of their Motions to Compel and any responses to the Defendants' 150 Motion for Protective Order no later than 10:00 a.m. ET on 8/1/2025. Plaintiffs shall file a proposed set of no more than 25 total Interrogatories by 8/1/2025. (dot) (Entered: 07/28/2025) |
| 08/01/2025 | 151 | REPLY to opposition to motion re 147 Motion to Compel, filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Exhibit A – June 18, 2025 Scheduling Conference Transcript, # 2 Exhibit B – Revised Interrogatories)(Branch, Aria) (Entered: 08/01/2025) |
| 08/01/2025 | 152 | RESPONSE re 150 MOTION for Protective Order *Under Federal Rules of Civil Procedure 37(a)(5)(B) and 26(c)* filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Exhibit A – June 18, 2025 Scheduling Conference Transcript, # 2 Exhibit B – Revised Interrogatories)(Branch, |

| | | Aria) (Entered: 08/01/2025) |
|---|---|---|
| 08/01/2025 | 153 | REPLY to opposition to motion re 148 Motion to Compel *and Opposition to Defendants' Motion for Protective Order (ECF No. 150)* filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Lang, Danielle) (Entered: 08/01/2025) |
| 08/01/2025 | 154 | ORDER granting in part and denying in part the 147 and 148 Motions to Compel Responses to Interrogatories, granting in part and denying in part the 150 Motion for Protective Order, and setting deadlines for further proceedings. See Order for further details. Signed by Judge Colleen Kollar–Kotelly on 08/01/2025. (lcckk1) (Entered: 08/01/2025) |
| 08/01/2025 | 155 | Unopposed MOTION for Leave to File Amicus Brief *in support of League and LULAC Plaintiffs' Motion For Partial Summary Judgement* by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (Attachments: # 1 Exhibit Proposed Brief, # 2 Text of Proposed Order)(Mizelle McDaniel, Kalyn) (Entered: 08/01/2025) |
| 08/01/2025 | 156 | NOTICE OF SUBSTITUTION OF COUNSEL by Alex Matthew Goldstein on behalf of BIPARTISAN FORMER STATE SECRETARIES OF STATE Substituting for attorney Kalyn Mizelle McDaniel (Goldstein, Alex) (Entered: 08/01/2025) |
| 08/01/2025 | 157 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– John B. Hill, *for re–admission* Filing fee $ 100, receipt number ADCDC–11860441. Fee Status: Fee Paid. by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (Attachments: # 1 Declaration for Pro Hac Vice Admission, # 2 Exhibit Certificate of Good Standing, # 3 Declaration of John B. Hill, # 4 Text of Proposed Order)(Goldstein, Alex) (Entered: 08/01/2025) |
| 08/01/2025 | | MINUTE ORDER: For good cause shown, the 157 Motion for Leave to Appear *Pro Hac Vice* filed on behalf of Attorney John B. Hill is GRANTED. **Counsel shall promptly register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. Signed by Judge Colleen Kollar–Kotelly on 08/01/2025. (lcckk1) (Entered: 08/01/2025) |
| 08/01/2025 | | MINUTE ORDER: For good cause shown, the 155 Unopposed Motion for Leave to File Brief of Amici Curiae Bipartisan Former Secretaries of State is GRANTED. Signed by Judge Colleen Kollar–Kotelly on 08/01/2025. (lcckk1) (Entered: 08/01/2025) |
| 08/04/2025 | 158 | AMICUS BRIEF by BIPARTISAN FORMER STATE SECRETARIES OF STATE. (Hill, John) (Entered: 08/04/2025) |
| 08/04/2025 | 159 | NOTICE of Appearance by John B. Hill on behalf of BIPARTISAN FORMER STATE SECRETARIES OF STATE (Hill, John) (Entered: 08/04/2025) |
| 08/08/2025 | 160 | MOTION to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment as to section 2(a) re 146 MOTION for Partial Summary Judgment , 145 Partial MOTION for Partial Summary Judgment by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. |

| | | |
|---|---|---|
| | | (Attachments: # 1 Declaration O'Hickey Declaration, # 2 Text of Proposed Order Proposed Order)(O'Hickey, Bridget) (Entered: 08/08/2025) |
| 08/08/2025 | 161 | Cross MOTION for Partial Summary Judgment by REPUBLICAN NATIONAL COMMITTEE. (Attachments: # 1 Memorandum in Support of Motion for Partial Summary Judgment, # 2 Declaration of Thomas R. McCarthy, # 3 Statement of Facts, # 4 Exhibit Response to Democratic Party Plaintiffs' Statement of Facts, # 5 Exhibit Response to LULAC Party Plaintiffs' Statement of Facts, # 6 Text of Proposed Order)(McCarthy, Thomas) (Entered: 08/08/2025) |
| 08/08/2025 | 162 | MOTION for Partial Summary Judgment *as to Section 2(a)* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(O'Hickey, Bridget) (Entered: 08/08/2025) |
| 08/08/2025 | 163 | Memorandum in opposition to re 146 MOTION for Partial Summary Judgment , 145 Partial MOTION for Partial Summary Judgment filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Statement of Facts Defendants' Responses)(O'Hickey, Bridget) (Entered: 08/08/2025) |
| 08/08/2025 | 164 | MOTION for Extension of Time to *File Motion for Summary Judgment as to Plaintiffs' Remaining Claims* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Text of Proposed Order)(O'Hickey, Bridget) (Entered: 08/08/2025) |
| 08/11/2025 | | MINUTE ORDER: The Court is in receipt of the Federal Defendants' 164 Motion for Extension of Time, which requests a two–week extension of the deadlines for "Phase Two" Summary Judgment briefing regarding provisions of Executive Order No. 14,248 other than Section 2(a) that are at issue in these consolidated cases. The Federal Defendants indicate that Plaintiffs oppose the request for an extension of time. The first deadline that would be affected by the requested extension is August 15, 2025. Accordingly, Plaintiffs shall respond to the Federal Defendants' 164 Motion no later than **12:00 p.m. ET on August 12, 2025**. Signed by Judge Colleen Kollar–Kotelly on 08/11/2025. (lcckk1) (Entered: 08/11/2025) |
| 08/11/2025 | | MINUTE ORDER: The Court is in receipt of the Federal Defendants' 160 Motion to Strike, Deny, or Defer Consideration of Plaintiffs' 145 and 146 Motions for Partial Summary Judgment. Plaintiffs shall respond to this motion on or before **August 15, 2025**, and the Federal Defendants shall file any reply on or before **August 20, 2025**. Signed by Judge Colleen Kollar–Kotelly on 08/11/2025. (lcckk1) (Entered: 08/11/2025) |

| 08/11/2025 | | Set/Reset Deadlines: Plaintiffs' response to Federal Defendants' <u>164</u> Motion due by 12:00 p.m. on 8/12/2025. Plaintiffs' response to Federal Defendants' <u>160</u> Motion due by 8/15/2025. Federal Defendants' reply due by 8/20/2025. (hmc) (Entered: 08/11/2025) |
|---|---|---|
| 08/11/2025 | <u>165</u> | NOTICE *joining motion* by REPUBLICAN NATIONAL COMMITTEE re <u>162</u> Motion for Partial Summary Judgment, (McCarthy, Thomas) (Entered: 08/11/2025) |
| 08/12/2025 | <u>166</u> | RESPONSE re <u>164</u> MOTION for Extension of Time to *File Motion for Summary Judgment as to Plaintiffs' Remaining Claims* filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Lang, Danielle) (Entered: 08/12/2025) |
| 08/12/2025 | <u>167</u> | RESPONSE re <u>164</u> MOTION for Extension of Time to *File Motion for Summary Judgment as to Plaintiffs' Remaining Claims* filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # <u>1</u> Exhibit A)(Branch, Aria) (Entered: 08/12/2025) |
| 08/12/2025 | | MINUTE ORDER: Upon consideration of the Federal Defendants' <u>146</u> Motion for Extension of Time, the LULAC Plaintiffs' <u>166</u> Response in Opposition, and the Democratic Party Plaintiffs' <u>167</u> Response in Opposition, it is ORDERED that the <u>146</u> Motion is GRANTED IN PART and DENIED IN PART. The Federal Defendants have not shown good cause for a two–week extension of the deadlines in this Court's <u>141</u> Scheduling Order, which was entered nearly two months ago and allowed all parties ample time to brief the issues presented. However, balancing the interests of ensuring a robust presentation of the issues and advancing this case without delay, the Court shall grant a five–day extension of the deadlines for Defendants' "Phase Two" motions and Plaintiffs' responses, while leaving Defendants' reply deadline unchanged. Accordingly, the Court's <u>141</u> Scheduling Order is AMENDED as follows: Defendants' "Phase Two" motions for summary judgment are due on or before **August 20, 2025**, and Plaintiffs' responses in opposition are due on or before **September 10, 2025**. As previously ordered, Defendants' replies, if any, are due on or before **September 19, 2025**. Signed by Judge Colleen Kollar–Kotelly on 08/12/2025. (lcckk1) (Entered: 08/12/2025) |
| 08/13/2025 | | Set/Reset Deadlines: Defendants' "Phase Two" motions for summary judgment are due on or before August 20, 2025, Plaintiffs' responses in opposition are due on or before September 10, 2025. Defendants' replies, if any, are due on or before September 19, 2025. (hmc) (Entered: 08/13/2025) |
| 08/13/2025 | <u>168</u> | NOTICE of Appearance by Harleen Kaur Gambhir on behalf of DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Gambhir, Harleen) (Entered: 08/13/2025) |
| 08/14/2025 | <u>169</u> | NOTICE of Appearance by Aditi Shah on behalf of ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES (Shah, Aditi) (Main Document 169 replaced on 8/14/2025) (zjm). (Entered: 08/14/2025) |
| 08/15/2025 | <u>170</u> | |

| | | Memorandum in opposition to re 160 MOTION to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment as to section 2(a) re 146 MOTION for Partial Summary Judgment , 145 Partial MOTION for Partial Summary Judgment filed by ARIZONA STUDENTS' ASSOCIATION, ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES, SECURE FAMILIES INITIATIVE. (Lang, Danielle) (Entered: 08/15/2025) |
|---|---|---|
| 08/15/2025 | 171 | Unopposed MOTION for Leave to File Amicus Brief by RESTORING INTEGRITY AND TRUST IN ELECTIONS, INC., REPUBLICAN PARTY OF ARIZONA, LLC. (Attachments: # 1 Exhibit [Proposed] Amicus Brief of Restoring Integrity and Trust in Elections and the Republican Party of Arizona in Support of Defendants' Motion for Partial Summary Judgment, # 2 Text of Proposed Order [Proposed] Order)(Langhofer, Kory) (Entered: 08/15/2025) |
| 08/15/2025 | 172 | RESPONSE re 160 MOTION to strike, deny, or defer consideration of Plaintiffs' motions for partial summary judgment as to section 2(a) re 146 MOTION for Partial Summary Judgment , 145 Partial MOTION for Partial Summary Judgment filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Exhibit A)(Branch, Aria) (Entered: 08/15/2025) |
| 08/15/2025 | 173 | Unopposed MOTION for Leave to File Amicus Brief *in Support of Non−Partisan Plaintiffs' Motion for Partial Summary Judgment* by LAWYERS DEFENDING AMERICAN DEMOCRACY, INC. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)Associated Cases: 1:25−cv−00946−CKK, 1:25−cv−00952−CKK, 1:25−cv−00955−CKK(Francois, Aderson) (Entered: 08/15/2025) |
| 08/18/2025 | | MINUTE ORDER: For good cause shown, the 171 Unopposed Motion for Leave to File Brief of Amici Curiae Republican Party of Arizona, LLC and Restoring Integrity and Trust in Elections, Inc. is GRANTED and the 173 Unopposed Motion for Leave to File Brief of Amicus Curiae Lawyers Defending American Democracy, Inc. is GRANTED. Signed by Judge Colleen Kollar−Kotelly on 08/18/2025. (lcckk1) (Entered: 08/18/2025) |
| 08/18/2025 | 174 | AMICUS BRIEF by REPUBLICAN PARTY OF ARIZONA, LLC, RESTORING INTEGRITY AND TRUST IN ELECTIONS, INC.. (Langhofer, Kory) (Entered: 08/18/2025) |
| 08/20/2025 | 175 | REPLY to opposition to motion re 160 Motion for Miscellaneous Relief,, *(Rule 56(d))* filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Kies, Marianne) (Entered: 08/20/2025) |
| 08/20/2025 | 176 | Cross MOTION for Partial Summary Judgment by REPUBLICAN NATIONAL COMMITTEE. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # |

| | | |
|---|---|---|
| | | 3 Text of Proposed Order)(McCarthy, Thomas) (Entered: 08/20/2025) |
| 08/20/2025 | 177 | MOTION for Partial Summary Judgment *as to Plaintiffs' remaining claims* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Exhibit, # 4 Text of Proposed Order)(O'Hickey, Bridget) (Entered: 08/20/2025) |
| 08/22/2025 | 178 | NOTICE *joining motion* by REPUBLICAN NATIONAL COMMITTEE re 177 Motion for Partial Summary Judgment,, (McCarthy, Thomas) (Entered: 08/22/2025) |
| 08/27/2025 | 179 | NOTICE of Appearance by Jon M. Greenbaum on behalf of ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE (Greenbaum, Jon) (Entered: 08/27/2025) |
| 08/28/2025 | 180 | MEMORANDUM OPINION & ORDER denying 160 Motion to Strike, Deny, or Defer Consideration of Plaintiffs' Motions for Partial Summary Judgment. Signed by Judge Colleen Kollar–Kotelly on 08/28/2025. (lcckk1) (Entered: 08/28/2025) |
| 08/29/2025 | 181 | REPLY to opposition to motion re 145 Motion for Partial Summary Judgment,,,,,,,,, filed by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Lakin, Sophia) (Entered: 08/29/2025) |
| 08/29/2025 | 182 | RESPONSE re 161 Cross MOTION for Partial Summary Judgment filed by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Attachments: # 1 Response to RNC Statement of Material Facts)(Lakin, Sophia) (Entered: 08/29/2025) |
| 08/29/2025 | 183 | RESPONSE re 162 MOTION for Partial Summary Judgment *as to Section 2(a)* filed by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, OCA ASIAN PACIFIC AMERICAN ADVOCATES. (Lakin, Sophia) (Entered: 08/29/2025) |
| 08/29/2025 | 184 | REPLY to opposition to motion re 146 Motion for Partial Summary Judgment, filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Declaration of Aria C. Branch, # 2 Exhibit 1 to Declaration of Aria C. Branch, # 3 Statement of Facts Response to Statement of Material Facts, # 4 Text of Proposed Order Proposed Order)(Elias, Marc) (Entered: 08/29/2025) |

| 08/29/2025 | 185 | RESPONSE re 162 MOTION for Partial Summary Judgment *as to Section 2(a)*, 161 Cross MOTION for Partial Summary Judgment filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Declaration of Aria C. Branch, # 2 Exhibit 1 to Declaration of Aria C. Branch, # 3 Statement of Facts Response to Statement of Material Facts, # 4 Text of Proposed Order Proposed Order)(Elias, Marc) (Entered: 08/29/2025) |
|---|---|---|
| 09/02/2025 | 186 | Unopposed MOTION for Extension of Time to File Response/Reply *and Cross−Motion for Phase II of Summary Judgment* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Text of Proposed Order)(Branch, Aria) (Entered: 09/02/2025) |
| 09/02/2025 | | MINUTE ORDER: For good cause shown, the Democratic Party Plaintiffs' 186 Unopposed Motion for Extension of Time is GRANTED. Defendants shall file their "Phase One" replies on or before **September 12, 2025**, as previously ordered. Plaintiffs shall file their "Phase Two" memoranda in opposition and any cross−motions on or before **September 17, 2025**. Defendants shall file any replies in support of their "Phase Two" motions for summary judgment on or before **October 1, 2025**. Signed by Judge Colleen Kollar−Kotelly on 09/02/2025. (lcckk1) (Entered: 09/02/2025) |
| 09/02/2025 | 187 | AMICUS BRIEF *in Support of Non−Partisan Plaintiffs* by LAWYERS DEFENDING AMERICAN DEMOCRACY, INC. (Francois, Aderson) (Entered: 09/02/2025) |
| 09/03/2025 | 188 | Unopposed MOTION for Leave to File Amicus Brief by CONSTITUTIONAL ACCOUNTABILITY CENTER. (Attachments: # 1 Exhibit Proposed Amicus Curiae Brief, # 2 Text of Proposed Order)Associated Cases: 1:25−cv−00946−CKK, 1:25−cv−00952−CKK, 1:25−cv−00955−CKK(Gorod, Brianne) (Entered: 09/03/2025) |
| 09/03/2025 | | MINUTE ORDER: For good cause shown, the 188 Unopposed Motion for Leave to File Brief of Amicus Curiae Constitutional Accountability Center is GRANTED. Signed by Judge Colleen Kollar−Kotelly on 09/03/2025. (lcckk1) (Entered: 09/03/2025) |
| 09/12/2025 | 189 | MOTION for Leave to File Excess Pages by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Text of Proposed Order)(Branch, Aria) (Entered: 09/12/2025) |
| 09/12/2025 | | MINUTE ORDER: For good cause shown, the Democratic Party Plaintiffs' 189 Motion to Enlarge Page Limit is GRANTED. The Democratic Party Plaintiffs may file up to 15 additional pages beyond the default Local Civil Rule 7(e) limit for their Phase Two Summary Judgment response and cross−motion, if any, that is due on September 17, 2025. Signed by Judge Colleen Kollar−Kotelly on 09/12/2025. (lcckk1) (Entered: 09/12/2025) |
| 09/12/2025 | 190 | REPLY to opposition to motion re 162 Motion for Partial Summary Judgment, *as to Plaintiffs' claims challenging section 2(a)* filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE |

| | | |
|---|---|---|
| | | COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (O'Hickey, Bridget) (Entered: 09/12/2025) |
| 09/12/2025 | 191 | REPLY to opposition to motion re 161 Motion for Partial Summary Judgment, filed by REPUBLICAN NATIONAL COMMITTEE. (McCarthy, Thomas) (Entered: 09/12/2025) |
| 09/15/2025 | 192 | NOTICE *joining REPLY* by REPUBLICAN NATIONAL COMMITTEE re 190 Reply to opposition to Motion, (McCarthy, Thomas) (Entered: 09/15/2025) |
| 09/17/2025 | 193 | STIPULATION of Dismissal *Joint Stipulation of Partial Dismissal Pursuant to Rule 41* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Branch, Aria) (Entered: 09/17/2025) |
| 09/17/2025 | 194 | Cross MOTION for Partial Summary Judgment by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration of Anna M. Baldwin, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4, # 8 Exhibit 5, # 9 Exhibit 6, # 10 Exhibit 7, # 11 Text of Proposed Order)(Baldwin, Anna) (Entered: 09/17/2025) |
| 09/17/2025 | 195 | RESPONSE re 176 Cross MOTION for Partial Summary Judgment , 177 MOTION for Partial Summary Judgment *as to Plaintiffs' remaining claims* filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 LULAC Plaintiffs' Response to Defendants' Statement of Undisputed Material Facts, # 2 LULAC Plaintiffs' Response to the RNC's Statement of Material Facts)(Baldwin, Anna) (Entered: 09/17/2025) |
| 09/17/2025 | 196 | Cross MOTION for Summary Judgment by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Exhibit Response to Government Defendants' Statement of Facts, # 4 Exhibit Response to RNC's Statement of Facts, # 5 Declaration Rule 56(d) Declaration, # 6 Text of Proposed Order)(Branch, Aria) (Entered: 09/17/2025) |
| 09/17/2025 | 197 | RESPONSE re 176 Cross MOTION for Partial Summary Judgment , 177 MOTION for Partial Summary Judgment *as to Plaintiffs' remaining claims* filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Memorandum in Support, # 2 Exhibit Statement of Facts, # 3 Exhibit Response to Government Defendants' Statement of Facts, # 4 Exhibit Response to RNC's Statement of Facts, # 5 Declaration Rule 56(d) Declaration, # 6 Text of Proposed Order)(Branch, Aria) (Entered: 09/17/2025) |
| 09/17/2025 | 198 | DECLARATION by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 |

| | | |
|---|---|---|
| | | Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64)(Branch, Aria) (Entered: 09/17/2025) |
| 09/26/2025 | 199 | MOTION for Leave to File Amicus Brief by ROBERT THOMAS PETERSON. (Attachments: # 1 Amicus Brief, # 2 Certificate of Service, # 3 Envelope)(zjm) (Entered: 09/26/2025) |
| 09/26/2025 | 200 | Joint MOTION for Extension of Time to File Response/Reply *to Plaintiffs' Phase II cross−motions for summary judgment and to set a deadline for Plaintiffs' replies in support of their motions* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Text of Proposed Order)(O'Hickey, Bridget) (Entered: 09/26/2025) |
| 09/29/2025 | | MINUTE ORDER: For good cause shown, the parties' 200 Joint Motion for Extension of Time is GRANTED. The Federal Defendants and the Defendant−Intervenor shall file any replies in support of their Phase II motions for summary judgment and responses to the Democratic Party Plaintiffs' and LULAC Plaintiffs' Phase II cross−motions for summary judgment on or before **October 8, 2025**. The Democratic Party Plaintiffs and LULAC Plaintiffs shall file any replies in support of their Phase II cross−motions for summary judgment on or before **October 22, 2025**. Signed by Judge Colleen Kollar−Kotelly on 09/29/2025. (lcckk1) (Entered: 09/29/2025) |
| 09/30/2025 | | MINUTE ORDER: Upon consideration of the 199 Motion for Leave to File Amicus Brief by *pro se* Movant Robert Thomas Peterson, it is ORDERED that each party in these consolidated cases shall file a notice, on or before **October 2, 2025**, stating whether it takes a position on the Motion for Leave to File. Signed by Judge Colleen Kollar−Kotelly on 09/30/2025. (lcckk1) (Entered: 09/30/2025) |
| 09/30/2025 | 201 | NOTICE by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN (O'Hickey, Bridget) (Entered: 09/30/2025) |
| 10/01/2025 | 202 | NOTICE by REPUBLICAN NATIONAL COMMITTEE (McCarthy, Thomas) (Entered: 10/01/2025) |
| 10/01/2025 | 203 | NOTICE by ASIAN AND PACIFIC ISLANDER AMERICAN VOTE, HISPANIC FEDERATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, LEAGUE OF WOMEN VOTERS EDUCATION FUND, LEAGUE OF WOMEN VOTERS OF ARIZONA, LEAGUE OF WOMEN VOTERS OF THE UNITED STATES, OCA ASIAN PACIFIC AMERICAN ADVOCATES re 199 Motion for Leave to File |

| | | Amicus Brief (Lakin, Sophia) (Entered: 10/01/2025) |
|---|---|---|
| 10/02/2025 | 204 | NOTICE by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER re 199 Motion for Leave to File Amicus Brief (Branch, Aria) (Entered: 10/02/2025) |
| 10/02/2025 | | MINUTE ORDER: The Court is in receipt of the parties' notices regarding the 199 Motion for Leave to File Amicus Brief by *pro se* Movant Robert Thomas Peterson. No party takes a position on the Motion. The 199 Motion is therefore unopposed and is GRANTED. The Clerk of the Court is respectfully directed to docket the document at ECF No. 199–1 as the Brief of Amicus Curiae Robert Thomas Peterson in Support of Defendants. Signed by Judge Colleen Kollar–Kotelly on 10/02/2025. (lcckk1) (Entered: 10/02/2025) |
| 10/02/2025 | 208 | AMICUS BRIEF by ROBERT THOMAS PETERSON. (zjm) (Entered: 10/15/2025) |
| 10/07/2025 | | MINUTE ORDER: Due to the lapse in appropriations, most civil litigation deadlines for the United States and its officers, agencies, and employees are currently stayed. *See* Standing Order No. 25–55. However, the Court finds that it is in the interest of justice for this case to proceed without undue delay and in a manner that reasonably aligns deadlines applicable to both Government and non–Government parties. It is therefore ORDERED that, notwithstanding any prior order staying deadlines, the Federal Defendants and the Defendant–Intervenor shall file any replies in support of their Phase II motions for summary judgment and responses to the Democratic Party Plaintiffs' and LULAC Plaintiffs' Phase II cross–motions for summary judgment on or before **October 13, 2025**. The Democratic Party Plaintiffs and LULAC Plaintiffs shall file any replies in support of their Phase II cross–motions for summary judgment on or before **October 27, 2025**. Signed by Judge Colleen Kollar–Kotelly on 10/07/2025. (lcckk1) (Entered: 10/07/2025) |
| 10/08/2025 | 205 | MOTION for Extension of Time to File Response/Reply by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Text of Proposed Order)(O'Hickey, Bridget) (Entered: 10/08/2025) |
| 10/08/2025 | 206 | RESPONSE re 205 MOTION for Extension of Time to File Response/Reply *in Opposition to Plaintiffs' Motion for Summary Judgment / Reply in Support of Defendants' Motion* filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Baldwin, Anna) (Entered: 10/08/2025) |
| 10/08/2025 | | MINUTE ORDER: Upon consideration of the Federal Defendants' 205 Motion for Extension of Time, and balancing the public interest in advancing this case without undue delay against the competing demands on Government counsel during the lapse in appropriations, it is ORDERED that the Motion is GRANTED IN PART and DENIED IN PART, as follows: the Federal Defendants and the Defendant–Intervenor shall file any replies in support of their Phase II motions for summary judgment and responses to the Democratic Party Plaintiffs' and LULAC Plaintiffs' Phase II cross–motions for summary judgment on or before **October 17, 2025**. The Democratic Party Plaintiffs and LULAC Plaintiffs shall file any replies in support of |

| | | |
|---|---|---|
| | | their Phase II cross–motions for summary judgment on or before **October 31, 2025**. Signed by Judge Colleen Kollar–Kotelly on 10/08/2025. (lcckk1) (Entered: 10/08/2025) |
| 10/14/2025 | 207 | ENTERED IN ERROR.....NOTICE *of Updated Citation to Authority* by LAWYERS DEFENDING AMERICAN DEMOCRACY, INC re 187 Amicus Brief (Francois, Aderson) Modified on 10/15/2025 (zjm). (Entered: 10/14/2025) |
| 10/15/2025 | | NOTICE OF ERROR regarding 207 Notice (Other). The following error(s) need correction: Incorrect format (Letter)– correspondence is not permitted (LCvR 5.1(a)). Please refile. (zjm) (Entered: 10/15/2025) |
| 10/16/2025 | 209 | NOTICE *of Updated Authority* by LAWYERS DEFENDING AMERICAN DEMOCRACY, INC (Francois, Aderson) (Entered: 10/16/2025) |
| 10/17/2025 | 210 | Memorandum in opposition to re 194 Cross MOTION for Partial Summary Judgment , 196 Cross MOTION for Summary Judgment filed by REPUBLICAN NATIONAL COMMITTEE. (Attachments: # 1 Statement of Facts Responses to Democratic Party Plaintiffs, # 2 Statement of Facts Responses to LULAC Plaintiffs)(McCarthy, Thomas) (Entered: 10/17/2025) |
| 10/17/2025 | 211 | REPLY to opposition to motion re 176 Motion for Partial Summary Judgment *on Plaintiffs' remaining claims* filed by REPUBLICAN NATIONAL COMMITTEE. (McCarthy, Thomas) (Entered: 10/17/2025) |
| 10/17/2025 | 212 | NOTICE of Appearance by Winston Shi on behalf of All Defendants (Shi, Winston) (Entered: 10/17/2025) |
| 10/17/2025 | 213 | Memorandum in opposition to re 194 Cross MOTION for Partial Summary Judgment , 196 Cross MOTION for Summary Judgment filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Attachments: # 1 Declaration Broderick, # 2 Statement of Facts Defendants' Responses to Plaintiffs' Statements of Undisputed Facts, # 3 Declaration Rule 56(d))(O'Hickey, Bridget) (Entered: 10/17/2025) |
| 10/17/2025 | 214 | REPLY to opposition to motion re 194 Motion for Partial Summary Judgment, 196 Motion for Summary Judgment, filed by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (O'Hickey, Bridget) (Entered: 10/17/2025) |
| 10/24/2025 | 215 | NOTICE OF WITHDRAWAL OF APPEARANCE as to PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. Attorney Bridget O'Hickey terminated. (O'Hickey, Bridget) (Entered: 10/24/2025) |

| 10/28/2025 | 216 | MOTION for Leave to File Excess Pages by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Text of Proposed Order)(Branch, Aria) (Entered: 10/28/2025) |
|---|---|---|
| 10/29/2025 | | MINUTE ORDER: For good cause shown, the Democratic Party Plaintiffs' 216 Unopposed Motion to Enlarge Page Limit for Phase Two Reply Brief is GRANTED. The Democratic Party Plaintiffs may file up to 5 additional pages beyond the default Local Civil Rule 7(e) limit for their Phase Two Summary Judgment reply brief that is due on October 31, 2025, for a total of 30 pages. Signed by Judge Colleen Kollar–Kotelly on 10/29/2025. (lcckk1) (Entered: 10/29/2025) |
| 10/31/2025 | 217 | ORDER granting Plaintiffs' 145 and 146 Motions for Partial Summary Judgment, granting in part and denying in part the Federal Defendants' 162 Cross–Motion, denying the Defendant–Intervenor's 161 Cross–Motion, entering a permanent injunction, and dismissing certain claims without prejudice. This order is final and appealable as to Plaintiffs' constitutional separation–of–powers claims regarding Section 2(a) of Executive Order No. 14,248. See Order for further details. Signed by Judge Colleen Kollar–Kotelly on 10/31/2025. (lcckk1) (Entered: 10/31/2025) |
| 10/31/2025 | 218 | MEMORANDUM OPINION accompanying 217 Order on Motions for Partial Summary Judgment. Signed by Judge Colleen Kollar–Kotelly on 10/31/2025. (lcckk1) (Entered: 10/31/2025) |
| 10/31/2025 | 219 | REPLY to opposition to motion re 194 Motion for Partial Summary Judgment, filed by ARIZONA STUDENTS' ASSOCIATION, LEAGUE OF UNITED LATIN AMERICAN CITIZENS, SECURE FAMILIES INITIATIVE. (Attachments: # 1 Declaration of Anna M. Baldwin, # 2 Exhibit A)(Baldwin, Anna) (Entered: 10/31/2025) |
| 10/31/2025 | 220 | REPLY to opposition to motion re 196 Motion for Summary Judgment, filed by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Declaration of Aria C. Branch, # 2 Exhibit 65, # 3 Exhibit 66, # 4 Exhibit 67)(Branch, Aria) (Entered: 10/31/2025) |
| 11/11/2025 | 221 | NOTICE *Regarding U.S. Supreme Court's Grant of Certiorari in Watson v. Republican National Committee (No. 24–1260)* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER (Branch, Aria) (Entered: 11/11/2025) |
| 11/14/2025 | 222 | NOTICE *FACTUAL DEVELOPMENTS RELEVANT TO COUNT IX OF THE DEMOCRATIC PARTY PLAINTIFFS COMPLAINT* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN (Kies, Marianne) (Entered: 11/14/2025) |
| 11/17/2025 | | MINUTE ORDER: Upon consideration of the Federal Defendants' 222 Notice of Factual Developments Relevant to Count IX of the Democratic Party Plaintiffs' Complaint, it is ORDERED that the Federal Defendants and Democratic Party Plaintiffs shall confer and file a joint status report on or before **November 24, 2025,** |

| | | |
|---|---|---|
| | | stating each party's position on whether supplemental briefing on the factual issues raised in the Federal Defendants' 222 Notice would be appropriate and, if so, proposing a schedule for further briefing. Signed by Judge Colleen Kollar–Kotelly on 11/17/2025. (lcckk1) (Entered: 11/17/2025) |
| 11/17/2025 | | Set/Reset Deadlines: Joint Status Report due by 11/24/2025. (dot) (Entered: 11/18/2025) |
| 11/24/2025 | 223 | Joint STATUS REPORT *re Supplemental Briefing on Count IX of DPP Complaint* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Kies, Marianne) (Entered: 11/24/2025) |
| 11/24/2025 | | MINUTE ORDER: Upon consideration of the parties' 223 Joint Status Report, it is ORDERED that, on or before **December 19, 2025**, the Federal Defendants shall file a brief supplemental memorandum, not to exceed eight pages, regarding the factual issues raised in their 222 Notice of Factual Developments. Plaintiffs shall file a brief memorandum in response, also not to exceed eight pages, on or before **December 29, 2025**.<br><br>The Court has adopted the Federal Defendants' proposed briefing deadlines to accommodate their counsel's litigation commitments in several other pending cases and upcoming federal holidays. If this schedule presents a hardship to Plaintiffs' counsel, the Court would entertain a motion for a reasonable continuance of Plaintiffs' response deadline, which the Court would view favorably. Signed by Judge Colleen Kollar–Kotelly on 11/24/2025. (lcckk1) (Entered: 11/24/2025) |
| 11/24/2025 | | Set/Reset Deadlines: Federal Defendants shall file a brief supplemental memorandum by 12/19/2025. Plaintiffs shall file a brief memorandum in response by 12/29/2025. (dot) (Entered: 11/25/2025) |
| 12/01/2025 | 224 | Consent MOTION for Extension of Time to File Response/Reply *to Supplemental Memorandum Regarding Count IX* by DCCC, DEMOCRATIC GOVERNORS ASSOCIATION, DEMOCRATIC NATIONAL COMMITEE, DSCC, HAKEEM S. JEFFRIES, CHARLES E. SCHUMER. (Attachments: # 1 Text of Proposed Order)(Branch, Aria) Modified on 12/10/2025 to correct relief (zjm). (Entered: 12/01/2025) |
| 12/01/2025 | | MINUTE ORDER: For good cause shown, the Democratic Party Plaintiffs' 224 Consent Motion for Continuance of Response Deadline for Supplemental Memorandum Regarding Count IX is GRANTED. The Democratic Party Plaintiffs shall respond to the Federal Defendants' supplemental memorandum regarding the factual issues raised in the Federal Defendants' 222 Notice of Factual Developments on or before **January 7, 2026**. Signed by Judge Colleen Kollar–Kotelly on 12/01/2025. (lcckk1) (Entered: 12/01/2025) |
| 12/01/2025 | | Set/Reset Deadlines: The Democratic Party Plaintiffs' Response to 222 due by 1/7/2026. (dot) (Entered: 12/04/2025) |
| 12/19/2025 | 225 | NOTICE of Appearance by Christian Dibblee on behalf of PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, |

| | | |
|---|---|---|
| | | CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN (Dibblee, Christian) (Entered: 12/19/2025) |
| 12/19/2025 | 226 | MEMORANDUM re 177 MOTION for Partial Summary Judgment *as to Plaintiffs' remaining claims* by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, J. SCOTT WIEDMANN. (Kies, Marianne) (Entered: 12/19/2025) |
| 12/23/2025 | 227 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 218 Memorandum & Opinion and 217 Order on Motion for Partial Summary Judgment by PAMELA J. BONDI, EXECUTIVE OFFICE OF THE PRESIDENT, FEDERAL VOTING ASSISTANCE PROGRAM, PETER B. HEGSETH, THOMAS HICKS, BENJAMIN HOVLAND, CHRISTY MCCORMICK, DONALD PALMER, BRIANNA SCHLETZ, U.S. DEPARTMENT OF JUSTICE, UNITED STATES ELECTION ASSISTANCE COMMISSION, US DEPARTMENT OF DEFENSE, and J. SCOTT WIEDMANN. Filing fee $ 605. Fee Status: No Fee Paid– Government. Parties have been notified. (ztnr) (Entered: 12/23/2025) |

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>        Defendants. | Civil No. 25-cv-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>        Defendants. | Civil No. 25-cv-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br>        Defendants. | Civil No. 25-cv-0955 (CKK) |

**<u>NOTICE OF APPEAL</u>**

Please take notice that Federal Defendants hereby appeal to the United States Court of

Appeals for the D.C. Circuit from this Court's October 31, 2025, memorandum opinion and

order granting summary judgment to Plaintiffs, *see* ECF Nos. 217, 218.

Dated: December 23, 2025                    Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General

                                            ERIC J. HAMILTON
                                            Deputy Assistant Attorney General
                                            Civil Division, Federal Programs Branch

                                            JOSEPH E. BORSON
                                            Assistant Director
                                            Civil Division, Federal Programs Branch

                                            <u>/s/ *Marianne F. Kies*</u>
                                            MARIANNE F. KIES
                                            CHRISTIAN DIBBLEE
                                            WINSTON SHI
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, D.C. 20005
                                            (202) 353-1819
                                            Marianne.F.Kies@usdoj.gov

                                            *Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>Defendants,<br><br>*and*<br><br>REPUBLICAN NATIONAL COMMITTEE,<br><br>Defendant-Intervenor. | Civil Action No. 25-0946 (CKK) |
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants,<br><br>*and*<br><br>REPUBLICAN NATIONAL COMMITTEE,<br><br>Defendant-Intervenor. | Civil Action No. 25-0952 (CKK) |
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants,<br><br>*and*<br><br>REPUBLICAN NATIONAL COMMITTEE,<br><br>Defendant-Intervenor. | Civil Action No. 25-0955 (CKK) |

## ORDER
(October 31, 2025)

1

For the reasons stated in the accompanying Memorandum Opinion, it is **ORDERED** that the [145] Motion for Partial Summary Judgment filed by the League of United Latin American Citizens, the Secure Families Initiative, and the Arizona Students' Association (collectively, the "LULAC Plaintiffs"), and the League of Women Voters Education Fund, the League of Women Voters of the United States, the League of Women Voters of Arizona, the Hispanic Federation, the National Association for the Advancement of Colored People, OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote (collectively, the "League Plaintiffs") is **GRANTED**, and the [146] Motion for Partial Summary Judgment filed by the Democratic National Committee, Democratic Governors Association, Democratic Senatorial Campaign Committee (DSCC), Democratic Congressional Campaign Committee (DCCC), U.S. Senate Minority Leader Charles E. Schumer, and U.S. House Minority Leader Hakeem S. Jeffries (collectively, the "Democratic Party Plaintiffs") is **GRANTED**.

Accordingly, it is **ORDERED** that Defendants U.S. Election Assistance Commission ("EAC"); Donald L. Palmer, in his official capacity as Chairman and Commissioner of the EAC; Thomas Hicks, in his official capacity as Vice Chair and a Commissioner of the EAC; Benjamin W. Hovland, and Christy McCormick, in their official capacities as Commissioners of the EAC; and Brianna Schletz, in her official capacity as Executive Director of the EAC, are **PERMANENTLY ENJOINED** from taking any action to implement or give effect to Section 2(a) of Executive Order No. 14,248, including taking any action based on the Executive Order to modify the content of the federal voter registration application form described in 52 U.S.C. § 20508(a)(2) to require documentary proof of United States citizenship.

For the reasons stated in the accompanying Memorandum Opinion, it is further **ORDERED** that the Federal Defendants' [162] Cross-Motion is **GRANTED IN PART AND**

**DENIED IN PART**, and Defendant-Intervenor Republican National Committee's [161] Cross Motion is **DENIED**, to the following extent: The Cross-Motions are **DENIED** as to Defendants' requests for summary judgment on Plaintiffs' claims regarding Section 2(a), but the Federal Defendants' [162] Cross Motion is **GRANTED IN PART** insofar as it seeks dismissal of the Democratic Party Plaintiffs' Administrative Procedure Act claims for lack of final agency action.

Accordingly, it is **ORDERED** that the Democratic Party Plaintiffs' Administrative Procedure Act claims, Counts VI and X of the Complaint in Case No. 25-cv-0946, are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

Finally, because there is no just reason for delaying the ultimate resolution of the issues presented in Plaintiffs' constitutional separation-of-powers claims regarding Section 2(a), it is **ORDERED**, pursuant to Federal Rule of Civil Procedure 54(b), that this Order shall serve as the **FINAL JUDGMENT** of this Court as to Plaintiffs' constitutional separation-of-powers claims regarding Section 2(a), as stated in Count I of the Complaint in Case No. 25-cv-0946, Counts I and II of the Complaint in Case No. 25-cv-952, and Count I in Case No. 25-cv-955. As to those claims, this Order is final and appealable.


**SO ORDERED.**

**Dated:** October 31, 2025

<span style="margin-left:40%">_Colleen Kollar-Kotelly_</span>

COLLEEN KOLLAR-KOTELLY
United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEAGUE OF UNITED LATIN AMERICAN CITIZENS, *et al.*, | |
|        Plaintiffs, | |
|    v. | |
| EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, | Civil Action No. 25-0946 (CKK) |
|        Defendants, | |
|    *and* | |
| REPUBLICAN NATIONAL COMMITTEE, | |
|        Defendant-Intervenor. | |

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | |
|        Plaintiffs, | |
|    v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Civil Action No. 25-0952 (CKK) |
|        Defendants, | |
|    *and* | |
| REPUBLICAN NATIONAL COMMITTEE, | |
|        Defendant-Intervenor. | |

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS EDUCATION FUND, *et al.*, | |
|        Plaintiffs, | |
|    v. | |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Civil Action No. 25-0955 (CKK) |
|        Defendants, | |
|    *and* | |
| REPUBLICAN NATIONAL COMMITTEE, | |
|        Defendant-Intervenor. | |

## MEMORANDUM OPINION
(October 31, 2025)

1

The first question presented in these consolidated cases is whether the President, acting unilaterally, may direct changes to federal election procedures. Because our Constitution assigns responsibility for election regulation to the States and to Congress, this Court holds that the President lacks the authority to direct such changes.

In Section 2(a) of Executive Order No. 14,248, the President directed the Election Assistance Commission to "take appropriate action" to alter the national mail voter registration form to require documentary proof of United States citizenship. The several Plaintiffs in these consolidated cases have moved for partial summary judgment, arguing that Section 2(a) of Executive Order No. 14,248 cannot lawfully be implemented because our Constitution entrusts Congress and the States—not the President—with the power to regulate federal elections. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, this Court agrees. Because there is no genuine dispute as to any material fact and Plaintiffs are

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:

- The Memorandum in Support of the League and LULAC Plaintiffs' Motion for Partial Summary Judgment ("Nonpartisan Pls.' Mem."), Dkt. No. 145-1;
- The Democratic Party Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment as to Section 2(a) of Executive Order 14,248 ("Dem. Pls.' Mem."), Dkt. No. 146-1;
- The Republican National Committee's Cross-Summary Judgment Brief on Section 2(a) Claims ("Def.-Intervenor's Mem."), Dkt. No. 161-1;
- The Federal Defendants' Memorandum in Support of Defendants' Cross-Motion for Partial Summary Judgment and Partial Opposition to Plaintiffs' Motions for Partial Summary Judgment ("Federal Defs.' Mem."), Dkt. No. 162-1;
- The League and LULAC Plaintiffs' Reply Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Defendants' and Intervenor-Defendants' Motions for Partial Summary Judgment ("Nonpartisan Pls.' Reply & Opp'n"), Dkt. No. 181;
- The Democratic Party Plaintiffs' Combined Reply in Support of Motion for Partial Summary Judgment as to Section 2(a) of Executive Order 14,248 and Opposition to Defendants' Cross Motions ("Dem. Pls.' Reply & Opp'n"), Dkt. No. 184;
- The Federal Defendants' Reply in Support of Defendants' Cross-Motion for Partial Summary Judgment as to Executive Order Section 2(a) ("Federal Defs.' Reply"), Dkt. No. 190; and
- The Republican National Committee's Reply Brief in Support of Summary Judgment on Plaintiffs' Section 2(a) Claims ("Def.-Intervenor's Reply"), Dkt. No. 191.

The Court has also considered the parties' arguments at the preliminary injunction hearing held on April 17, 2025. *See* Tr. of Hr'g on Mots. for Preliminary Injunctions ("Tr."), Dkt. No. 100. In an exercise of its discretion, the Court concludes that an additional oral argument is not necessary to the resolution of the issues presented in the pending motions. *See* LCvR 7(f).

entitled to judgment in their favor on their constitutional separation-of-powers claims regarding Section 2(a) as a matter of law, the Court shall enter partial summary judgment in Plaintiffs' favor and deny both the Federal Defendants' and Defendant-Intervenor's cross-motions for summary judgment as to those claims.  The Court shall permanently enjoin the proper Federal Defendants from implementing Section 2(a) of the President's Executive Order.  Because there is no just reason for delaying the ultimate resolution of Plaintiffs' constitutional separation-of-powers claims regarding Section 2(a), the Court shall enter a final, appealable judgment on those claims.  Finally, because Plaintiffs have not alleged that there is yet a final agency action implementing Section 2(a), the Court shall dismiss without prejudice the Democratic Party Plaintiffs' Administrative Procedure Act claims regarding that provision.

## I. BACKGROUND

### A.    Constitutional and Statutory Framework

#### 1.    The Voter Qualifications Clause and the Elections Clause

The Constitution addresses two types of power over federal elections: first, the power to determine who is qualified to vote, and second, the power to regulate federal election procedures.  In both spheres, the Constitution vests authority first in the States.  In matters of election procedures, the Constitution assigns Congress the power to preempt State regulations.  By contrast, the Constitution assigns no direct role to the President in either domain.

*First*, the Constitution empowers the States to decide who is qualified to vote in federal elections.  Under the Voter Qualifications Clause, Members of the U.S. House of Representatives must be elected by voters who "have the Qualifications requisite for Electors of

3

the most numerous Branch of the State Legislature."  U.S. Const. art. I, § 2, cl. 1.[2]  The Seventeenth Amendment likewise prescribes that voters for U.S. Senators "shall have the qualifications requisite for electors of the most numerous branch of the State legislatures."  U.S. Const. amend. XVII.  Because the States decide who is eligible to vote for their state legislators, the Constitution allows the States to determine who may vote for federal legislators as well.

The logic is simpler for presidential elections.  The President is elected by vote of the Electoral College.  *See* U.S. Const. amend. XII.  The Electors Clause empowers each State to appoint Electors to the Electoral College "in such Manner as the Legislature thereof may direct."  U.S. Const. art. II, § 1, cl. 2.  Every State now directs that its Electors be appointed by popular vote of qualified voters.  *See Chiafalo v. Washington*, 591 U.S. 578, 584 (2020).

Although States determine voter-eligibility requirements, their discretion to do so is restricted by the Constitution itself.  *E.g.*, U.S. Const. amend. XIX ("The right of citizens of the United States to vote shall not be denied or abridged . . . on account of sex.").

*Second*, the Constitution grants the States broad regulatory authority over the procedural conduct of federal elections but reserves final, supervisory authority to Congress.

Starting with the States' power, the Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  U.S. Const. art. I, § 4, cl. 1.  "The Clause's substantive scope is broad."  *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8 (2013) ("*ITCA*").  The terms "Times, Places, and Manner" are "comprehensive words" that "embrace authority to provide a complete code for congressional elections."  *Smiley v. Holm*, 285 U.S. 355, 366 (1932).  By default, States are tasked with regulating, among other things, voter registration (*see id.*),

---

[2] Article I of the Constitution refers to voters in congressional elections as "Electors."  Article II uses the same term to refer to different people: the Members of the Electoral College.

recounts (*Roudebush v. Hartke*, 405 U.S. 15 (1972)), primaries (*United States v. Classic*, 313 U.S. 299 (1941)), and the form and content of ballots (*see Munro v. Socialist Workers Party*, 479 U.S. 189 (1986)).

But this grant of authority to the States is only "a default provision." *Foster v. Love*, 522 U.S. 67, 69 (1997).  Under the Elections Clause, the States prescribe regulations in the first instance, "but the Congress may at any time by Law make or alter such Regulations."  U.S. Const. art. I, § 4, cl. 1.[3]  Put differently, the Elections Clause "grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States." *Foster*, 522 U.S at 69 (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832–33 (1995)).

Congress's Elections Clause power to establish those rules is supreme over, but coextensive with, the States' own regulatory power under the same clause. *See Ex parte Siebold*, 100 U.S. 371, 384–85 (1879).  For that reason, determining voter qualifications "forms no part of the power to be conferred upon the national government" by the Elections Clause. *ITCA*, 570 U.S. at 17 (quoting The Federalist No. 60, at 371 (A. Hamilton) (C. Rossiter ed. 1961)).  That power flows from the Voter Qualifications Clause and the Seventeenth Amendment.  "Surely nothing in th[ose] provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress." *Id.* at 16 (quoting *Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) (Harlan, J., concurring in part)).  The precise boundary between Congress's regulatory authority and the States' voter-eligibility authority is contested, but not relevant here. *See id.* at 25–36 (Thomas, J. dissenting).

---

[3] The Elections Clause excepts from Congress's supervisory authority the power to determine "the Places of chusing Senators."  U.S. Const. art. I, § 4, cl. 1 (spelling as in original).  The Seventeenth Amendment, which dictates that Senators be popularly elected rather than chosen by state legislatures, moots this exception. *See* U.S. Const. amend. XVII.

Although the Elections Clause power—whether exercised by the States or Congress—is sweeping, it is not limitless.  "The power to regulate the time, place, and manner of elections does not justify, without more, the abridgment of fundamental rights." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986); *accord Burdick v. Takushi*, 504 U.S. 428, 433 (1992).

Careful readers will note that this Court has referred generally to the power to regulate "federal elections," but that the Elections Clause governs only the "Elections for Senators and Representatives."  U.S. Const. art. I, § 4, cl. 1.  What about *presidential* elections, then?  The Electors Clause empowers States to determine the "Manner" of electing the President, but unlike the Elections Clause, it does not explicitly reserve supervisory authority to Congress.  U.S. Const. art. II, § 1, cl. 2.[4]  Nevertheless, whether as a matter of practice[5] or as a function of the Necessary and Proper Clause,[6] "the broad power given to Congress over congressional elections has been extended to presidential elections." *Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995).  Throughout this Opinion, the Court refers to the Elections Clause with this context in mind.

The Constitution's allocation of authority over federal elections between Congress and the States may not be intuitive.  But it is no accident.  Instead, this design was the product of carefully considered compromises among our Constitution's Framers.

---

[4] The Electoral Votes Clause directs that "Congress may determine the *Time* of chusing the Electors."  U.S. Const. art. II, § 1, cl. 4 (emphasis added) (spelling as in original).  This power is self-evidently narrower than the authority to prescribe "[t]he Times, *Places and Manner*" of congressional elections that is granted to the States and to Congress by the Elections Clause.  *See* U.S. Const. art. I, § 4, cl. 1 (emphasis added).

[5] Congressional and presidential elections occur simultaneously.  2 U.S.C. § 7; 3 U.S.C. § 1.  As a result, regulations of the former effectively regulate the latter.  *Cf. Ex parte Coy*, 127 U.S. 731, 751–52 (1888) (holding that Congress's power to ensure the integrity of federal elections extends to concurrent state elections).

[6] *See Burroughs v. United States*, 290 U.S. 534, 545–48 (1934); *Buckley v. Valeo*, 424 U.S. 1, 90 (1976) (per curiam).

6

The appropriate eligibility requirements for the franchise were a subject of vigorous debate at the Founding. "In the American colonies, under their charters and laws, no uniform rules in regard to the right of suffrage existed." J. Story, *Commentaries on the Constitution of the United States* 416 (4th ed. 1878). The Framers attempted to reconcile these competing rules. *E.g.*, 2 *The Records of the Federal Convention of 1789*, at 151 (M. Farrand ed. 1911) (text of one proposal). But they abandoned the effort. The task proved "difficult to the convention," and any "uniform rule would probably have been as dissatisfactory to some of the States." The Federalist No. 52 (J. Madison). In other words, adopting a universal approach would have "put at hazard" the ratification and risked a "great embarrassment." Story, *supra*, at 419. In the end, leaving this power with the States was the only practical solution. *See* Federalist No. 52 ("The provision made by the convention, appears . . . to be the best that lay within their option.").

Allocating regulatory authority over elections also required compromise. Recognizing the impossibility of a single regulation "which would have been always applicable to every probable change in the situation of the country," the Framers resolved "that a discretionary power over elections ought to exist somewhere." The Federalist No. 59 (A. Hamilton). But where?

Antifederalists feared that if Congress wielded this authority alone, it would manipulate elections to accumulate power in itself at the expense of the more popularly responsive States. *See* Federal Farmer No. 2; Federal Farmer No. 12. For their part, Federalists decried the "abuses that might be made" of an unchecked power over elections in the States, who could "take care so to mould their regulations as to favor" their "local conveniency or prejudices" rather than the national "common interest." Farrand, *supra*, at 240–41 (remarks of J. Madison). Indeed, Federalists feared that, if given the chance, the States would wield their regulatory authority to

prevent federal elections altogether.  Federalist No. 59 ("They could at any moment annihilate [the national government] by neglecting to provide for the choice of persons to administer its affairs.").

The Elections Clause was forged in this crucible.  The Framers "submitted the regulation of elections for the federal government, in the first instance," to the States, where such regulation would "be both more convenient and more satisfactory."  Federalist No. 59.  But they "reserved to [Congress] a right to interpose" regulations of its own where the need arose.  *Id.*  As Theophilus Parsons (later Chief Justice of the Massachusetts Supreme Judicial Court) explained, this diffusion of power would "preserve and restore to the people their equal and sacred rights of election" against "the influence of ambitious or popular characters, or in times of popular commotion, and when faction and party spirit run high."[7]  In short, as they so often did, the Framers chose balance.

Before turning to the modern Elections Clause statutes that star in this litigation, the Court pauses to note a conspicuous absence from the legal and historical context thus far provided.  The States have initial authority to regulate elections.  Congress has supervisory authority over those regulations.  The President does not feature at all.  In fact, Executive regulatory authority over federal elections does not appear to have crossed the Framers' minds:

> [T]here were only three ways in which this power could have been reasonably modified and disposed: that it must either have been lodged wholly in the national legislature, or wholly in the State legislatures, or primarily in the latter and ultimately in the former.

---

[7] The Massachusetts Convention: Convention Debates (Jan. 16, 1788), *reprinted in* 6 *Ratification of the Constitution by the States: Massachusetts*, at 1217–18 (J. Kaminski *et al.* eds., 2000).

Federalist No. 59.[8]

## 2.    The National Voter Registration Act

In 1993, Congress exercised its Elections Clause authority to regulate federal elections by enacting the National Voter Registration Act ("NVRA"), Pub. L. No. 103-31, 107 Stat. 77 (codified, as amended, at 52 U.S.C. §§ 20501–20511). Congress's stated purposes in enacting the NVRA included "establish[ing] procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," helping officials at all levels of government implement the Act's requirements "in a manner that enhances the participation of eligible citizens as voters in elections for federal office," "protect[ing] the integrity of the electoral process," and ensuring the maintenance of "accurate and correct voter registration rolls." *See Id.* § 2(b), 107 Stat. 77 (1993) (codified at 52 U.S.C. § 20501(b)).

The NVRA established a baseline set of voter registration procedures for federal elections that every State must implement, alongside "any other method of voter registration provided for under State law." 52 U.S.C. § 20503(a). For example, the NVRA requires that States allow people to apply for voter registration when applying for drivers' licenses. *See id.* § 20503(a)(1). The NVRA also requires each State to "accept and use" a standard federal "mail voter registration form" (the "Federal Form"). *Id.* § 20505(a)(1).

---

[8] *See also* Debate in Massachusetts Ratifying Convention, *in* 2 *The Founders' Constitution* 255 (P. Kurland & R. Lerner eds., 1987) ("I know of but two bodies wherein [the power to regulate federal elections] can be lodged—the legislatures of the several states, and the general Congress." (statement of Caleb Strong)).

9

The Federal Form consists of three components: an application (the portion of the Federal Form that a would-be voter must fill out); general instructions for completing the application; and appended state-specific instructions. *See* 11 C.F.R. § 9428.3. The NVRA sets strict limits on the contents of the Federal Form. Most relevantly, the application section:

> may require only such identifying information (including the signature of the applicant) and other information (including data relating to previous registration by the applicant), as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process.

52 U.S.C. § 20508(b)(1). The state-specific instructions must "specif[y] each eligibility requirement (including citizenship)" set by state law. *Id.* § 20508(b)(2)(A). And the application must verify an applicant's eligibility under state law through an "attestation that the applicant meets each such requirement[s]" that "requires the signature of the applicant, under penalty of perjury." *Id.* §§ 20508(b)(2)(B)–(C). The Federal Form "may not include any requirement for notarization or other formal authentication." *Id.* § 20508(b)(3).

The Conference Committee on the bill that became the NVRA considered and rejected an amendment proposed in the Senate that would have expressly allowed States to "requir[e] presentation of documentation relating to citizenship of an applicant for voter registration." *See* H.R. Rep. No. 103–66, at 23 (1993) (Conf. Rep.). The Conference Committee concluded that such an amendment was "not necessary or consistent with the purposes of this Act" and "could be interpreted by States to permit registration requirements that could effectively eliminate, or seriously interfere with, the mail registration program of the Act." *Id.*

Congress initially assigned responsibility for maintaining the Federal Form and developing regulations for its use to the Federal Election Commission ("FEC"), a federal agency that Congress created as an independent, bipartisan commission. *See* Pub. L. No. 103-31 § 6(a), 107 Stat. 77, 79 (1993) (codified at 52 U.S.C. § 20505(a)(1)); *id.* § 9(a), 107 Stat. 77, 87 (1993)

10

(codified, as amended, at 52 U.S.C. § 20508(a)); *see also* 52 U.S.C. § 30106(a) (establishing the FEC).

### 3.    The Help America Vote Act

In 2002, Congress enacted the Help America Vote Act ("HAVA"), Pub. L. No. 107-252, 116 Stat. 1666, partly in response to the election administration challenges that arose during the Presidential election in 2000.    *See* H.R. Rep. 107-329, at 32 (2001).    HAVA made several changes to federal election law, including creating a new independent agency to set standards and share best practices related to some aspects of federal elections.    *See* Pub. L. No. 107-252, Title II, § 201, 116 Stat. 1666, 1673 (codified at 52 U.S.C. § 20921).

HAVA created a new "independent entity" in the Executive Branch called the Election Assistance Commission ("EAC").    Pub. L. No. 107-252, Title II, § 201, 116 Stat. 1666, 1673 (2002) (codified at 52 U.S.C. § 20921).    The Act established the EAC as an advisory body "serv[ing] as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections."    *Id.* § 202, 116 Stat. 1666, 1673–74 (codified at 52 U.S.C. § 20922).

The EAC is composed of four Members nominated by the President with the advice and consent of the Senate.    *See* 52 U.S.C. § 20923(a)(1).    Each Member must "have experience with or expertise in election administration or the study of elections."    *Id.* § 20923(a)(3).    Members serve staggered four-year terms in two groups, such that two vacancies arise on the EAC every two years in the normal course.    *See id.* §§ 20923(b)(1)–(2).    After their four-year terms expire, Members may be reappointed to serve one additional term.    *Id.* § 20923(b)(1).    And Members elect among themselves a chair and vice chair, who each serve a one-year term in that role that cannot be renewed during their four-year term as Members.    *Id.* § 20923(c).

Congress designed the EAC to be both partisan (*i.e.*, explicitly linked to political parties)

and bipartisan (*i.e.*, balanced equally between the two major political parties). *See* H.R. Rep. 107-329, at 59 (2001) (describing the EAC as a "four-member, bipartisan commission"). But that design comes to fruition somewhat indirectly. For example, before the President nominates a potential Member, the Majority and Minority Leaders of both the House and Senate "shall each submit to the President a candidate recommendation" for the position "affiliated with the political party of the Member of Congress involved." 52 U.S.C. § 20923(a)(2). This recommendation is a recommendation only; HAVA does not explicitly require that the President nominate the person so recommended. *See id.*

But other provisions of the statute implicitly require partisan balancing. For example, when the first four Members was nominated, two Members had to serve shortened two-year terms to achieve Congress's desired staggered-term structure. Congress required that "not more than one" of the Members relegated to these abbreviated terms "be affiliated with the same political party." 52 U.S.C. § 20923(b)(2)(A). When Members select their chair and vice chair, they are similarly restricted: "[T]he chair and vice chair may not be affiliated with the same political party." *Id.* § 20923(c)(1). Because the chair and vice chair may serve in that role for only one year of their four-year term, and because there are only two political parties whose members have occupied the roles of Majority and Minority Leader of the House and Senate since HAVA's enactment, compliance with this provision necessarily requires that the President cannot nominate more than two Members from his own political party to the EAC.

By statute, the EAC may not take "[a]ny action" without "the approval of at least three of its members." 52 U.S.C. § 20928. In practice, this requirement ensures that the EAC may only take actions that have bipartisan support.

12

HAVA reassigned responsibility for maintaining the Federal Form from the FEC to the newly-created EAC.  Pub. L. No. 107-252, Title VIII, § 802, 116 Stat. 1666, 1726 (2002); *see* 52 U.S.C. § 20508(a).  The EAC is therefore responsible for "develop[ing]" the Federal Form "in consultation with the chief election officers of the States," 52 U.S.C. § 20508(a)(2), reporting to Congress periodically on the NVRA's "impact . . . on the administration of elections for Federal office," *id.* § 20508(a)(3), and prescribing any regulations that are "necessary to carry out" those duties, *id.* § 20508(a)(1).  The EAC also must "provide information to the States" about each State's responsibilities under the NVRA.  *Id.* § 20508(a)(4).

Congress also provided in HAVA that the EAC lacks any rulemaking authority, "except to the extent permitted under" the section of the NVRA allowing rulemaking regarding the contents of the Federal Form and periodic reports to Congress on the impact of the NVRA.  52 U.S.C. § 20929; *see* 52 U.S.C. § 20508(a); *see also* H.R. Rep. No. 107-730, at 69 (2002) (Conf. Rep.) (explaining that HAVA "[p]rohibits" the EAC "from imposing any rule, regulation, or taking any action that imposes requirements on State or local governments except as permitted under the [NVRA]").  Exercising this limited rulemaking authority, the EAC may alter the Federal Form by promulgating regulations through notice-and-comment rulemaking.  *See* 52 U.S.C. § 20929; *cf. Final Rules: National Voter Registration Act of 1993*, 59 Fed. Reg. 32,311 (June 23, 1994) (implementing regulations promulgated by the EAC's predecessor in this role, the FEC).

The EAC's rulemaking process is as follows.  If the EAC determines that a change to the Federal Form is necessary, it must develop that change as a proposed rule, which must be approved by at least three EAC Members.  52 U.S.C. § 20928.  Once the EAC has approved a proposed rule, it must comply with the Administrative Procedure Act by issuing a notice of

proposed rulemaking and receiving public comments. 5 U.S.C. § 553. The EAC must also "consult[] with the chief election officers of the States" regarding its proposed changes to the Federal Form. 52 U.S.C. § 20508(a)(2). Once the EAC has received feedback from the public and the States, it must consider revisions to its proposed rule, and any revisions must again be approved by at least three EAC Members. *See* 5 U.S.C. § 553(c); 52 U.S.C. § 20928. Following any revisions, the EAC then promulgates the finalized rule amending the Federal Form. *See* 5 U.S.C. § 553(c).

Finally, because the Federal Form is, at bottom, government-mandated paperwork, the EAC must treat it as a "collection of information" under the Paperwork Reduction Act. 44 U.S.C. § 3502(3). As a result, the EAC must conduct certain internal administrative reviews and an additional public comment period. *See id.* § 3506(c). The EAC must also submit the collection of information for approval by the Office of Information and Regulatory Affairs within the Office of Management and Budget. *See id.* § 3507(a)(2). But because the EAC is an "independent regulatory agency . . . administered by 2 or more members of a commission," it "may by majority vote void" any disapproval of its collection of information by OIRA. *Id.* § 3507(f)(1).

### B. Facts and Proceedings

#### 1. Executive Order No. 14,248

On March 25, 2025, President Donald J. Trump signed an Executive Order entitled "Preserving and Protecting the Integrity of American Elections." Exec. Order 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025). The President's Executive Order directs a variety of federal officials to take actions that the President believes will help ensure that federal elections are "honest and worthy of the public trust." *Id.* § 1. As relevant here, Section 2(a) of the Executive Order directs the EAC to "take appropriate action" within 30 days "to require" people registering

14

to vote using the Federal Form to submit "documentary proof of United States citizenship." *Id.*

§ 2(a). Other provisions direct the heads of various federal agencies to take action to "identify

unqualified voters registered in the States" by sharing information in various federal databases

with State officials and the U.S. DOGE Service, *id.* § 2(b), direct the heads of any federal

agencies designated as voter registration agencies by the NVRA to "assess citizenship" before

providing the Federal Form to "enrollees of public assistance programs," *id.* § 2(d), direct the

Attorney General to "enforce" two federal statutes, 2 U.S.C. § 7 and 3 U.S.C. § 1, "against

States" that count ballots received after Election Day in federal elections, Exec. Order 14,248

§ 7(a), and direct the EAC to "condition any available funding to a State on that State's

compliance with" a rule requiring that States only count ballots received on or before Election

Day, subject to limited exceptions for certain ballots cast by servicemembers and other

Americans living abroad, *id.* § 7(b). The Executive Order also contains a standard "saving

clause," which provides that the order "shall be implemented consistent with applicable law."

*Id.* § 7(b); *see Common Cause v. Trump*, 506 F. Supp. 3d 39, 47–53 & n.8 (D.D.C. 2020) (three-

judge panel) (discussing an identical saving clause in another executive order).

>    2.   Parties

Soon after President Trump issued this Executive Order, three groups of Plaintiffs

promptly filed suit in this District seeking injunctive and declaratory relief against various

executive officers and agencies, including the Election Assistance Commission ("EAC"), its four

Members, and its Executive Director, to block implementation of provisions of the President's

Executive Order. *See* Compl., Dkt. No. 1 (Case No. 25-cv-0946), ¶ 1 & at 49; Compl., Dkt. No.

1 (Case No. 25-cv-0952), ¶ 4, at 68–69 & Ex. A; Compl., Dkt. No. 1 (Case No. 25-cv-0955), ¶ 1

& at 33.

15

Two of the groups of Plaintiffs in these actions consist of nonpartisan, not-for-profit organizations. The first group to file includes the League of United Latin American Citizens ("LULAC"), the Secure Families Initiative, and the Arizona Students' Association (collectively, the "LULAC Plaintiffs"), and the second group includes the League of Women Voters Education Fund, the League of Women Voters of the United States, the League of Women Voters of Arizona, the Hispanic Federation, the National Association for the Advancement of Colored People ("NAACP"), OCA – Asian Pacific American Advocates, and Asian and Pacific Islander American Vote (collectively, the "League Plaintiffs"). Compl., Dkt. No. 1 (Case No. 25-cv-0946), ¶¶ 7–21; Compl., Dkt. No. 1 (Case No. 25-cv-0955), ¶¶ 11–22. In this Memorandum Opinion, the Court will refer to these two groups collectively as the "Nonpartisan Plaintiffs."

The other group of Plaintiffs includes several national organizations affiliated with the Democratic Party—the Democratic National Committee (DNC), Democratic Governors Association (DGA), Democratic Senatorial Campaign Committee (DSCC), and Democratic Congressional Campaign Committee (DCCC)—as well as the individual leaders of the Democratic Caucuses in the U.S. Senate and the U.S. House of Representatives, Charles E. Schumer and Hakeem S. Jeffries. Compl., Dkt. No. 1 (Case No. 25-cv-0952), ¶¶ 9, 12–17. The Court will refer to these parties collectively as the "Democratic Party Plaintiffs."

Many of the Nonpartisan Plaintiffs are membership organizations with members and supporters throughout the Nation, including at least one organization—the League of Women Voters of the United States—that is organized in every State and the District of Columbia.[9]

---

[9] *See, e.g.*, Suppl. Decl. of Celina Stewart ("Stewart Decl."), Dkt. No. 145-7, ¶ 2 (stating that Plaintiff League of Women Voters of the United States "has more than a million members and supporters and is organized in nearly 800 communities and in every state and the District of Columbia"); Suppl. Decl. of Tyler Sterling ("Sterling Decl."), Dkt. No. 145-11, ¶¶ 8–9 (stating that Plaintiff NAACP has "over two million supporters and members," including "voters and would-be voters throughout the United States," and "has state and regional conferences representing

16

Each of the Nonpartisan Plaintiffs asserts an interest in helping eligible citizens register to vote in federal elections.[10]  Several of the Nonpartisan Plaintiffs also offer online voter registration tools and written materials—often translated into several languages—that are designed to help eligible voters register using the Federal Form.[11]  Finally, some of these Plaintiffs also assert that their individual members have legally protected interests in using the Federal Form to register to vote in federal elections without undue burden.[12]

Some of the Democratic Party Plaintiffs are also active in every State.[13]  Each of the Democratic Party Plaintiffs asserts an interest in fair, lawful competition for federal elective office, including fair opportunities to register eligible voters who are likely to support

forty-eight states and the District of Columbia, with nearly 2,200 local units, 371 college chapters, forty-nine youth councils, and twenty-three high school chapters across the United States"); Suppl. Decl. of Sarah Streyder ("Streyder Decl."), Dkt. No. 145-14, ¶¶ 4, 6 (stating that Plaintiff Secure Families Initiative has "over 44,000 members" and "has members registered to vote in all 50 states"); Suppl. Decl. of Juan Proaño ("Proaño Decl."), Dkt. No. 145-13, ¶ 2 (stating that Plaintiff LULAC is a "nationwide" organization with "525 councils (local chapters) and over 325,000 members").

[10] *See* Proaño Decl. ¶ 12 (LULAC); Streyder Decl. ¶ 19 (Secure Families Initiative); Suppl. Decl. of Kyle Nitschke ("Nitschke Decl."), Dkt. No. 145-15, ¶ 3 (Arizona Students' Association); Stewart Decl. ¶¶ 3–4 (League of Women Voters Education Fund and League of Women Voters of the United States); Suppl. Decl. of Pinny Sheoran ("Sheoran Decl."), Dkt. No. 145-8, ¶ 8 (Leage of Women Voters of Arizona); Decl. of Jessica Guttlein ("Guttlein Decl."), Dkt. No. 145-12, ¶ 5 (Hispanic Federation); Sterling Decl. ¶ 13 (NAACP); Suppl. Decl. of Thu Nguyen ("Nguyen Decl."), Dkt. No. 145-10, ¶¶ 8–9, 17 (OCA – Asian Pacific American Advocates); Suppl. Decl. of Christine Chen ("Chen Decl."), Dkt. No. 145-9, ¶¶ 5–7 (Asian and Pacific Islander American Vote).

[11] *See, e.g.*, Proaño Decl. ¶¶ 13–15, 29 (LULAC); Streyder Decl. ¶ 19 (Secure Families Initiative); Stewart Decl. ¶¶ 3, 7, 11–19, 21–22 (League of Women Voters Education Fund and League of Women Voters of the United States); Sheoran Decl. ¶¶ 10, 36 (League of Women Voters of Arizona); Guttlein Decl. ¶¶ 15–16, 20 (Hispanic Federation); Sterling Decl. ¶¶ 14–20 (NAACP); Nguyen Decl. ¶¶ 10, 14 (OCA – Asian Pacific American Advocates); Chen Decl. ¶¶ 8–13 (Asian and Pacific Islander American Vote).

[12] *See, e.g.*, Proaño Decl. ¶¶ 30–31 (LULAC); Streyder Decl. ¶¶ 8–9 (Secure Families Initiative); Nitschke Decl. ¶¶ 8–14 (Arizona Students' Association).

[13] *See, e.g.*, Suppl. Decl. of Liberty Schneider ("Schneider Decl."), Dkt. No. 146-3 at 24–25, ¶ 6 (stating that Plaintiff DNC "provides support and resources to thousands of candidates at the local, state, and federal level in every state across the country"); Suppl. Decl. of Erik Ruselowski ("Ruselowski Decl."), Dkt. No. 146-3 at 58–68, ¶ 4 (stating that Plaintiff DCCC's "members and constituents are grassroots Democratic voters in all 50 states"); *see also* Suppl. Decl. of Lillie Snyder Boss ("Boss Decl."), Dkt. No. 146-3 at 47–57, ¶¶ 3, 5 (stating that Plaintiff DSCC's "mission is to elect candidates of the Democratic Party across the country to the U.S. Senate" and that it is actively "supporting ten incumbent Democratic Senators and non-incumbent Democratic candidates in up to an additional twelve states" ahead of the 2026 midterm elections).

17

Democratic candidates.[14]   And two of the Democratic Party Plaintiffs—U.S. House of Representatives Minority Leader Hakeem Jeffries and U.S. Senate Minority Leader Charles Schumer—are active candidates for federal elective office.[15]   The Democratic Party Plaintiffs collectively represent millions of eligible voters throughout the United States, some of whom they state will be unable to register to vote or would be dissuaded from registering if documentary proof of citizenship were required as a condition of voter registration.[16]

### 3.   Proceedings

On April 1, 2025, the Clerk of the Court randomly assigned the Democratic Party Plaintiffs' case to this Court pursuant to Local Rule of Civil Procedure 40.3(a).  The Nonpartisan Plaintiffs' cases were later assigned to this Court as "related case[s]" pursuant to Local Rule of Civil Procedure 40.5(c).  These three cases are "related" because they "grow out of the same event or transaction"—the issuance of Executive Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025)—and "involve common issues of fact" related to the effect of that Executive Order. *See* LCvR 40.5(a)(3).

Given the extensive commonalities among the factual and legal issues among the three cases, this Court directed the Democratic Party Plaintiffs to meet and confer with the parties in all three related cases to determine each parties' position on whether the cases should be consolidated and, if appropriate, file a motion to consolidate the cases.  *See* Order, Dkt. No. 15 (Case No. 25-cv-0952); *see also* Fed. R. Civ. P 42(a)(2) (allowing consolidation of multiple civil

---

[14] *See, e.g.*, Schneider Decl. ¶¶ 3, 18–23 (DNC); Suppl. Decl. of Jillian Edelman ("Edelman Decl."), Dkt. No. 146-3 at 36–46, ¶¶ 4, 13–17 (DGA); Boss Decl. ¶¶ 3, 16–21 (DSCC); Ruselowski Decl. ¶¶ 4, 18–24 (DCCC); Decl. of Hakeem Jeffries ("Jeffries Decl."), Dkt. No. 146-3 at 7–14, ¶¶ 3–4, 17–19; Decl. of Charles Schumer ("Schumer Decl."), Dkt. No. 146-3 at 15–23, ¶¶ 2–3, 16–19.

[15] *See* Jeffries Decl. ¶ 3; Schumer Decl. ¶ 2.

[16] *See, e.g.*, Jeffries Decl. ¶¶ 13–14; Schumer Decl. ¶¶ 11–13; *see also* Schneider Decl. ¶¶ 4, 19–20.

cases presenting "a common question of law or fact").  The Democratic Party Plaintiffs then filed

a motion to consolidate the cases, with the consent of all parties.  *See* Mot. to Consolidate Cases,

Dkt. No. 16 (Case No. 25-cv-0952).  This Court granted the motion and consolidated the three

cases, directing the parties to consolidate their briefing "to the greatest extent practicable," while

recognizing that some aligned parties may need to "request different relief" from one another.

*See* Mem. Op. & Order, Dkt. No. 20 (Case No. 25-cv-0952), at 4–5.

Shortly thereafter, the Nonpartisan Plaintiffs requested that the Court set an expedited

schedule for briefing on motions for preliminary injunction.  *See* Emergency Mot. for

Clarification of the Consolidation Order and to Expedite Hearing and Briefing, Dkt. No. 30.  The

Nonpartisan Plaintiffs also requested leave to file briefs separately from the Democratic Party

Plaintiffs, given their nonpartisan status and differing interests in these cases.  *See id.*  The Court

granted both requests and ordered all Plaintiffs to file their motions for preliminary injunctions

on or before April 7, the Defendants to file any responses to those motions on or before April 14,

and the Plaintiffs to file any replies in support of their motions on or before April 16.[17]    *See*

Order, Dkt. No. 31.  On April 17, the Court held a hearing on the Plaintiffs' motions with all

parties present.  *See generally* Tr. of Preliminary Injunction Hr'g ("Tr."), Dkt. No. 100.

This Court granted Plaintiffs' motions in part and preliminarily enjoined the

implementation of two provisions of the Executive Order, including Section 2(a), which directs

the EAC to modify an important federal voter registration application form to require applicants

to provide documentary proof of U.S. citizenship.  *League of United Latin Am. Citizens v. Exec.*

*Off. of the President* (*LULAC I*), 780 F. Supp. 3d 135, 226 (D.D.C. 2025) (CKK).    Some

---

[17] The Court denied without prejudice a subsequent request from the LULAC Plaintiffs to alter this briefing schedule as to the LULAC Plaintiffs' and Democratic Party Plaintiffs' claims regarding Section 7 of the Executive Order, which the LULAC Plaintiffs suggested could be briefed on a longer schedule.  *See* Min. Order (Apr. 10, 2025).

19

Plaintiffs also moved for injunctions against three other provisions of the Executive Order, but the Court denied those requests. *See id.* (denying the Democratic Party Plaintiffs' motion as to Sections 2(b), 7(a), and 7(b)).

The Republican National Committee ("RNC") later moved to intervene as a Defendant in the consolidated cases. Mot. to Intervene, Dkt. No. 125. The Court granted the RNC's motion in part, allowing it to intervene as a Defendant against all Plaintiffs' claims for relief from implementation of certain sections of Executive Order No. 14,248, including Section 2(a). *See* Mem. Op. & Order, Dkt. No. 135.

After the Court resolved Plaintiffs' motions for preliminary relief and the RNC's motion to intervene, it directed the parties to propose a schedule for further proceedings. *See* Minute Order (Apr. 28, 2025). In their joint response, the parties informed the Court that the Federal Defendants did not intend to move to dismiss Plaintiffs' claims. Joint Scheduling Proposal, Dkt. No. 119, at 4. The Federal Defendants then argued that Plaintiffs' claims "present pure legal issues, which can be decided without discovery" and contended that discovery was therefore "an unnecessary precondition to filing summary-judgment motions in this case." *Id.* at 5–6. Based on the parties' representations, the Court ordered the parties to file a scheduling proposal for summary judgment briefing and to appear for a scheduling conference. See Order, Dkt. No. 122.

After a scheduling conference, the Court issued a detailed scheduling order setting out a three-phase procedure for motions for summary judgment. Scheduling Order, Dkt. No. 141. As relevant here, the first phase of the briefing schedule called for cross-motions for summary judgment regarding Plaintiffs' challenges to Section 2(a) of Executive Order No. 14,248, which would proceed without discovery from any party. *Id.* at 2.

All parties filed motions in accordance with this schedule, including cross-motions for summary judgment regarding Plaintiffs' challenges to Section 2(a). *See* Nonpartisan Pls.' Mot., Dkt. No. 145; Dem. Pls.' Mot., Dkt. No. 146; Def.-Intervenor's Mot., Dkt. No. 161; Federal Defs.' Mot., Dkt. No. 162. The Federal Defendants also moved to strike, deny, or defer consideration of Plaintiffs' motions on procedural grounds. *See* Federal Defs.' Mot. to Strike, Deny, or Defer Consideration, Dkt. No. 160. This Court denied that motion, concluding that Plaintiffs' motions had complied with the relevant procedural requirements and that the Federal Defendants had not shown that they were entitled to the relief they sought. Mem. Op. & Order, Dkt. No. 180. The parties' motions on the merits of Plaintiffs' Section 2(a) claims are now ripe for decision.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

To obtain a permanent injunction, a plaintiff must make four showings. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). First, "the prevailing party must demonstrate that it actually 'has suffered,' or is 'likely to suffer irreparable harm'" in the absence of an injunction. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020) (first quoting *Monsanto*, 561 U.S. at 156–57; and then quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). Second, it must show "that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Monsanto*, 561 U.S. at 156–57 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Third, it must show that, "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *Id.* (quoting *eBay*, 547 U.S. at 391). Fourth, and finally, it must show

21

"that the public interest would not be disserved by a permanent injunction." *Id.* (quoting *eBay*, 547 U.S. at 391).    "[W]hen the Government is the opposing party," as it is in this case, the balance-of-equities and public-interest factors "merge," and courts address those factors together. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Singh v. Berger*, 56 F.4th 88, 107 (D.C. Cir. 2022).

### III. ANALYSIS

#### A.    Plaintiffs have standing.

Federal courts are courts of limited jurisdiction.  *See Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024); U.S. Const. art. III, § 2, cl. 1.  One necessary condition for a claim to come within this Court's limited subject-matter jurisdiction is that the plaintiff must have standing to advance the claim.  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017).  To have standing, the plaintiff must have suffered an "injury in fact" that is "concrete and particularized," "actual or imminent," and "fairly . . . trace[able] to the challenged action of the defendant," which "likely" will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original) (first quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984); then quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); and then quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)).

A party must have standing "for each claim that [it] press[es] and for each form of relief that [it] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  For a plaintiff to have standing to pursue "forward-looking" relief such as an injunction, the plaintiff must "face 'a real and immediate threat of repeated injury.'" *Murthy*, 603 U.S. at 58 (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)).  The party asserting standing must show that each of these requirements is satisfied "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

22

Most of the Plaintiffs in these cases are organizations, rather than individuals.  There are two ways that organizations can have standing to sue in federal court.  See *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006).  First, an organization can have standing "on its own behalf," which is called "organizational standing." *Id.* (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982); and *Warth v. Seldin*, 422 U.S. 490, 511 (1975)).  Second, an organization can have standing to advance a claim "on behalf of its members," which is called "associational standing."  *Id.* (citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996); and *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)); *Elec. Priv. Info. Ctr. v. United States Dep't of Com.*, 928 F.3d 95, 101 (D.C. Cir. 2019).

Before turning to the several specific claims and forms of relief requested in this case, the Court will briefly summarize the general principles of organizational standing and associational standing.  The Court will also introduce the doctrine of "political-competitor standing," on which the Democratic Party Plaintiffs rely.

     1.   <u>Legal Standards</u>

     a.   *Organizational standing*

To have standing "in its own right," an organization must make "the same showing required of individuals: an actual or threatened injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by a favorable court decision." *Am. Anti-Vivisection Soc'y v. United States Dep't of Agric.*, 946 F.3d 615, 618 (D.C. Cir. 2020) (first quoting *Abigail All.*, 469 F.3d at 132; and then quoting *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entertainment, Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011)).  "To demonstrate injury in fact, an organization must allege a 'concrete and demonstrable injury to the

organization's activities' that is 'more than simply a setback to the organization's abstract social interests.'"  *Id.* (quoting *Havens*, 455 U.S. at 379).

In the foundational decision establishing the contours of organizational standing, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Supreme Court considered whether an organization that provided "counseling and referral services for low-and moderate-income homeseekers" had standing to challenge discriminatory housing practices that the organization alleged had "perceptibly impaired" its ability to provide its services.  *Id.* at 379.  In its opinion, the Court emphasized that the alleged interference with the organization's services was "far more than simply a setback to the organization's abstract social interests."  *Id.*  Instead, it was a "concrete and demonstrable injury to the organization's activities" that resulted in a "drain on the organization's resources."  *Id.*  On those facts, the Court concluded that the organization had standing to challenge the discriminatory practices at issue.  *Id.*

However, as the Supreme Court recently emphasized in *Food and Drug Administration v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), "*Havens* was an unusual case," and the Court "has been careful not to extend the *Havens* holding beyond its context."  *Id.* at 396.  "Critically," the Court explained, the organizational plaintiff in *Havens* was not only "an issue-advocacy organization," but also a provider of "a housing counseling service."  *Id.* at 395.  The Court went on to explain that the organization's standing in *Havens* arose not from any harm to its abstract social objectives, but rather from an injury to "core business activities" like its counseling service.  *Id.*

Applying that understanding of the holding in *Havens*, the Court held in *Alliance for Hippocratic Medicine* that several medical associations lacked organizational standing to challenge the Food and Drug Administration's approval of mifepristone, a drug used to perform

24

abortions. 602 U.S. at 396. The Court acknowledged the medical associations' allegations that the agency's actions had caused them to expend "considerable resources" on research, advocacy, and public education related to mifepristone and abortion. *Id.* at 394. But it held that under Article III, an organization "cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.*

Prior circuit precedent is consistent with the organizational-standing principles articulated in *Alliance for Hippocratic Medicine.* For example, the D.C. Circuit has concluded that efforts by civil rights organizations to investigate discriminatory practices and "increas[e] legal pressure" on defendants to change those practices are not sufficient to confer standing in the absence of some impairment to the plaintiff organizations' core service programs. *See Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138, 1142 (D.C. Cir. 2011); *Fair Emp. Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276–77 (D.C. Cir. 1994). If the rule were otherwise, "the time and money that plaintiffs spend in bringing suit against a defendant would itself constitute a sufficient 'injury in fact,' a circular position that would effectively abolish the [standing] requirement altogether." *Fair Emp. Council*, 28 F.3d at 1277. Instead, the D.C. Circuit has analyzed organizational standing by focusing on whether a defendant's conduct prompted a plaintiff organization to divert resources toward providing additional *direct services* designed to offset the harmful effects of the challenged conduct. *See id.* at 1277 (distinguishing expenditures of resources on an organization's core service programs, which can support standing, from expenditures on "the allied efforts at increasing legal pressure on civil-rights violators," which cannot); *Equal Rights Ctr.*, 633 F.3d at 1141–42 & n.4 (analyzing standing by focusing on the "diversion of resources to programs designed to counteract the injury," including "increased educational and counseling efforts").

In sum, because a party cannot "spend its way into standing," mere "issue-advocacy" activities are not sufficient to support organizational standing. *See Alliance for Hippocratic Medicine*, 602 U.S. at 395–96. However, organizations can have standing to challenge practices that directly interfere with their core activities, such as direct services programs. *See Alliance for Hippocratic Medicine*, 602 U.S. at 394–96; *Equal Rights Ctr.*, 633 F.3d at 1141–42 & n.4.

  b. *Associational standing*

Regardless of whether an organization has standing to pursue a claim on its own behalf, it may have associational standing to sue on behalf of its members. This path to standing is always available to a "voluntary membership organization with identifiable members" that "represents [its members] in good faith." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023). An organization not meeting that description may also have associational standing, but to do so, it "must have" at least "the 'indicia of a traditional membership association.'" *Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) (quoting *Sorenson Commc'ns v. FCC*, 897 F.3d 214, 225 (D.C. Cir. 2018)); *see also Hunt*, 432 U.S. at 343. When determining whether these "indicia" are present, courts weigh multiple "considerations," including "whether members finance the organization, guide its activities, or select its leadership." *Id.* "[I]t is not enough for putative members simply to read a group's publications, subscribe to its e-mail list, or follow its Facebook page." *Id.* (citing *Sorenson*, 897 F.3d at 225; and *Gettman v. DEA*, 290 F.3d 430, 435 (D.C. Cir. 2002)).

If these threshold requirements are satisfied, a party may show that an organization has associational standing by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests [the organization] seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the

participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343; *Elec. Priv. Info. Ctr.*, 928 F.3d at 101.

To satisfy the first prong of the associational-standing analysis, an organization "must show, for each of its claims, that at least one of its members has standing." *Elec. Priv. Info. Ctr.*, 928 F.3d at 101. One way that an organization can make this showing is by producing declarations from individual members setting forth the facts that establish their standing. *See, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201 (2023); *Ctr. for Sustainable Econ. v. Jewell*, 779 F.3d 588, 596 (D.C. Cir. 2015). The Supreme Court has also recognized associational standing based on declarations from leaders of organizations describing their organizations' membership in sufficient detail to support a finding of standing. *See Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 271 (2015); *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007). Consistent with this practice, the U.S. Court of Appeals for the Ninth Circuit recently held that a membership organization had established its standing without identifying any of its members by name where the opposing parties did not "need to know the identity of a particular member to respond to [the organization]'s claim of injury." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 709 (9th Cir. 2025).

c.    *Political-competitor standing*

Political competitors may have Article III standing to challenge the "illegal structuring of a competitive environment" in which "rival parties defend their concrete interests." *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 85–87 (D.C. Cir. 2005).[18] This type of standing is relevant

---

[18] *See also, e.g.*, *Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022) ("If an allegedly unlawful election regulation makes the competitive landscape worse for a candidate or that candidate's party than it would otherwise be if the regulation were declared unlawful, those injured parties have the requisite concrete, non-generalized harm to confer

primarily when a plaintiff challenges an improper benefit to a competitor: although parties usually lack standing to challenge benefits to others, political-competitor standing—like the analogous doctrine of economic-competitor standing—recognizes that certain benefits predictably inflict concrete harms on the head-to-head competitors of their beneficiaries. *See id.*

Political candidates' standing to challenge unlawful rules shaping the "competitive environment" for elections derives from the principle that "parties defending concrete interests" suffer a cognizable harm when they are denied fair opportunities to protect those interests. *Shays*, 414 F.3d at 87.  In the election context, as in other regulated arenas, the D.C. Circuit has recognized that "regulated litigants suffer legal injury when agencies set the rules of the game in violation of statutory directives." *Id.* at 85.

Because political-competitor standing is based on political candidates' underlying interest in the "retention of elected office," *see id.*, it is available primarily to candidates with "concrete plans to run for office in the future," *see Nader v. Fed. Election Comm'n*, 725 F.3d 226, 229 (D.C. Cir. 2013).  At least one court in this District has also concluded that the "party affiliate" of active candidates for political office may also have political-competitor standing.  *See Nat. L. Party of U.S. v. F.E.C.*, 111 F. Supp. 2d 33, 47 (D.D.C. 2000) (ESH).  By contrast, courts have declined to extend political-competitor standing to political action committees, reasoning that such organizations do not "compete" in elections in the relevant sense.  *See Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618, 621 (D.C. Cir. 1998); *AB PAC v. Fed. Election Comm'n*, No. 22-cv-2139, 2023 WL 4560803, at *4 (D.D.C. July 17, 2023) (TJK).

---

standing."); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (recognizing political party's associational standing "on behalf of its candidate" to challenge action that allegedly "threaten[ed] [the candidate's] election prospects and campaign coffers"); *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 626 (2d Cir. 1989) (recognizing standing to challenge the exclusion of a candidate from a political debate, which "palpably impaired [the candidate's] ability to compete on an equal footing with other significant presidential candidates").

2.    Plaintiffs' standing to challenge Section 2(a)

Applying these principles, both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs have established that they have Article III standing to challenge the directive in Section 2(a) of the Executive Order that the EAC alter the Federal Form to require documentary proof of citizenship.

a.    *The Nonpartisan Plaintiffs*

The Nonpartisan Plaintiffs have organizational standing to challenge the implementation of Section 2(a) of the Executive Order because that provision would directly interfere with their core activities, including providing voter registration services throughout the Nation.  Each of the Nonpartisan Plaintiffs has introduced evidence that registering eligible voters for federal elections is a core part of its mission.[19]  And as the D.C. Circuit has squarely held, implementing a documentary-proof-of-citizenship requirement would "unquestionably make it more difficult for [organizations like the Nonpartisan Plaintiffs] to accomplish their primary mission[s] of registering voters."  *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

The burden that a documentary-proof-of-citizenship requirement would impose on the Nonpartisan Plaintiffs would be "far more than simply a setback to [their] abstract social interests."  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)).  Instead, it would be a direct impediment to one of the organizations' "core business activities": registering eligible

---

[19] *See* Proaño Decl. ¶ 12 (LULAC); Streyder Decl. ¶ 19 (Secure Families Initiative); Nitschke Decl. ¶ 3 (Arizona Students' Association); Stewart Decl. ¶¶ 3–4 (League of Women Voters Education Fund and League of Women Voters of the United States); Sheoran Decl. ¶ 8 (League of Women Voters of Arizona); Guttlein Decl. ¶ 5 (Hispanic Federation); Sterling Decl. ¶ 13 (NAACP); Nguyen Decl. ¶¶ 8–9, 17 (OCA – Asian Pacific American Advocates); Chen Decl. ¶¶ 5–7 (Asian and Pacific Islander American Vote).

29

voters.  *Id.* at 395.  For example, a documentary-proof-of-citizenship requirement would render obsolete several of the online tools that the Nonpartisan Plaintiffs have developed and routinely use to help eligible people register to vote, requiring the organizations to either update or replace those tools.[20]  Similarly, adding such a requirement would force the Nonpartisan Plaintiffs to update educational information that they provide to prospective voters, much of which they have translated into multiple languages.[21]  A documentary-proof-of-citizenship requirement would also require the Nonpartisan Plaintiffs to invest additional resources in training their staff and volunteers, both to understand the new requirement and to handle the sensitive personal information contained in passports and other documents listed in the Executive Order as acceptable proof of citizenship.[22]  Such a requirement would also make existing voter registration efforts less effective:  For example, voter registration drives held at churches, grocery stores, libraries, parks, and in other public places will be less effective if the EAC implements a documentary-proof-of-citizenship requirement because many people who are eligible to register to vote do not carry their passport or other citizenship documents with them as

---

[20] *See, e.g.*, Stewart Decl. ¶¶ 3, 7, 10–16, 21–22 (League of Women Voters Education Fund and League of Women Voters of the United States); Sheoran Decl. ¶¶ 10, 36 (League of Women Voters of Arizona); Guttlein Decl. ¶¶ 15–16, 19 (Hispanic Federation); Sterling Decl. ¶¶ 16–20, 33–37 (NAACP); Nguyen Decl. ¶ 10 (OCA – Asian Pacific American Advocates); Chen Decl. ¶¶ 8–16 (Asian and Pacific Islander American Vote).

[21] *See, e.g.*, Proaño Decl. ¶¶ 13–14, 29 (LULAC); Streyder Decl. ¶ 19 (Secure Families Initiative); Stewart Decl. ¶¶ 11, 17–19 (League of Women Voters Education Fund and League of Women Voters of the United States); Nguyen Decl. ¶ 14 (OCA – Asian Pacific American Advocates); Chen Decl. ¶¶ 8, 15 (Asian and Pacific Islander American Vote).

[22] *See* Proaño Decl. ¶ 13, 17, 20–24 (LULAC); Streyder Decl. ¶ 21–24 (Secure Families Initiative); Nitschke Decl. ¶¶ 16–17 (Arizona Students' Association); Stewart Decl. ¶¶ 22–23 (League of Women Voters Education Fund and League of Women Voters of the United States); Sheoran Decl. ¶¶ 33–38 (League of Women Voters of Arizona); Guttlein Decl. ¶¶ 9–10, 13 (Hispanic Federation); Sterling Decl. ¶¶ 26, 45–47 (NAACP); Nguyen Decl. ¶¶ 15, 18 (OCA – Asian Pacific American Advocates); Chen Decl. ¶ 20 (Asian and Pacific Islander American Vote).

they go about their daily routines.[23]  This loss of effectiveness would interfere with the Nonpartisan Plaintiffs' voter-registration missions and force them to invest resources in additional voter-registration services to achieve their missions.[24]  *See Newby*, 838 F.3d at 9.  For all these reasons, the Nonpartisan Plaintiffs have shown that they have organizational standing to challenge the Executive Order's directive to the EAC to act to "require" documentary proof of citizenship from users of the Federal Form.

At the preliminary injunction stage, the Federal Defendants argued that because Section 2(a) "would not prohibit voter registration," the provision is "neutral with respect to [the Plaintiffs'] substantive missions" and it is "'entirely speculative' whether the challenged practice will actually impair the organization[s'] activities."  *See* Defs.' Opp'n, Dkt. No. 85, at 23 (quoting *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 42 (D.D.C. 2018) (BAH)); Defs.' Opp'n, Dkt. No. 84, at 33–34) (raising the same argument in response to the Democratic Party Plaintiffs).  This argument is unworkable and inconsistent with precedent because it relies on too narrow an interpretation of what it means to "impair" an organization's mission.  The plaintiff organization in *Havens*, the seminal case recognizing organizational standing, was not challenging a law that "prohibit[ed]" its housing counseling service.  *Compare* Defs.' Opp'n, Dkt. No. 84, at 33, *and* Defs.' Opp'n, Dkt. No. 85, at 23, *with Havens*, 455 U.S. at 378–79.  Instead, the organization challenged unlawful racial steering practices that it had "devote[d] significant resources" to "counteract."  *Havens*, 455 U.S. at 379.  Just as the plaintiff

---

[23] *See* Proaño Decl. ¶ 42 (LULAC); Nguyen Decl. ¶ 11 (OCA – Asian Pacific American Advocates); Sterling Decl. ¶¶ 21–24 (NAACP); *see also* Tr. at 27:20–28:5, 37:20–38:1.

[24] *See* Proaño Decl. ¶¶ 28–29 (LULAC); Streyder Decl. ¶¶ 24–28 (Secure Families Initiative); Nitschke Decl. ¶¶ 15–22 (Arizona Students' Association); Stewart Decl. ¶¶ 28–32 (League of Women Voters Education Fund and League of Women Voters of the United States); Sheoran Decl. ¶¶ 36, 38, 40–41 (League of Women Voters of Arizona); Guttlein Decl. ¶ 22 (Hispanic Federation); Sterling Decl. ¶¶ 35, 37, 40–48 (NAACP); Nguyen Decl. ¶¶ 18–19 (OCA – Asian Pacific American Advocates); Chen Decl. ¶¶ 14–16, 19–21 (Asian and Pacific Islander American Vote).

organization in *Havens* had standing to challenge the harmful effects of racial steering on its mission of helping provide equal access to housing, so too Plaintiffs in this case have standing to challenge the burdens that Section 2(a) would impose on their missions of registering and turning out eligible voters. *See id.*

As an alternative basis for standing, at least one of the Nonpartisan Plaintiffs has shown that it has associational standing to challenge Section 2(a) of the Executive Order because that provision would directly harm the concrete interests of its individual members in registering to vote and having their votes counted in upcoming federal elections.[25]   At the hearing on the Plaintiffs' motions for preliminary injunctions, the Nonpartisan Plaintiffs proffered that that they could, if required, produce a pseudonymous declaration from at least one member of the Arizona Students' Association showing that the declarant is eligible to vote but would have difficulty complying with a documentary-proof-of-citizenship requirement.   *See* Tr. at 95:8–23.   The Nonpartisan Plaintiffs further proffered that there are many other similarly situated members of their organizations. *See id.*   They later produced two declarations from two such members of the Arizona Students' Association, both of whom are eligible voters who face barriers to obtaining the documentation that would necessary to prove their citizenship.[26]   Because the Defendants in this case do not "need to know the identity of a particular member to respond to [the Plaintiffs'] claim[s] of injury" in this case, the Court concludes that the Nonpartisan Plaintiffs' declarations from multiple organizational leaders and pseudonymous declarations from two specifically aggrieved members of the Arizona Students' Association provide a sufficient basis for holding, in the alternative, that the Arizona Students' Association has shown a substantial likelihood of

---

[25] *See* Nitschke Decl. ¶¶ 2–3, 8–14 (Arizona Students' Association).
[26] *See* Decl. of J. Doe 1 ("Doe 1 Decl."), Dkt. No. 145-29; Decl. of J. Doe 2 ("Doe 2 Decl."), Dkt. No. 145-30.

associational standing to challenge Section 2(a) on behalf of its individual members.  *See Mi Familia Vota*, 129 F.4th at 709.  The Arizona Students' Association has carried its burden of demonstrating associational standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *cf. Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 91, 122–23 (D.D.C. 2025) (CKK) (rejecting assertion of associational standing where the party invoking federal jurisdiction had not made any showing that any identifiable member of the plaintiff organization had standing).  Because identifiable individual members of the Arizona Students' Association's would have standing to challenge Section 2(a) in their own right,[27] the association's challenge is germane to its purposes,[28] and further participation from individual members is not required to resolve any issue in this case, the Arizona Students Association has associational standing to challenging Section 2(a) on behalf of its individual members.  *See Hunt*, 432 U.S. at 343; *Elec. Priv. Info. Ctr.*, 928 F.3d at 101.

b.     *The Democratic Party Plaintiffs*

The Democratic Party Plaintiffs also have standing to challenge the implementation of Section 2(a) of the Executive Order.  Specifically, many of the Democratic Party Plaintiffs have organizational standing to challenge this provision based on its effect on their ability to register new voters as members and supporters of the Democratic Party, which they do in service of their mission of electing Democratic candidates to office throughout the country.[29]  The DNC, DGA, DSCC, and DCCC have each shown that the implementation of Section 2(a) would make it more

---

[27] *See* Nitschke Decl. ¶¶ 8–11; Doe 1 Decl. ¶¶ 1–9; Doe 2 Decl. ¶¶ 1–11.

[28] *See* Nitschke Decl. ¶ 3.

[29] *See* Schneider Decl. ¶¶ 3, 18–23 (DNC); Edelman Decl., ¶¶ 4, 13–17 (DGA); Boss Decl. ¶¶ 3, 16–21 (DSCC); Ruselowski Decl. ¶¶ 4, 18–24 (DCCC).

difficult for them to register voters who are likely to support Democratic candidates, forcing them to divert additional resources toward further voter registration efforts.[30] These expenditures of resources would trade off directly against investments in other time-sensitive, election-related activities that the organizations would otherwise make, including developing and paying to distribute political advertisements in competitive races.[31] As is true of the Nonpartisan Plaintiffs, the burden that Section 2(a) would impose on the Democratic Party Plaintiffs is therefore "far more than simply a setback to [their] abstract social interests." *See All. for Hippocratic Med.*, 602 U.S. at 394 (quoting *Havens*, 455 U.S. at 379). This burden would directly impair the Democratic Party Plaintiffs' "core business activities" of registering and turning out supporters of Democratic candidates to elect those candidates to office. *Id.* at 395. Therefore, the implementation of Section 2(a) would inflict a concrete harm on the DNC, DGA, DSCC, and DCCC, and those Plaintiffs have organizational standing to challenge it.

As an alternative basis for standing, the DNC has associational standing to challenge Section 2(a). The DNC counts among its members each of the many voters across the country who are registered as Democrats.[32] Many of these individuals lack documentary proof of citizenship that would satisfy Section 2(a)'s requirements or would have difficulty accessing that documentary proof to register to vote if they move to a new address or otherwise need to renew

---

[30] *See* Schneider Decl. ¶¶ 21–22 (DNC); Edelman Decl. ¶¶ 15–17 (DGA); Boss Decl. ¶¶ 20–21 (DSCC); Ruselowski Decl. ¶¶ 23–24 (DCCC).

[31] *See* Schneider Decl. ¶ 23 (DNC); Edelman Decl. ¶¶ 16–17 (DGA); Boss Decl. ¶ 21 (DSCC); Ruselowski Decl. ¶¶ 23–24 (DCCC).

[32] *See* Schneider Decl. ¶ 4. The DNC's identification of these voters as "members" for purposes of associational standing is consistent with precedent. Registered Democrats are "identifiable members" who the DNC "represents in good faith." *See Students for Fair Admissions*, 600 U.S. at 201. These members also "guide [the organization's] activities" and shape its strategy by selecting particular Democratic leaders for public offices, some of whom in turn become organizational leaders of the DNC. *See Viasat*, 47 F.4th at 781.

their registrations.[33]  The implementation of Section 2(a) would therefore hinder these members' ability to register to vote, inflicting a cognizable harm that is directly traceable to the Executive Order.  *See Mi Familia Vota*, 129 F.4th at 709.  Because these members would have standing to challenge Section 2(a) in their own right, the challenge to Section 2(a) is germane to the Democratic Party Plaintiffs' missions of helping to elect Democrats by registering and turning out voters, and individuals members' participation is not necessary to the resolution of any issue in this case, the Democratic Party Plaintiffs have associational standing to raise the same challenge.  *See Hunt*, 432 U.S. at 343; *Elec. Priv. Info. Ctr.*, 928 F.3d at 101.

Finally, as a further alternative basis for standing, several of the Democratic Party Plaintiffs have shown political-competitor standing on the theory that Section 2(a) would cause the "illegal structuring of a competitive environment" in which "rival parties defend their concrete interests."  *Shays*, 414 F.3d at 85–87.  Two of the Democratic Party Plaintiffs—Plaintiff Jeffries and Plaintiff Schumer—have made clear showings of political-competitor standing to challenge Section 2(a) of the Executive Order based on their active candidacies for reelection to federal office.[34]  Jeffries and Schumer each aver that some of their constituents and likely supporters may be unable to register to vote or may be dissuaded from registering if Section 2(a) is implemented because, although they are eligible to vote, they lack easy access to documentary proof of citizenship.[35]  Implementing this provision would alter the "competitive environment" in which Plaintiffs Jeffries and Schumer compete for elective office.  *See Shays*, 414 F.3d at 87.  Plaintiffs Jeffries and Schumer therefore have political-competitor standing to challenge

---

[33] *See* Schneider Decl. ¶ 19.

[34] *See* Jeffries Decl. ¶ 3; Schumer Decl. ¶ 2.

[35] *See* Jeffries Decl. ¶¶ 13–14; Schumer Decl. ¶¶ 11–13.

Section 2(a) of the Executive Order.  Finally, because a "party affiliate" of an active candidate may also exercise political-competitor standing, *see Nat. L. Party*, 111 F. Supp. 2d at 47, the Democratic Party Plaintiffs affiliated with Plaintiffs Jeffries and Schumer and other active Democratic candidates throughout the country have standing to raise the same challenge.

At the preliminary injunction stage, the Defendants argued that the Democratic Party Plaintiffs' competitive standing arguments are inapt because the Plaintiffs "have not been 'singled out for specially unfavorable treatment'" and cannot show that they will lose votes because of Section 2(a) of the President's Executive Order.  Defs.' Opp'n, Dkt. No. 84, at 15 (quoting *Raines v. Byrd*, 521 U.S. 811, 821 (1997)).  But the D.C. Circuit has explained that unlawful changes to the competitive environment can support standing for political candidates even when those changes apply to plaintiff candidates "as well as to their competitors."  *See Am. Inst. of Certified Pub. Accts. v. I.R.S.*, 804 F.3d 1193, 1197 (D.C. Cir. 2015) (citing *Shays*, 414 F.3d at 87).  And a candidate proceeding under a theory of "illegally structured" political competition "has no obligation to demonstrate definitively that he has less chance of victory" under the challenged rules than he would under some alternative scheme.  *LaRoque v. Holder*, 650 F.3d 777, 787 (D.C. Cir. 2011).  Therefore, contrary to the Defendants' arguments, the Democratic Party Plaintiffs' standing does not depend on "speculation that facially neutral election rules favor one party over another."  Defs.' Opp'n, Dkt. No. 84, at 15–16.  Instead, their standing rests properly on the asserted, non-speculative interference with their right to compete for election under lawful "rules of the game."  *Shays*, 414 F.3d at 85.

Before this Court preliminarily enjoined the implementation of Section 2(a), the Federal Defendants argued that the Plaintiffs had not shown any harm redressable by a favorable decision because "nothing has been implemented."  *See* Defs.' Opp'n, Dkt. No. 84, at 36; Defs.'

Opp'n, Dkt. No. 85, at 25. Similarly, the Federal Defendants argued that the Executive Order does not inflict any competitive harm on the Democratic Party Plaintiffs because it does not directly change the content of the Federal Form. *See* Defs.' Opp'n, Dkt. No. 84, at 11. These arguments miss the mark. As the D.C. Circuit made clear in *Newby*, "Damocles's sword does not have to actually fall . . . before the court will issue an injunction." 838 F.3d at 9. Under the circumstances presented here, the threatened harm to both the Nonpartisan Plaintiffs' and the Democratic Party Plaintiffs' various interests is "sufficiently imminent and substantial" to satisfy the injury-in-fact requirement and support their standing to seek "forward-looking" injunctive relief against the implementation of Section 2(a). *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

Under these circumstances, the threatened harm to the Nonpartisan Plaintiffs' interests from the implementation of Section 2(a) is "sufficiently imminent and substantial" to support their standing to seek "forward-looking" injunctive relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013)).

Defendants have also raised a handful of cross-cutting arguments against both the Nonpartisan Plaintiffs' and Democratic Party Plaintiffs' standing to challenge Section 2(a) that sound in traceability and redressability, but these arguments are unpersuasive. At the preliminary injunction stage, the Federal Defendants argued that each of the Plaintiffs' claimed injuries-in-fact is the result of "individuals exercising their own right to make decisions" about matters like whether to obtain documentary proof of citizenship, whether to carry that proof with them in public, and whether to share that proof with nonprofit organizations that offer to help them register to vote. *See* Defs.' Opp'n, Dkt. No. 84, at 17; Defs.' Opp'n, Dkt. No. 85, at 11. But as the Nonpartisan Plaintiffs correctly note, the Supreme Court's decision in *Department of*

*Commerce v. New York*, 588 U.S. 752 (2019), forecloses this argument. *See* Nonpartisan Pls.'

Reply, Dkt. No. 96, at 17–18. In that case, the Supreme Court considered an allegation that

adding a question about citizenship to the census would result in lower response rates. *See Dep't*

*of Com.*, 588 U.S. at 766–67. The Government argued that the plaintiffs lacked standing because

any decline in response rates was not fairly traceable to the proposed change in the census

questionnaire. *Id.* at 767–78. Instead, the Government contended, any decline was the result of

"the independent action of third parties choosing to violate their legal duty to respond to the

census" based on "unfounded fears" that the Government would use the responses for law

enforcement purposes. *Id.* The Supreme Court roundly rejected that argument, holding instead

that a theory of standing based on "the predictable effect of Government action on the decisions

of third parties" satisfies the traceability requirement for Article III standing. 588 U.S. at 767–

68. So too here: Because each of the Plaintiffs' asserted injuries flows from the "predictable

effect" that a burdensome new federal requirement for voter registration will have on eligible

voters' behavior, those injuries satisfy the traceability requirement. *See id.*

     In sum, both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs have shown

that each of the injuries-in-fact that they have identified is "fairly . . . trace[able] to" Section 2(a)

of the Executive Order and would "likely" be "redressed by a favorable decision" from this court

enjoining the implementation of that section. *See Lujan*, 504 U.S. at 560–61. Plaintiffs have

therefore carried their burden of establishing standing to challenge Section 2(a).

     **B.**    **Plaintiffs' constitutional claims regarding Section 2(a) are ripe.**

     In a case like this one involving a pre-enforcement challenge to executive action,

"[c]onstitutional ripeness is subsumed into the Article III requirement of standing, which

requires a [plaintiff to show] an injury-in-fact that is imminent or certainly impending." *POET*

*Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) (internal quotation marks omitted)

(quoting *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012)).   As the Court has

explained, Plaintiffs have satisfied this requirement.   *See supra* Section III.A.

But ripeness has an additional prudential (rather than constitutional) component.   *See*

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).[36]   Prudential

ripeness began in the seminal administrative-law case *Abbott Laboratories v. Gardner*, 387 U.S.

136 (1967), and its development has been inextricably intertwined with review of agency action

under the APA.   As the Supreme Court explained, the "basic rationale" of prudential ripeness:

> is to prevent the courts, through avoidance of premature adjudication, from
> entangling themselves in abstract disagreements over administrative policies, and
> also to protect the agencies from judicial interference until an administrative
> decision has been formalized and its effects felt in a concrete way by the
> challenging parties.

*Id.* at 148–49.   Over decades of development, and many competing articulations, the prudential

ripeness doctrine has arrived at a two-part balancing test.   *See Sprint Corp. v. FCC*, 331 F.3d

952, 956 (D.C. Cir. 2002) (observing that "the fundamentals of the analysis remain the same"

regardless of the verbiage).   The Court must consider institutional reasons for deferring review,

like whether agency action is tentative and ongoing (as opposed to final) and whether further

factual development is necessary.   *Am. Petrol. Inst.*, 683 F.3d at 387.   The Court must also

consider whether delaying review would cause hardship to the plaintiffs.   *Id.* at 390.

A three-judge panel in this District recently applied the doctrine of prudential ripeness to

a non-APA challenge to an executive order.[37]   *See Common Cause v. Trump*, 506 F. Supp. 3d 39,

45–53 (D.D.C. 2020) (three-judge panel) (Katsas, J.).   The executive order at issue announced a

---

[36] The Supreme Court has cast doubt on the enduring vitality of the prudential ripeness doctrine.   *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).   As has at least one member of the D.C. Circuit.   *See Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163–67 (D.C. Cir. 2025) (Henderson, J., concurring). However, neither court has definitively abandoned prudential ripeness, and this Court cannot do so on its own.

[37] More precisely, the challenge was to a "presidential memorandum."   *Common Cause*, 506 F. Supp. 3d at 46.   But the difference in nomenclature is immaterial.   *See* Legal Effectiveness of a Presidential Directive, as Compared to an Executive Order, 24 Op. O.L.C. 29 (2000) (opinion of then-Acting Assistant Attorney General Randolph D. Moss).

policy of excluding aliens from census apportionment and directed the Secretary of Commerce "to provide information permitting the President" to effect that policy. 85 Fed. Reg. 44680 (2020). Before the Secretary had done so, plaintiffs filed suit arguing that excluding aliens was unconstitutional. *Common Cause*, 506 F. Supp. 3d at 43–44. A divided panel concluded that, because the executive order "neither demand[ed] any particular apportionment base nor exclude[d] any specific categories of aliens" and was "several steps removed" from such action, prudential ripeness required dismissal to avoid "disturb[ing] the ongoing and reticulated process" of apportionment. *Id.* at 46. Weeks later and in less detail, the Supreme Court concluded that a similar challenge to the same order was unripe because "[w]e simply do not know whether and to what extent the President might direct the Secretary to 'reform the census' to implement his general policy with respect to apportionment." *Trump v. New York*, 592 U.S. 125, 132 (2020).

These discussions of ripeness in the context of executive orders recall an aspect of the more robust corpus of administrative law in which the ripeness doctrine has developed: the distinction between legislative rules and guidance. Simply stated, agency action that purports to create binding obligations or prohibitions is a legislative rule; agency action that merely provides a general statement of policy (perhaps alluding to legislative rules to come) is guidance. *See Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 251–22 (D.C. Cir. 2014). And while legislative rules "may be subject to pre-enforcement review"; guidance may not. *Id.*

As then-District Judge Ketanji Brown Jackson once recognized, executive orders are susceptible to similar categorization. *See Am. Fed'n of Gov't Emps. v. Trump*, 318 F. Supp. 3d 370, 437–38 (D.D.C. 2018) (KBJ) ("*Am. Fed'n*"), *rev'd on other grounds*, 929 F.3d 748 (D.C. Cir. 2019). Some executive orders, like legislative rules, purport to create binding, enforceable obligations on their own. *See, e.g.*, *Amalgamated Meat Cutters v. Connally*, 337 F. Supp. 737,

40

743 (D.D.C. 1971) (executive order freezing wages). Others, like guidance, merely state a general policy aim and direct others to begin the process of formalizing that goal in an enforceable way. *See, e.g.*, *Common Cause*, 506 F. Supp. 3d at 43; *Trump*, 592 U.S at 132.

Analogizing the distinction between executive orders that "dictate particular outcomes" and those that "do not have any independent operative legal effect," *Am. Fed'n*, 318 F. Supp. 3d at 437–38, to the distinction between legislative rules and guidance offers a useful and doctrinally rich framework for assessing issues of timing (whether grounded in ripeness or standing) in the context of executive orders. The Court proceeds with this background in mind.

In this case, Defendants argue that Plaintiffs' claims regarding Section 2(a) are both constitutionally and prudentially unripe. Defendants' argument proceeds as follows: Section 2(a) orders that the EAC take "appropriate action" to require documentary proof of citizenship on the Federal Form. And Section 11(b)'s saving clause directs that the order "shall be implemented consistent with applicable law." The applicable law—HAVA and the NVRA—empowers the EAC to make changes to the Federal Form. Considering the saving clause, the Court should read the Section 2(a) as little more than a suggestion that the EAC require documentary proof of citizenship, which the EAC can either adopt or reject in its ordinary course of rulemaking. That ordinary course takes time and has not even begun. As a result, Defendants conclude, Plaintiffs' fears about Section 2(a) are entirely speculative, the record requires further factual development, and Plaintiffs' claims are both unripe and unsuccessful on the merits.

The Court rejected this argument at the preliminary injunction stage, and it does so again today, for substantially the same reasons. *See LULAC I*, 780 F. Supp. 3d at 183–88 (D.D.C. 2025).

41

In Defendants' telling, it is not clear what the Executive Order requires of the EAC or whether it requires anything at all. The Federal Defendants suggested in their briefing at the preliminary injunction stage that the addition of a documentary-proof-of-citizenship requirement "may *never* occur," and that Plaintiffs are engaged in nothing more than "speculation about future actions the EAC may take." Defs.' Opp'n, Dkt. No. 84, at 11–12, 31; Defs.' Opp'n, Dkt. No. 85, at 10, 20. Now, the Federal Defendants argue that Section 2(a) merely "requires the commencement of a process" through which the EAC must consider potential revisions to the Federal Form, without dictating "the outcome of that process." Federal Defs.' Mem., Dkt. No. 162-1, at 16.

However, this account cannot be squared with the plain text of the Executive Order. Section 2(a) mandates that the EAC take action to require documentary proof of citizenship on the Federal Form. It states that mandate in no uncertain terms: "By the authority vested in me as President . . . it is hereby *ordered* [that]: . . . the Election Assistance Commission *shall take* appropriate action to *require* . . . documentary proof of citizenship" on the Federal Form. Exec. Order 14,248 § 2(a)(i)(A) (emphasis added). Section 2(a) imposes a deadline for such action: The EAC must act "[w]ithin 30 days of the date of this order." *Id.* § 2(a)(i). Section 2(a) also dictates the precise contours of the mandated requirement, defining what forms of documentary proof will be sufficient (passports, REAL ID-compliant IDs that indicate citizenship, and official military IDs that indicate citizenship, *id.* § 2(a)(ii)) and even prescribing recordkeeping requirements for the States (States must record the date of issuance and expiration, the issuing office, and any unique identification number, *id.* § 2(a)(i)(B)). In short, there is no mystery about what Section 2(a) purports to require or whether Section 2(a) purports to require it.

Defendants' prematurity argument fares no better in the context of prudential ripeness. The doctrine of prudential ripeness may require the Court to abstain from exercising its jurisdiction when the details of a challenged agency action following from an executive order are uncertain and when further factual development is necessary.  *See Abbott Lab'ys*, 387 U.S. at 148–49.  Those causes for judicial restraint are lacking here.

As the Court has just explained, Section 2(a) leaves no uncertainty about what it requires from the EAC.  And for that reason, the lead case in this District on prudential ripeness in the context of executive orders, *Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020) (three-judge panel), is inapposite.  There, the panel majority found that a challenge to an executive order was prudentially unripe where the order at issue "neither demand[ed] any particular apportionment base nor exclude[d] any specific categories of aliens" from census apportionment. *Id.* at 46.  Instead, (like agency guidance) the order merely "announce[d] a general policy" while remaining "several steps removed from" final action and leaving "basic uncertainty" about what form that final action would take.  *Id.* at 46, 47, 50.  But here, (like a legislative rule) Section 2(a) dictates a particular outcome and leaves no uncertainty by prescribing the substance of the documentary-proof-of-citizenship requirement it purports to mandate.  *See Am. Fed'n*, 318 F. Supp. 3d at 437.

Further, the *Common Cause* court grounded its holding in the executive order's repeated admonitions that any action thereunder be taken only "to the extent feasible" and "to the extent practicable."  506 F. Supp. 3d at 47.  Given "the jumble of possible data" that might inform such action, and the enormous complexity of the task at issue, the court determined that these qualifiers presented "genuinely open questions" that required "further factual development."  *Id.* at 47–48.

43

But here, Section 2(a) contains no similar feasibility or practicality qualifiers, and there is no reason to believe that amending the Federal Form would be infeasible. Nor do Plaintiffs' claims—which contend that President's order itself, rather than its outcome, is unlawful—require further factual development. As the Federal Defendants themselves put it at the preliminary injunction stage: "[I]n the context of *ultra vires* and constitutional separation of powers claims, there are no questions of fact, because whether or not a statute or the Constitution grants [the Executive Branch] the power to act in a certain way is a pure question of law." Defs.' Opp'n, Dkt. No. 84, at 23 (second alteration original) (quoting *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 233 (D.D.C. 2019) (KBJ)).

Next, Defendants' talismanic invocation of the Executive Order's saving clause cannot shield Section 2(a) from review. Courts sometimes read saving clauses in executive orders to thwart pre-enforcement challenges to those orders contingent on "[t]he mere possibility that some agency might make a legally suspect decision," *Allbaugh*, 295 F.3d at 33. But here, the Executive Order's saving clause cannot resolve any uncertainty about future agency action in Defendants' favor because there is no uncertainty about what the EAC has been ordered to do. Because Section 2(a) "unambiguously commands action" by the EAC, the saving clause "does not and cannot override its meaning." *City & Cnty. of San Francisco*, 897 F.3d at 1240 (distinguishing *Allbaugh* on this basis).

*Common Cause* is again unavailing for similar reasons. That case concerned the enumeration and reapportionment process attending the decennial census. *Common Cause*, 506 F. Supp. 3d at 42. And Congress has delegated broad discretion in conducting the census to the Secretary of Commerce, while reserving to the President a virtually unchecked final authority to determine the population. *See id.* (citing *Dep't of Com.*, 588 U.S. at 769; *Franklin*, 505 U.S. at

797–99).   Because the plaintiffs' challenges addressed the lawfulness of the undetermined *outcome* of that process, and because the President and the Secretary could wield their authority to arrive at a lawful outcome, the *Common Cause* court relied on the challenged executive order's saving clause to conclude that judicial review was premature.  *Id.* at 47–53, 53 n.8.

But here, Plaintiffs argue that *no* lawful outcome can possibly result from implementation of Section 2(a) because the President lacks any authority to dictate changes to the Federal Form. It is no answer to that facial challenge to say that the saving clause requires the EAC to follow the law while following the President's order.  If the President lacks statutory or constitutional authority to issue the order, Section 2(a) necessarily "command[s] . . . action that [the] saving[] clause purports to negate." *Common Cause*, 506 F. Supp. 3d at 53 n.8.  And Section 2(a) "cannot be held to destroy itself" through the saving clause to avert judicial review.  *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907); *Common Cause*, 506 F. Supp. 3d at 53 n.8.  Indeed, the D.C. Circuit has helpfully clarified this distinction in reviewability between cases in which plaintiffs challenge "the President's exercise" of a discretionary authority that "a statute entrusts . . . to the President" and cases in which plaintiffs allege that "the presidential action—not one, it should be added, even contemplated by Congress—independently violates . . . a statute that delegates no authority to the President to interfere." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1331–32 (D.C. Cir. 1996) (distinguishing *Dalton*, 511 U.S. 462).

Finally, Defendants' timing arguments run aground on the facts in the record.  At the preliminary injunction stage, the Federal Defendants initially relied on a factual argument that Section 2(a) "*has not even begun to be implemented.*"   Defs.' Opp'n, Dkt. No. 85, at 30 (emphasis in original).  Indeed, the Federal Defendants stressed that such implementation "may *never* occur." *Id.* at 15 (emphasis in original).  They also faulted Plaintiffs for "not establish[ing]

that the EAC has begun" the process of implementing Section 2(a) or "establish[ing] when it might do so." Defs.' Opp'n, Dkt. No. 84, at 11.  However, as the Federal Defendants ultimately acknowledged at the hearing on Plaintiffs' motions for preliminary injunctions, the EAC began taking action in response to Section 2(a) on April 11, 2025.  *See* Decl. of Jeannette Sawyer ("Sawyer Decl."), Dkt. No. 145-5, Ex. A; Tr. 10:19, 71:25–72:1, 74:14–15.  That day, the EAC's Executive Director, Brianna Schletz, sent a letter on EAC letterhead to the chief election officials of each State "seeking consultation on development of" the Federal Form.  Sawyer Decl. ¶ 2 & Ex. A.  That letter reads:

> Executive Order 14248 ... provides instruction to the EAC. Section 2 of EO 14248 instructs that the following be required in the national mail voter registration form:
>
> [Text of Sections 2(a)(i)(A)–(B) requiring documentary proof of citizenship and imposing recordkeeping requirements on States].
>
> Section 2 of EO 14248 also instructs that "documentary proof United States citizenship" shall include a copy of:
>
> [Text of Sections 2(a)(ii)(A)–(D) prescribing acceptable forms of ID].

*Id.*  The letter goes on to request information from the States on how they would implement these instructions "if required."  *Id.*

In short, the letter reveals that the EAC had, in fact, already begun to implement Section 2(a) at the time the Court held a hearing on Plaintiffs' motions for preliminary injunctions.  The letter further reveals that the EAC is not interpreting Section 2(a) as an open-ended suggestion to consider including a documentary-proof-of-citizenship requirement of an unknown form.  Instead, the EAC, like the Court and Plaintiffs, reads Section 2(a) as an "instruction" to adopt the precise documentary-proof-of-citizenship requirement outlined in the Executive Order.  *See* Sawyer Decl. Ex. A.

At the hearing on Plaintiffs' motions for preliminary injunctions, the Federal Defendants' counsel made an effort to explain away the EAC's letter. First, counsel argued that the letter seeking consultation from the States "is not any step at all that's contemplated" in the EAC rulemaking process and "had nothing to do with and did not commence the rulemaking process under the APA." Tr. 11:10–22. But consultation with the States is, in fact, a statutorily required component of the EAC's rulemaking process under HAVA and the NVRA. 52 U.S.C. § 20508(a)(2). And even if the Federal Defendants' counsel were correct, an argument that the EAC is taking instruction from the President to implement Section 2(a) by diverging from its ordinary procedures rather than following the statutorily prescribed process is hardly helpful to the Federal Defendants.

Next, Federal Defendants' counsel argued that the EAC's letter was essentially meaningless because it contained "no proposed language" for revising the Federal Form and "nothing specific." Tr. 12:17–18; *see also id.* 13:23–24 ("There's nothing specific. There's no particular rule."). But the letter does, in fact, contain proposed language for a particular rule: It quotes verbatim the content of the revision to the Federal Form mandated by Section 2(a).

Ultimately though, counsel for Defendants abandoned the effort. Reversing course on the position articulated in the Government's briefing in opposition to the motion for summary judgment, he argued that "documentary proof [of citizenship] is required" on the Federal Form because that is what "the President has ordered." Tr. 71:25–72:1, 74:14–15. That interpretation is consistent with the plain text of Section 2(a) and the EAC's own reading of the President's directive, as made evident by the EAC's April 11 letter to State election officials. Whether the President may lawfully issue that directive to the EAC is the legal question presented by Plaintiffs' claims. That question is ripe for the Court's review. Finally, if requiring documentary

proof of citizenship on the Federal Form will injure Plaintiffs, there is no question that "the threatened injury is certainly impending." *Clapper*, 568 U.S. at 401–02.

In sum, Plaintiffs' constitutional claims regarding Section 2(a) are both constitutionally and prudentially ripe for this Court's review.

### C.    Plaintiffs have an equitable right to seek judicial relief from Section 2(a).

Assured of its jurisdiction, the Court turns to the question of whether Plaintiffs have adequately established their right to press their specific claims in federal court. *See* Federal Defs.' Mem. at 10.

To proceed in federal court, a plaintiff must be "a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court"—a concept often shorthanded by stating that the plaintiff must have a "cause of action." *See Davis v. Passman*, 442 U.S. 228, 236–41 & n.18 (1979). *But see Nat'l Treasury Emps. Union v. Vought* (*NTEU*), 149 F.4th 762, 791 n.9 (D.C. Cir. 2025) (noting that courts of equity "did not speak of 'causes of action' as such"); Samuel L. Bray & Paul B. Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1776 (2022) ("It is a mistake, or at least conducive of a mistake, to refer to 'causes of action' in equity.").

In many cases, the plaintiff's right to seek judicial intervention arises from a statute. Often, in cases challenging action by the Executive Branch, that statute is the Administrative Procedure Act. *See* 5 U.S.C. § 704 (providing for judicial review of "final agency action for which there is no other adequate remedy in a court").

However, because "the President is not an agency within the meaning of" the APA, the issuance of an executive order is not a final agency action that is reviewable within the APA framework. *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). Therefore, the APA does not afford a statutory right to direct judicial relief from a Presidential executive order of the kind that

Plaintiffs seek in this case.  Furthermore, Plaintiffs have neither challenged any final agency action by any other Defendant that is ripe for review under the APA, nor identified any other statute that affords them an explicit right of action in federal court.  *See generally* Nonpartisan Pls.' Mem., Dkt. No. 145-1; Dem. Pls.' Mem., Dkt. No. 146-1.

Because the Plaintiffs have "no express cause of action" under any federal statute, they "must resort to equity" to find relief in this case.  *NTEU*, 149 F.4th at 790.  "The availability of such implied equitable relief substantially depends on whether the plaintiff claims a statutory or constitutional violation."  *Id.*

If a plaintiff is alleging a violation of a federal statute, the availability of equitable relief to enforce compliance with the statute—often called *ultra vires* review—is "extremely limited." *NTEU*, 149 F.4th at 791 (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)).  "To succeed on an *ultra vires* claim, the plaintiff must show that (1) judicial review is not expressly foreclosed; (2) the agency made an extreme legal error; and (3) there is no alternative means for the plaintiff to seek judicial review."  *Id.*  The requirement of showing a legal error is "especially demanding" and requires an error that is "'so extreme that one may view it as jurisdictional or nearly so.'"  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (quoting *Griffith*, 842 F.2d at 492)).  As these demanding requirements suggest, an equitable *ultra vires* claim arising from an alleged violation of a statute "rarely succeeds."  *Id.* (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025)).  The Federal Defendants argue persuasively that *ultra vires* review is not available in this case to redress alleged statutory violations by federal agencies because, for statutory claims against federal agencies and officers, "[t]he APA provides Plaintiffs with a meaningful opportunity for judicial review."  *See* Federal Defs.' Mem. at 10–11.

However, controlling precedent affords broader latitude to a plaintiff seeking equitable relief from a *constitutional* violation, rather than a statutory one. "[A]lthough the Supreme Court has all but eliminated implied damages actions for constitutional claims, it has continued to recognize implied equitable actions 'directly under the Constitution.'" *NTEU*, 149 F.4th at 791 (citing *Egbert v. Boule*, 596 U.S. 482 (2022), and then quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010)); *see also Collins v. Yellen*, 594 U.S. 220, 245 (2021) ("[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge."). For claims arising "under the Constitution," the D.C. Circuit has "imposed neither the requirements for *ultra vires* review nor those for APA review." *NTEU*, 149 F.4th at 791.

Given the significant differences in the scope of review that will flow from the characterization of Plaintiffs' equitable claims, this Court begins by determining "whether the underlying claim is properly characterized as statutory or constitutional." *See Glob. Health Council v. Trump*, 153 F.4th 1, 14 (D.C. Cir. 2025) (amended). As the D.C. Circuit recently explained, the "framework for resolving that question" comes from the Supreme Court's decision in *Dalton v. Specter*, 511 U.S. 462 (1994). *See Glob. Health Council*, 153 F.4th at 14.

In *Dalton*, the Supreme Court reviewed a claim that the Executive Branch had acted unlawfully in the process of closing certain military bases. *See* 511 U.S. at 464–68.

In the decision under review, the United States Court of Appeals for the Third Circuit characterized the challenge to the closure of the bases as a claim that the President had acted in violation of constitutional separation-of-powers principles by closing the bases without adhering to procedural requirements that Congress had established by statute. *See Dalton*, 511 U.S. at 466–68; *see also id.* at 471 (noting the "rather curious fashion" in which the Third Circuit had

50

recharacterized the plaintiffs' original claims, which were originally APA claims against defendants other than the President).  The Third Circuit recognized that under *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the President is not an "agency" whose actions are reviewable under the APA.  *See Dalton*, 511 U.S. at 468.  Nevertheless, the Third Circuit concluded that the decision to close the bases was judicially reviewable because, as the Supreme Court stated in *Franklin*, "the 'President's actions may still be reviewed for constitutionality.'" *See id.* at 469 (quoting *Franklin*, 505 U.S. at 801).  Having concluded that reviewing the President's actions for compliance with the procedural requirements that Congress established was a "form of constitutional review" permitted under *Franklin*, the Third Circuit would have allowed the plaintiffs' claim to proceed.  *Id.* at 468.

The Supreme Court reversed, concluding that the plaintiffs' claim was "not a constitutional claim, but a statutory one," and that it therefore could not go forward under the *Franklin* exception for constitutional review.  *Dalton*, 511 U.S. at 477–78.  The Court noted that the procedural requirements at issue arose from a statute that explicitly granted the President the authority to close military bases.  *See id.* at 469–72.  The Court also distinguished *Youngstown*, in which "[t]he only basis of authority asserted" to defend the President's seizure of the steel mills "was the President's inherent constitutional power as the Executive and the Commander in Chief of the Armed Forces."  *Id.* at 473 (citing *Youngstown Sheet & Tube Co v. Sawyer*, 343 U.S. 579, 586–86 (1952)).  The Court then concluded that the plaintiffs' claim challenging the closure of the military bases amounted only to a claim that the President had "exceeded his authority" under the relevant statute.  *Id.* at 477–78.  Finally, it concluded that because the relevant statute committed decision-making "to the discretion of the President," judicial review was "not available."  *Id.* at 474, 478.

51

In this case, unlike in *Dalton*, the plaintiffs' separation-of-powers claims at issue are best characterized as constitutional, not statutory.  All Plaintiffs frame their separation-of-powers claims in constitutional terms, calling upon this Court's equitable power to enjoin actions contrary to the Constitution.  *See* Nonpartisan Pls.' Mot. at 20–21; Dem. Pls.' Mot. at 11–12.  The Federal Defendants respond by invoking the Article II Vesting Clause, arguing that the President has inherent constitutional authority to direct the EAC's decision-making about whether to alter the Federal Form.  *See* Federal Defs.' Mot. & Opp'n at 5 (invoking the President's "general administrative control of those executing the laws" and "general executive power"); *see also* Def.-Intervenor's Mot. & Opp'n at 19–20.  Finally, unlike the statute at issue in *Dalton*, the statute at issue here—the NVRA—assigns no relevant role to the President.  *See* 50 U.S.C. § 20508(a).  The parties' separation-of-powers dispute is therefore essentially constitutional, not statutory, in nature, and the Court shall analyze Plaintiffs' separation-of-powers claims using the standards applicable to "equitable actions 'directly under the Constitution,'" rather than the more demanding standards applicable to *ultra vires* review of statutory claims.  *NTEU*, 149 F.4th at 791 (quoting *Free Enter. Fund*, 561 U.S. at 491 n.2).

The two recent decisions of the D.C. Circuit addressing the proper scope of equitable review of Executive action are not to the contrary.  In *National Treasury Employees Union v. Vought* ("*NTEU*"), 149 F.4th 762, 790–94 (D.C. Cir. 2025), and *Global Health Council v. Trump*, 153 F.4th 1, 14 (D.C. Cir. 2025) (amended), the D.C. Circuit concluded that plaintiffs were not entitled to proceed with equitable claims based on asserted violations of the Constitution because the claims were best characterized as statutory, not constitutional.  The court then concluded that each of the claims at issue was subject to—and fell short of—the rigorous requirements for equitable *ultra vires* review based on asserted violations of statutory

duties.  *See NTEU*, 149 F.4th at 793; *Glob. Health Council*, 2025 WL 2480618, at *9, *12.  The separation-of-powers claims regarding Section 2(a) in this case are readily distinguishable from the claims that the court deemed statutory in *NTEU* and *Global Health Council*.

In *NTEU*, the plaintiffs claimed that various federal defendants had, by effectively shuttering the Consumer Financial Protection Bureau, violated the statutes establishing the Bureau and requiring it to perform certain functions.  *See* 149 F.4th at 791.

Meanwhile, in *Global Health Council*, the plaintiffs claimed that the federal defendants had violated the 2024 Appropriations Act, the Impoundment Control Act, and the Anti-Deficiency Act by impounding funds Congress had appropriated for foreign assistance.  *See* 153 F.4th at 9–10.

Unlike the claims in *NTEU* or *Global Health Council*, the claims in this case do not depend on "whether [relevant] officials violated the governing statutes," *NTEU*, 149 F.4th at 793, nor are they "predicated on . . . underlying statutory violations," *Glob. Health Council*, 2025 WL 2480618, at *8 n.11, or on whether any purported statutory duties were "mandatory," *see Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2709437, at *1 (D.C. Cir. Aug. 28, 2025) (Katsas, J., concurring in the denial of rehearing *en banc*).  In this case, Plaintiffs' core separation-of-powers argument against the implementation of Section 2(a) is not that the President failed to discharge statutory duties or strayed from procedures required by statute. Instead, their primary argument is that the President's directive in Section 2(a) lies outside his constitutional powers and intrudes into the domain of regulating federal election procedure, which the Elections Clause reserves for the States and Congress alone.  Nonpartisan Pls.' Mot. at 20–21; Dem. Pls.' Mot. at 11–12.    That claim is a charge that the President has acted

unconstitutionally, not merely that he has "acted in excess of his statutory authority." *Cf. Dalton*,

511 U.S. at 472.

In sum, Plaintiffs in these consolidated cases directly challenge the constitutionality of

Section 2(a) of Executive Order No. 14,248, and their challenges are not properly characterized

as claims that the President acted in excess of statutory authority.  *See Dalton*, 511 U.S. at 474–

77.  For these claims, which arise "under the Constitution," Plaintiffs are entitled to seek

equitable redress in federal court, and "neither the requirements for *ultra vires* review nor those

for APA review" are applicable.  *See NTEU*, 149 F.4th at 791.

> **D.  Because Section 2(a) cannot lawfully be implemented under our Constitution,
> Plaintiffs are entitled to judgment on the merits of their constitutional claims
> regarding that provision.**

On the merits, the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs each raise

the same, straightforward challenge to Section 2(a) of the Executive Order:  They argue that the

provision is invalid because the Constitution grants the President no authority to direct the EAC

to change the content of the Federal Form, and Congress has not delegated any such power to

him.  *See* Nonpartisan Pls.' Mot. at 21–29; Dem. Pls.' Mot. at 12–17.  This constitutional

separation-of-powers argument succeeds on the merits.

> 1.  <u>Our Constitution assigns responsibility for federal election regulation to
> the States and to Congress, not to the President.</u>

"The President's power, if any, to issue the [Executive O]rder must stem either from an

act of Congress or from the Constitution itself."  *Youngstown*, 343 U.S. at 585; *see also Dalton*,

511 U.S. at 473 (noting that the Constitution empowers the President to take some actions

without express statutory authorization).  But neither the Constitution nor any statute explicitly

grants the President the power to direct that a documentary-proof-of-citizenship requirement be

added to the Federal Form.  On the contrary, both the Constitution's Elections Clause and the

NVRA vest control over federal election regulation in other actors, leaving no role for the President to order specific changes to the Federal Form.  *See* U.S. Const. art. I, § 4, cl. 1; 52 U.S.C. §§ 20505, 20508.

Starting with the Constitution, the Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  U.S. Const. art. I, § 4, cl. 1.  The broad scope of this provision empowers States to establish a comprehensive regulatory framework for federal elections.  *ITCA*, 570 U.S. at 8.  The Elections Clause provides that Congress—not the President—is the check on States' authority to regulate federal elections, allowing that "the Congress may at any time by Law make or alter" States' election rules.  U.S. Const. art. I, § 4, cl. 1; *see also Foster*, 522 U.S at 69.  Meanwhile, the power to determine voter qualifications is left entirely with the States, subject only to the requirement that each State must adopt the same qualifications for congressional elections as it does for elections to "the most numerous branch" of its own legislature.  U.S. Const. art. I, § 2, cl. 1; U.S. Const. amend. XVII.  The Constitution vests none of these powers in the President, leaving election regulation solely to the States and to Congress.

2.   Congress has closely guarded its Elections Clause powers.

Consistent with this constitutional separation of powers, Congress enacted the NVRA to require a uniform, baseline set of federal voter registration procedures that complement other procedures provided under State law.  *See* Pub. L. No. 103-31, 107 Stat. 77 (1993) (codified, as amended, at 52 U.S.C. §§ 20501–20511).  One of these mandatory procedures requires States to "accept and use" the Federal Form.  52 U.S.C. § 20505(a)(1).  The NVRA strictly limits the contents of this form to "require *only*" information that "is *necessary* to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."  *Id.* § 20508(b)(1) (emphasis added).  The Act also

55

specifies a procedure for determining what requests for information come within these strict parameters:  The agency responsible for maintaining the Federal Form, "in consultation with the chief election officers of the States," sets the content of the Federal Form by promulgating regulations through notice-and-comment rulemaking.  *See id.* § 20508(a)(1)–(2); *see also id.* § 20929.  Congress originally assigned this responsibility to the FEC, an independent, bipartisan commission.  *See* Pub. L. No. 103-31 § 6(a)(1), 107 Stat. 77, 79 (1993) (codified at 52 U.S.C. § 20505(a)(1); *id.* § 9(a), 107 Stat. 77, 87 (1993) (codified, as amended, at 52 U.S.C. § 20508(a)); *see also* 52 U.S.C. § 30106(a) (establishing the FEC).  When Congress later enacted HAVA, it reassigned this responsibility to the EAC, a newly created "independent entity" that, like the FEC, is made up of a bipartisan panel of commissioners.  *See* Pub. L. No. 107-252, Title II, §§ 201–03, 116 Stat. 1666, 1673–75 (2002) (codified at 52 U.S.C. §§ 20921–20923); *id.* Title VIII, § 802, 116 Stat. 1666, 1726 (2002).

Critically, Congress has never assigned any responsibility for the content of the Federal Form to the President or to any other individual in the Executive Branch with the power to act unilaterally.  The power to alter the Federal Form is—and always has been—delegated solely to a bipartisan, independent commission with a duty to make changes only "in consultation with the chief election officers of the States."  52 U.S.C. § 20508(a)(2); *see also* Pub. L. No. 103-31, § 9(a)(2), 107 Stat. 77, 87 (1993) (assigning responsibility to the FEC); Pub. L. No. 107-252, Title VIII, § 802, 116 Stat. 1666, 1726 (2002) (reassigning responsibility to the EAC).  Accordingly, the President has no express statutory authority to alter the content of the Federal Form.

In the absence of any express grant of authority to the President by the Constitution, the scope of Presidential power to order alterations to the Federal Form depends on the scope of the

powers vested in Congress and the extent to which Congress has implicitly delegated or withheld those powers. *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015). When "the President takes measures incompatible with the expressed or implied will of Congress . . . he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Zivotofsky*, 576 U.S. at 10 (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)). In this realm, the President's power is "at its lowest ebb," and his actions "must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system." *Youngstown*, 343 U.S. at 638 (Jackson, J., concurring).

The President's power is "at its lowest ebb" here because his unilateral instruction to add a documentary-proof-of-citizenship requirement to the Federal Form is contrary to the manifest will of Congress, as expressed in the text, structure, and context of the NVRA and HAVA. *See Youngstown*, 343 U.S. at 639 (Jackson, J., concurring). Each of those statutes, which passed with bipartisan support in two different sessions of Congress nearly a decade apart,[38] reflects a careful allocation of regulatory power to a bipartisan panel, accompanied by a requirement for consultation with the States. *See* Pub. L. No. 103-31, § 9(a)(2), 107 Stat. 77, 87 (1993); Pub. L. No. 107-252, Title VIII, § 802, 116 Stat. 1666, 1726 (2002). This careful allocation implicitly forbids any individual member of the Executive Branch from unilaterally exercising the delegated power to regulate State voter registration programs.

Importantly, when enacting the NVRA, Congress considered and rejected a proposal that would have allowed States to impose exactly the kind of documentary-proof-of-citizenship

---

[38] *See* U.S. House of Representatives Roll Call No. 462 (107th Congress, 2d Sess.), H.R. 3295 Conf. Rep. (357-48), https://perma.cc/W6K2-8KHC; U.S. Senate Roll Call No. 238 (107th Congress, 2d. Sess.), H.R. 3295 Conf. Rep. (92-2), https://perma.cc/PD82-9ZV3; U.S. House of Representatives Roll Call No. 154 (103d Congress, 1st Sess.), H.R. 2 Conf. Rep. (259-164), https://perma.cc/JHC6-4QLB; U.S. Senate Roll Call No. 118 (103d Congress, 1st Sess.), H.R. 2 Conf. Rep. (62-36), https://perma.cc/TGZ7-D95T.

requirement that the President's Executive Order now directs the EAC to adopt, concluding that such a requirement was "not necessary or consistent with the purposes of [the] Act." H.R. Rep. No. 103–66, at 23 (1993) (Conf. Rep.). In short, the instruction in Section 2(a) is "incompatible with the expressed or implied will of Congress." *Zivotofsky*, 576 U.S. at 10 (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)).

Accordingly, the President's constitutional authority to require the EAC to add a documentary-proof-of-citizenship requirement to the Federal Form relies "upon his own constitutional powers minus any constitutional powers of Congress over the matter." *Zivotofsky*, 576 U.S. at 10 (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)). Therefore, to sustain the lawfulness of Section 2(a), the Defendants must show that the President has powers that are "both 'exclusive' and 'conclusive' on the issue," *id.* (quoting *Youngstown*, 343 U.S. at 637–38 (Jackson, J., concurring)), and "the Court can sustain his actions 'only by disabling the Congress from acting upon the subject.'" *Dames & Moore v. Regan*, 453 U.S. 654, 669 (1981) (quoting *Youngstown*, 343 U.S. at 637–38 (Jackson, J., concurring)).

For all the reasons explained above, the President has no constitutional power over election regulation that would support this unilateral exercise of authority. The Constitution vests that power in the States and Congress alone. *See* U.S. Const. art. I, § 4, cl. 1; *id.* art. I, § 2, cl. 1; *id.* amend. XVII.

3.    Neither the Executive Vesting Clause nor the Take Care Clause empowers the President to direct the outcome of the EAC rulemaking process that Congress has required by statute.

At the hearing on Plaintiffs' motions for preliminary injunctions, the Defendants advanced—for the first time—a sweeping argument, not raised in either of their two preliminary briefs, about the scope of the President's authority to direct the EAC to take the actions at issue in this case. *See* Tr. at 101:16–102:22. Specifically, they argued that the Executive Vesting

58

Clause empowers the President with "plenary authority" to direct the EAC to "enforce the law" according to his interpretation and require the EAC to obey his commands. *See id.*; *see also* U.S. Const. art. II, § 1, cl. 1. The Federal Defendants now renew this far-reaching argument. *See* Federal Defs.' Mem. at 5–6. The Defendant-Intervenor advances a related argument, contending that the President's duty to "take Care that the Laws be faithfully executed," implies that he must be allowed to control the outcome of the EAC's decision-making processes regarding the Federal Form. *See* Def.-Intervenor's Mem. at 19–22; U.S. Const. art II., § 3.

As the Court explained at the preliminary injunction stage, these arguments are untethered from precedent and unsupported by even a maximalist view of "the executive Power" under our Constitution. *See* U.S. Const. art. II, § 1, cl. 1; *LULAC I*, 780 F. Supp. 3d at 198–200.

Both the Vesting Clause and the Take Care Clause imply that the President must have some supervisory authority over subordinate executive officers. For example, the President must have the power to remove an Executive Branch official who, like the Director of the Consumer Financial Protection Bureau, is empowered to "dictate and enforce policy for a vital segment of the economy affecting millions of Americans." *Seila Law LLC v. CFPB*, 591 U.S. 197, 225 (2020); *see also Free Enter. Fund*, 561 U.S. at 484 (invalidating multi-level removal protection for an inferior officer who "determines the policy and enforces the laws of the United States").

However, the President's supervisory authority has limits. Subordinate officers subject to the President's supervision must follow the President's directives, but only "to the extent allowed by the law" as embodied in the Constitution or enacted by Congress. *See Allbaugh*, 295 F.3d at 32–33. Accordingly, the Supreme Court has instructed, "the real question" that courts must ask when determining the scope of the President's power under the Vesting Clause is not whether there are *any* restrictions on the President's supervisory authority, but rather whether those

restrictions "are of such a nature that they impede the President's ability to perform his constitutional duty." *Morrison v. Olson*, 487 U.S. 654, 691 (1988). If the restrictions at issue do not "unduly interfere with the functioning of the Executive Branch," they may be upheld. *See Seila Law*, 591 U.S. at 217.

Holding that the President lacks the authority to direct the EAC to make specific, predetermined changes to the Federal Form is consistent with the proper limits on his supervisory authority. This holding presents no impediment to "the President's ability to perform his constitutional duty." *See Morrison*, 487 U.S. at 691. First, the President has no constitutional duty to prescribe the content of election regulation. *Cf.* U.S. Const. art. I, § 4, cl. 1. Our Constitution assigns responsibility for election regulation to the States, subject only to preemption by Congress. *Id.* Second, any restriction on the President's ability to set the content of election regulation does not impair his ability to "take Care that the Laws be faithfully executed." U.S. Const. art I. § 3. "In the framework of our Constitution," the President's role in the lawmaking process is limited to "the recommending of laws he thinks wise and the vetoing of laws he thinks bad." *Youngstown*, 343 U.S. at 587. His duty to "see that the laws are faithfully executed refutes the idea that he is to be a lawmaker," and he therefore has no constitutional duty to set regulations unless instructed to do so by Congress. *See id.* Third, to the extent that members of the EAC exercise executive power vested in the President, the President retains the power to "oversee [those] officers through removal."[39] *Free Enter. Fund*, 561 U.S. at 492; *see*

---

[39] Separately, to the extent that the "quasi-legislative" character of an agency's responsibilities and activities continues to inform the analysis of the extent to which the agency may be insulated from direct presidential control, the EAC's activities—making regulations about the content of the Federal Form, conducting studies, developing voluntary guidelines, writing reports to Congress, and distributing grants according to formulas set by Congress— would clearly be best characterized as "quasi-legislative" rather than "purely executive." *See Humphrey's Ex'r v. United States*, 295 U.S. 602, 629, 632 (1935); 52 U.S.C. § 20922. *But see Trump v. Slaughter*, No. 25-332, --- S. Ct. ----, 2025 WL 2025 WL 2692050 (Sept. 22, 2025) (granting application for stay and granting certiorari before judgment to decide, among other matters, whether *Humphrey's Executor* should be overruled); *Trump v. Boyle*, 145

*also Trump v. Wilcox*, 145 S. Ct. 1415 (2025) (per curiam) (granting application for stay pending appeal and disposition of a petition for writ of certiorari). "[B]ecause that traditional executive power [has not been] 'expressly taken away, it remain[s] with the President.'" *Id.* (quoting Letter from James Madison to Thomas Jefferson (June 30, 1789), 16 *Documentary History of the First Federal Congress* 893 (2004)).

The Court is not persuaded by Defendants' arguments that the EAC is directly "subject to the administrative control of the President" because "[t]he EAC exercises Executive power when it carries out its statutory duties." Federal Defs.' Mem. at 6; *see also* Def.-Intervenor's Mem. at 1–2, 19–21. Defendants have offered no authority in support of their apparent insistence that the President may supervise any exercise of Executive power by the EAC not only by removing from office those in whom he lacks confidence, but also by exercising direct "control" over officials' actions in furtherance of their duties. *See* Federal Defs.' Mem. at 6; Def.-Intervenor's Mem. at 19–21. Instead, the authorities that Defendants cite are consistent with the settled understanding that when the President disagrees with the decision of a subordinate whose statutory duties involve the exercise of Executive power, the President's primary recourse is removal and replacement of the subordinate official, not direct control over the exercise of other powers that Congress has delegated to that person.[40] The Court declines Defendants' invitation

---

S. Ct. 2653, 2654 (2025) (stating that the Supreme Court's interim orders "inform how a court should exercise its equitable discretion in like cases"); *cf. City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 305 n.4 (2013) (concluding that although certain agency actions may "take 'legislative' and 'judicial' forms, . . . under our constitutional structure they *must* be exercises of . . . the 'executive Power'").

[40] *See Wilcox*, 145 S. Ct. at 1415 (noting that "[b]ecause the Constitution vests executive power in the President," the President "may remove without cause executive officers who exercise that power on his behalf, subject to narrow exceptions"); *Seila Law*, 591 U.S. at 213 (holding that for-cause removal protection for the Director of the Consumer Financial Protection Bureau "violates the separation of powers"); *Free Enter. Fund*, 561 U.S. at 484 (invalidating multi-level removal protection for an inferior officer who "determines the policy and enforces the laws of the United States"); *see also Trump v. Am. Fed'n of Gov't Emps.*, 145 S.Ct. 2635 (2025) (granting application for stay of injunction against implementation of an executive order related to the restructuring of federal agencies); *McMahon v. New York*, 145 S. Ct. 2643 (2025) (similar); *English v. Trump*, 279 F. Supp. 3d 307, 337 (D.D.C. 2018) (TJK) (denying motion for preliminary injunction by former Deputy Director of the Consumer Financial Protection

to read into these precedents an implication that the President may personally dictate the decisions of subordinate officers whose roles and duties are prescribed by Congress.

At the hearing on the Plaintiffs' motions for preliminary injunctions, the Defendants affirmed that the Executive Order means what it says: the EAC *must* add a documentary-proof-of-citizenship requirement to the Federal Form, regardless of any critical feedback that it may receive from the States or other participants in the notice-and-comment process or of its own conclusions about whether such proof is "necessary" to allow States to assess voter qualifications. *See* Tr. at 71:13–18, 72:17–73:9, 73:13–74:17; *cf.* 52 U.S.C. § 20508(a)(1)–(2), (b)(1). Critically, the Defendants did *not* initially argue that the Executive Order's use of the phrases "appropriate action" and "consistent with applicable law" left the EAC with discretion to add a documentary-proof-of-citizenship requirement to the Federal Form only if it concluded that doing so is necessary and consistent with the NVRA. *Cf.* Tr. at 73:13–74:17. According to the Defendants' initial representations, Section 2(a) divests the EAC of its statutory prerogative to make that decision, leaving it discretion only to decide ministerial details about how the documentary-proof-of-citizenship requirement is to be embodied in the form itself. *See id.* As the Democratic Party Plaintiffs aptly summarized the position that the Defendants adopted at the preliminary injunction stage, Section 2(a) leaves the EAC with discretion over little more than "whether documentary proof of citizenship needs to be stapled to the registration form or paper-clipped." Tr. at 96:10–11.

Even the Office of Legal Counsel, a zealous advocate for presidential power over Executive Branch agencies, has rejected the view that the President may direct a predetermined outcome from a notice-and-comment process in this manner. For example, when President

_____

Bureau arguing that she was entitled to succeed the Bureau's outgoing Director, notwithstanding the fact that the President had appointed the Director of the Office of Management and Budget to the role).

Ronald Reagan issued an executive order requiring agencies to submit some proposed rules to the Office of Management and Budget for review, OLC disclaimed any presidential authority to "divest the officer of ultimate statutory authority" or to "reject an agency's ultimate judgment delegated to it by law . . . that priorities under the statute compel a particular course of action." *Proposed Executive Order Entitled "Federal Regulation*," 5 Op. O.L.C. 59, 64 (1981). OLC took a similar position during President Donald J. Trump's first term, concluding that an Executive Order requiring independent agencies to submit rules for OMB review was valid in part because it "preserves an agency's ultimate discretion and thus respects Congress's judgment to entrust particular rulemakings to a commission rather than a traditional executive agency." *Extending Regulatory Review Under Executive Order 12866 to Independent Agencies*, 43 Op. O.L.C. 232, 256 (2019). The Defendants have given no persuasive reason for this Court to go where even OLC has not gone. The President lacks the authority to direct the outcome of the rulemaking process that Congress has assigned to the EAC.

In their summary judgment briefing, the Federal Defendants appear to retreat from the position that they adopted at the preliminary injunction stage, arguing that Section 2(a) merely "directs the EAC to commence its rulemaking process" and does not "command" any particular changes to the Federal Form. *See* Federal Defs.' Mem. at 5. However, this argument cannot be squared with either the text of the Executive Order or the broad sweep of the authority that the Federal Defendants have asserted elsewhere in their briefing.[41] As the Court has explained,

---

[41] In reaching this conclusion, this Court has not relied on the Nonpartisan Plaintiffs' alternative argument that the Federal Defendants are judicially estopped from arguing that Section 2(a) does not require the EAC to alter the Federal Form unless it concludes that doing so is necessary and consistent with the NVRA. *See* Nonpartisan Pls.' Mem. at 31 n.16. As the Federal Defendants correctly note, judicial estoppel bars a litigant from taking inconsistent positions when, among other conditions, the litigant has "succeeded in persuading a court" to accept one position, such that "judicial acceptance of an inconsistent position" would create the perception that the court has been "misled," or "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." Federal Defs.' Mem. at 8–9 (quoting *Temple Univ. Hosp.,*

Section 2(a) states that the EAC "shall take appropriate action *to require*" documentary proof of U.S. citizenship on the Federal Form.  Exec. Order 14,248 § 2(a) (emphasis added).  The Federal Defendants lean heavily on the term "appropriate action" in Section 2(a) and the saving clause in Section 11(b), which provides that the order "shall be implemented consistent with applicable law," to argue that Section 2(a) must be understood to require only that the EAC begin a process of *considering* whether to add a documentary-proof-of-citizenship requirement to the Federal Form, and to do so only if it independently concludes that the statutory standards for adding such a requirement are satisfied.  Federal Defs.' Mem. at 6–7.  However, as the Court has already explained, this reading is unworkable because it would strain the text of Section 2(a) beyond recognition.  Executive orders "cannot be held to destroy themselves through saving clauses." *Common Cause v. Trump*, 506 F. Supp. 3d at 53 n.8.

The Federal Defendants next argue that Section 2(a) is consistent with a long tradition of Presidents "direct[ing] agencies to exercise their authority to take regulatory actions," but both orders that the Federal Defendants cite in support of this argument have significant differences from Section 2(a).  *See* Federal Defs.' Mem. at 5–6 (citing Exec. Order 13,693, 80 Fed. Reg. 15,871 (Mar. 19, 2015); Exec. Order 13,338, 69 Fed. Reg. 26,751 (May 11, 2004)).

The first order that the Federal Defendants cite directed various changes to the federal government's own *internal* operations, including directing the Office of Personnel Management to "consider" establishing a new personnel classification and "initiate" changes to federal workforce training.  *See* Exec. Order 13,693, 80 Fed. Reg. 15,871 (Mar. 19, 2015).  These

---

*Inc. v. N.L.R.B.*, 929 F.3d 729, 733 (D.C. Cir. 2019)).  Here, because the Court was not persuaded by the Federal Defendants' arguments regarding Section 2(a) at the preliminary injunction stage and did not rule in their favor, there is no appearance that the Court has been "misled" by the Federal Defendants' previous representations, nor will any "unfair advantage" to the Federal Defendants or any "unfair detriment" to Plaintiffs result in the absence of estoppel.  *See Temple Univ. Hosp.*, 929 F.3d at 733.  Accordingly, the Court has given full consideration to the Federal Defendants' summary judgment arguments regarding the proper interpretation of Section 2(a).

directives fall well within the Executive Branch's broad prerogatives to control its own internal operations.  *See* 5 U.S.C. § 301.

The second order that the Federal Defendants cite ordered sanctions and export controls against the Government of Syria, exercising national security powers that Congress expressly delegated to the President in the International Emergency Economic Powers Act and the National Emergencies Act.  Exec. Order 13,338, 69 Fed. Reg. 26,751 (May 11, 2004) (citing 50 U.S.C. § 1701 *et seq.*; 50 U.S.C. § 1601 *et seq.*).

Section 2(a), unlike either of these orders, involves neither the federal government's own internal operations nor national security powers that Congress has explicitly granted to the President.  Instead, it focuses squarely on election regulation, a topic implicating important individual rights external to the Government for which the Constitution assigns responsibility to Congress and the States, not the President.  Accordingly, the Federal Defendants' analogy to these other executive orders is inapposite.

In sum, the President is free to state his views about what policies he believes that Congress, the EAC, or other federal agencies should consider or adopt.  *See Youngstown*, 343 U.S. at 587.  However, in this case, the President has done much more than state his views:  He has issued an "Order" directing that an independent commission "shall" act to "require" changes to an important document, the contents of which Congress has tightly regulated.  *See* Exec. Order 14,248 § 2(a).  Because our Constitution assigns responsibility over election regulation to Congress and the States, not the President, that command exceeds the President's authority.

4.    <u>In the alternative, this Court would be required to construe narrowly Congress's delegation of authority over the contents of the Federal Form.</u>

Finally, even if the Executive Vesting Clause and the Take Care Clause did require that any power delegated by Congress to an agency must be under the complete, unilateral control of

the President, this Court would hold that Section 2(a) is unlawful on an alternative ground:  The text, structure, and context of the NVRA and HAVA show that Congress would not have delegated its Elections Clause authority to regulate the content of the Federal Form to the EAC if that authority could be exercised unilaterally by the President.  *Cf. Seila Law*, 591 U.S. at 234–35, 236 (plurality opinion of Roberts, C.J.).  As discussed above, both the NVRA and HAVA delegated that power to bipartisan, independent panels—first the FEC, and later the EAC.  *See* Pub. L. No. 103-31, § 9(a)(2), 107 Stat. 77, 87 (1993); Pub. L. No. 107-252, Title VIII, § 802, 116 Stat. 1666, 1726 (2002).  If the President, acting alone, could dictate the content of the Federal Form, Congress's careful structural choices would be for naught.  Therefore, if this Court were to accept the Defendants' argument that any restrictions on the President's direct control over the EAC would violate the Executive Vesting Clause and the Take Care Clause, the proper remedy for that constitutional defect would be to invalidate Congress's entire delegation of authority over the content of the Federal Form to the EAC, rather than to eliminate only the procedural protections that Congress has built into its limited delegation of its Elections Clause authority.  That result would leave only Congress—not the President—with authority to determine the contents of the Federal Form.

*    *    *

For all these reasons, both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs have shown that Section 2(a) cannot be implemented in a manner consistent with the separation of powers under our Constitution.  Because Plaintiffs have shown that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law on their constitutional separation-of-powers claims regarding Section 2(a), the Court shall **GRANT** Plaintiffs' motions for partial summary judgment on their constitutional separation-of-powers

claims and **DENY** the Federal Defendants' and Defendant-Intervenor's cross-motions for partial summary judgment as to these claims.  *See* Fed. R. Civ. P. 56(a).

Because the Court concludes that Plaintiffs' constitutional separation-of-powers arguments against the lawfulness of Section 2(a) succeed on the merits, the Court does not resolve the distinct questions of whether a requirement for documentary proof of U.S. citizenship would violate the substantive provisions of the NVRA or would impose an unconstitutional burden on U.S. citizens' right to vote.  *See* Dem. Pls.' Mem., Dkt. No. 146-1 at 15–16; Federal Defs.' Mem., Dkt. No. 162-1, at 20–23; Def.-Intervenor's Mem., Dkt. No. 161-1, at 22–32.  As the Democratic Party Plaintiffs recognize, their separation of powers argument "suffices to resolve" their claim without reaching their alternative arguments about the NVRA's substantive requirements.  Dem. Pls.' Mem. at 15.  Meanwhile, Plaintiffs have not relied on an undue-burden argument in their pending motions for partial summary judgment, and given their success on the merits of their separation-of-powers challenges, the resolution of the undue-burden issue has no bearing on the disposition of the pending motions.  *See* Nonpartisan Pls.' Reply & Opp'n, Dkt. No. 181, at 4 n.2; *see also Qassim v. Trump*, 927 F.3d 522, 530 (D.C. Cir. 2019) ("Under long-established principles of constitutional avoidance, courts must "avoid the premature adjudication of constitutional questions" and 'not . . . pass on questions of constitutionality . . . unless such adjudication is unavoidable[.]'" (quoting *Matal v. Tam*, 582 U.S. 218, 230–31 (2017))).  These issues and the parties' arguments are preserved for resolution at a later point, if appropriate.

**E.    A permanent injunction against the implementation of Section 2(a) is the appropriate remedy.**

Having concluded that Plaintiffs are entitled to partial summary judgment on their claims that Section 2(a) cannot be implemented consistent with the separation of powers under our Constitution, the Court turns to the separate issue of what remedy is appropriate.

Both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs seek permanent injunctions barring the implementation of Section 2(a).  Nonpartisan Pls.' Mem. at 40–41; Dem. Pls.' Mem. at 26–29.  To be entitled to a permanent injunction, Plaintiffs must show (1) that they are likely to suffer irreparable harm in the absence of an injunction, (2) "that remedies available at law, such as monetary damages, are inadequate" as redress for that irreparable harm (3) "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted," and (4) "that the public interest would not be disserved by a permanent injunction." *Monsanto*, 561 U.S. at 156–57; *In re Execution Protocol Cases*, 980 F.3d at 137.  Any injunction must also comport with the limits on the equitable authority that Congress has granted to the federal courts, including the principle that equitable relief should be "party-specific."  *See Trump v. CASA, Inc.*, 606 U.S. 831, 841–44 (2025).

For the reasons that follow, the Court holds that a permanent injunction barring the proper named Defendants from implementing Section 2(a) of Executive Order No. 14,248 is the appropriate equitable remedy in this case.

       1.     <u>Plaintiffs will suffer irreparable harm in the absence of an injunction, and there is no adequate remedy at law.</u>

To obtain a permanent injunction, "the prevailing party must demonstrate that it actually 'has suffered,' or is 'likely to suffer irreparable harm'" in the absence of an injunction.  *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 980 F.3d 123, 137 (D.C. Cir. 2020) (first quoting *Monsanto Co.*, 561 U.S. at 156–57, and then quoting *Winter*, 555 U.S. at 20).  A prevailing party seeking a permanent injunction also has the burden of showing that monetary damages and other remedies available at law would be inadequate to redress its injuries.  *Monsanto Co.*, 561 U.S. at 156–57.  Plaintiffs have satisfied both requirements.

Both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs have shown that in the absence of an injunction against the implementation of Section 2(a), they would suffer irreparable harm to their interests. As the Court concluded at the preliminary injunction stage, these threatened harms are "both certain and great," not merely "theoretical," and sufficiently "imminen[t]" to demonstrate a "clear and present need" for equitable relief. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

The Nonpartisan Plaintiffs have shown a strong likelihood that the implementation of Section 2(a) of the Executive Order would cause them irreparable harm by interfering with their "primary mission of registering voters" ahead of upcoming elections. *Newby*, 838 F.3d at 9. "[T]hat harm is irreparable because after the registration deadlines . . . pass, 'there can be no do over and no redress.'" *Id.* (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014)).

This irreparable harm that would result from the implementation of Section 2(a) is particularly salient for the Nonpartisan Plaintiffs operating in Arizona.[42] Because Arizona currently requires documentary proof of citizenship for registration on its State voter registration form, the Federal Form provides the only means for eligible voters to register for federal elections in Arizona without providing that proof. *See* Ariz. Rev. Stat. § 16-166(F) (stating that a voter-registration application must be "accompanied by satisfactory evidence of United States citizenship"); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013) (holding that the NVRA "precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself," including documentary proof of

---

[42] *See* Nonpartisan Pls.' Ex. 21, Dkt. No. 145-24 ("Arizona Voter Registration Instructions"); Proaño Decl. ¶¶ 39–40 (LULAC); Streyder Decl. ¶ 18 (Secure Families Initiative); Nitchke Decl. ¶¶ 8–14, 16 (Arizona Students' Association); Sheoran Decl. ¶¶ 12, 23, 28–30, 35–38 (League of Women Voters of Arizona).

citizenship). The Nonpartisan Plaintiffs have made a strong showing that any action to implement Section 2(a) under these circumstances would increase voter confusion and interfere with their ongoing voter registration efforts.

The Democratic Party Plaintiffs have shown a strong likelihood of irreparable injury from Section 2(a) for a similar reason. The Democratic Party Plaintiffs are actively planning and preparing for upcoming elections across the country.[43] If Section 2(a) is implemented, they will be forced to divert resources from their other electoral efforts to counteract the provision's effects on their voter-registration and mobilization efforts.[44] Like the Nonpartisan Plaintiffs, the Democratic Party Plaintiffs face an especially acute threat of harm in Arizona because many voters in Arizona rely on the Federal Form.[45] And because each day presents an opportunity to recruit candidates, persuade voters, and galvanize supporters that cannot be restored once lost, the implementation of a documentary-proof-of-citizenship requirement in response to Section 2(a) would irreparably harm the Democratic Party Plaintiffs' interests throughout the country. *See Newby*, 838 F.3d at 9.[46] Because this Court can neither postpone an election nor turn back the clock to give Plaintiffs additional time to pursue their campaigns, this is not a case in which "adequate compensatory or other corrective relief will be available at a later date." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quoting *Wis. Gas Co.*,

---

[43] *See* Schneider Decl. ¶¶ 22–23 (DNC); Edelman Decl. ¶¶ 16–17 (DGA); Boss Decl. ¶¶ 20–21 (DSCC); Ruselowski Decl. ¶¶ 23–24 (DCCC); Jeffries Decl. ¶ 3; Schumer Decl. ¶ 2.

[44] *See* Schneider Decl. ¶¶ 21–23 (DNC); Edelman Decl. ¶¶ 15–17 (DGA); Boss Decl. ¶¶ 18–21 (DSCC); Ruselowski Decl. ¶¶ 20–24 (DCCC); Jeffries Decl. ¶ 14, 16–19; Schumer Decl. ¶ 13, 16–19.

[45] *See* Schneider Decl. ¶ 20 (DNC); Edelman Decl. ¶¶ 15 (DGA); Ruselowski Decl. ¶ 22.

[46] *See also, e.g.*, *League of Women Voters of N. Carolina*, 769 F.3d at 247 & n.5 (describing injuries to voters' ability to participate in an election was "completely irreparable" and stating that a district court's contrary conclusion was an abuse of discretion); *Georgia Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018); *League of Women Voters of Fla. v. Cobb*, 447 F. Supp. 2d 1314, 1339 (S.D. Fla. 2006).

758 F.2d at 674).  The only way to provide complete relief to Plaintiffs is to award a permanent injunction.

The Federal Defendants argue that the Plaintiffs have not carried their burden of showing irreparable harm because their asserted injuries rest on mere speculation about what the EAC might do in the future.  *See* Federal Defs.' Mem., Dkt. No. 162-1, at 21; *see also* Defs.' Opp'n, Dkt. No. 84, at 31; Defs.' Opp'n, Dkt. No. 85, at 20.  This argument is unpersuasive for two reasons.  First, as the Court has explained, the Defendants' argument that the harm to the Plaintiffs is merely speculative is belied by both the text of the Executive Order and the factual record before this Court.  Second, the D.C. Circuit has expressly recognized that a "likely" threat of future enforcement of a documentary-proof-of-citizenship rule suffices to show "irreparable harm" to voter-registration organizations before the enforcement of such a rule has begun.  *See Newby*, 838 F.3d at 8–9 (concluding that plaintiffs operating in Alabama and Georgia had shown a sufficient likelihood of irreparable harm to challenge a proof-of-citizenship requirement in their States, even though it was "unclear whether Alabama and Georgia [were] currently enforcing their proof-of-citizenship laws).  In short, both the factual evidence in the record and binding precedent undercut the Defendants' argument that the Plaintiffs' asserted injuries are too speculative to show irreparable harm.

For all these reasons, both the Nonpartisan Plaintiffs and the Democratic Party Plaintiffs have carried their burden of showing that the implementation of Section 2(a) would cause them an irreparable harm that is sufficiently "certain and great" to support an injunction in their favor.  *See Wis. Gas Co.*, 758 F.2d at 674.  For the same reasons, monetary damages and other remedies available at law would be inadequate to redress the injuries Plaintiffs would suffer in the absence of an injunction.  *See Monsanto Co.*, 561 U.S. at 156–57.

2.      Because the balance of the equities and the public interest weigh in favor
of a permanent injunction, a remedy in equity is warranted.

Plaintiffs' final hurdle to obtaining a permanent injunction against the implementation of

Section 2(a) is that they must show, as they did at the preliminary injunction stage, that "the

balance of equities tips in [their] favor" and that "an injunction is in the public interest." *Winter*,

555 U.S. at 20; *see also Monsanto Co.*, 561 U.S. at 156–57 (explaining that a party seeking a

permanent injunction must show that "a remedy in equity is warranted").    Because the

Defendants in this case are federal officials and agencies, the balance-of-equities and public-

interest factors "merge," and the Court will address them together.  *See Nken*, 556 U.S. at 435.

When considering these factors, the Court's duty is to "balance the equities by weighing the

harm to the moving party and the public if there is no injunction against the harm to the

government and the public if there is."  *Hanson v. District of Columbia*, 120 F.4th 223, 246

(D.C. Cir. 2024).

As the Court concluded at the preliminary injunction stage, the balance-of-equities and

public-interest analyses in this case mirror those in *Newby*, in which the D.C. Circuit found that

these factors favored granting a preliminary injunction.  *See* 838 F.3d at 12–14.  The similar facts

of this case supported a preliminary injunction in this case, and they now support the issuance of

a permanent injunction.

*First*, Plaintiffs' success on the merits "is a strong indicator" that injunctive relief "would

serve the public interest."  *Newby*, 838 F.3d at 12.  "[T]here is a substantial public interest 'in

having governmental agencies abide by the federal laws that govern their existence and

operations.'"  *Id.* (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).   The

Defendants, meanwhile, "cannot suffer harm from an injunction that merely ends an unlawful

practice." *Open Communities All. v. Carson*, 286 F. Supp. 3d 148, 179 (D.D.C. 2017) (BAH) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

*Second*, as in *Newby*, the Plaintiffs in this case have shown a "substantial risk" that, "absent an injunction, . . . citizens will be disenfranchised in the present federal election cycle." *Newby*, 838 F.3d at 12. Because "[t]he public interest . . . favors permitting as many qualified voters to vote as possible," this fact weighs strongly in favor of awarding an injunction. *Id.* (alteration in original) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 437 (6th Cir. 2012)); *see also League of Women Voters of N. Carolina*, 769 F.3d at 247.

*Third*, as the D.C. Circuit concluded in *Newby*, any interference with "'organized voter registration programs' held by 'private entities'" would "run[] contrary to" a specific goal that "Congress, in enacting the NVRA, declared to be [in] the public interest": "[I]ncreas[ing] the number of eligible citizens who register to vote in elections for Federal office." *Newby*, 838 F.3d at 13 (quoting 52 U.S.C. § 20505(b)); *see also* 52 U.S.C. § 20501(b)(1) (declaring that one of the purposes of the NVRA is to "increase the number of eligible citizens who register to vote in elections for Federal office.").

*Fourth*, although there is undoubtedly a public interest in "preserving the integrity of [the] election process," there is "precious little record evidence" in this case—as was true in *Newby*—that an injunction in the Plaintiffs' favor would harm that interest. *Newby*, 838 F.3d at 13 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). The Conference Committee on the NVRA expressly concluded that a proposed amendment allowing States to adopt documentary-proof-of-citizenship requirements for the Federal Form was "not necessary or consistent with the purposes of [the] Act." H.R. Rep. No. 103–66, at 23 (1993) (Conf. Rep.). Those purposes include "protect[ing] the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). In the

absence of contrary evidence, this Court will not second-guess Congress's judgment about the relative weight to be given to the potential election-integrity benefits of a documentary-proof-of-citizenship requirement.    Any public interest in implementing such a requirement consistent with Section 2(a) does not outweigh the considerable public interest in granting the injunction the Plaintiffs seek.

On balance, here, as in *Newby*, the equities and the public interest decisively favor granting an injunction in the Plaintiffs' favor.  *See* 838 F.3d at 12–14.

3.    A permanent injunction enjoining proper Defendants from implementing Section 2(a) by altering the Federal Form is consistent with the Supreme Court's decision in *Trump v. CASA*.

As the Supreme Court recently emphasized, federal courts' equitable powers are "party-specific."  *Trump v. CASA, Inc.*, 606 U.S. 831, 844 (2025).  Federal courts like this one "do not exercise general oversight of the Executive Branch," but rather "resolve cases and controversies consistent with the authority Congress has given them."  *Id.* at 861.  Accordingly, any equitable remedy in these consolidated cases, as in all cases, must be both "limited to the inadequacy that produced the injury in fact that the [Plaintiffs have] established," *Gill v. Whitford*, 585 U.S. 48, 68 (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)), and not "more burdensome [to the Defendants] than necessary" to provide complete redress to the Plaintiffs, *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  In short, when awarding equitable relief, this Court must take care that any injunction is not "broader than necessary to provide complete relief to each plaintiff with standing to sue."  *CASA*, 606 U.S. at 861.

Enjoining the appropriate named Defendants from implementing Section 2(a) is a party-specific remedy that is consistent with these principles.  The Court has determined that Section 2(a) of the President's Executive Order cannot lawfully be implemented.  *See supra* Section III.D. Section 2(a) purports to require action by the Election Assistance Commission, which is

composed of four Members who oversee an Executive Director. *See supra* Sections I.A.2, I.B.1. The EAC, its four Members, and its Executive Director are each Defendants to this suit. *See supra* Section I.B.2. If those Defendants took the action ordered by Section 2(a), Plaintiffs—including organizations that operate in every State and associations with members throughout the Nation—would be irreparably harmed. *See supra* Section III.E.1. Finally, the balance of the equities and the public interest favor an injunction. *See supra* Section III.E.2. Accordingly, the only adequate and appropriate remedy is an injunction barring the EAC, its Members, and its Executive Director from implementing Section 2(a).

As the Court noted at the preliminary injunction stage, this relief is neither "nationwide" nor "universal." *LULAC I*, 780 F. Supp. 3d at 221. The remedy that the Court awards today is tailored to the irreparable harm that Plaintiffs in these consolidated cases would suffer in the absence of an injunction. To the extent that the injunction confers benefits or advantages on nonparties, it "do[es] so only incidentally." *See CASA*, 606 U.S. at 851; *see also Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring). There are two simple reasons for that result.

*First*, there is only one Federal Form. Plaintiffs' challenges to Section 2(a) "do not involve the case-by-case enforcement of a particular policy" but instead "concern a single decision about a single [requirement], to be used on a single [form] throughout the nation." *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 677 (S.D.N.Y. 2019), *aff'd in part, rev'd in part on other grounds*, 588 U.S. 752 (2019). Were the Court to hold that its injunction should apply only in some States but not others, it would be "drawing a line which the [EAC] itself has never drawn," *Harmon v. Thornburgh*, 878 F.2d 484, 494–95 (D.C. Cir. 1989), and undermining the national uniformity of the Federal Form that was central to Congress's design.

*Second*, awarding narrower relief—such as by enjoining the named Defendants from implementing Section 2(a) only in certain States, under certain circumstances, or with respect to certain categories of individuals—would not "offer complete relief to the plaintiffs before the court." *See CASA*, 606 U.S. at 852. As the Court has explained, Plaintiffs in this case include organizations that operate in every State and associations with members distributed throughout the Nation. *See supra* Section I.B.2. Under these unique circumstances, enjoining the implementation of Section 2(a) is a remedy that is "specific" to the Plaintiffs because no other remedy would afford complete relief. *See CASA*, 606 U.S. at 863 (Thomas, J., concurring) (noting that "equitable remedies historically operated on a plaintiff-specific basis"); *id.* at 868 (Kavanaugh, J., concurring) (noting that district courts crafting equitable injunctions "may award only plaintiff-specific relief"). Unlike in *CASA*, Plaintiffs in this case are not seeking an injunction to protect "similarly situated individuals," the protection of whom "would not render [their own] relief any more complete." *See CASA*, 606 U.S. at 853. If Section 2(a) is implemented anywhere, some of the Nonpartisan Plaintiffs will face irreparable harms to their voter registration activities, some Plaintiffs' members will face irreparable harms to their individual interests in registering to vote and having their votes counted in upcoming federal elections, and some of the Democratic Party Plaintiffs will face irreparable harm to their ability to compete for and help elect Democratic candidates to office throughout the country. *See supra* Sections III.A.2, III.E.1. To award complete relief from these harms, the Court has "only one feasible option," which is to enjoin the implementation of Section 2(a) in full. *See CASA*, 606 U.S. at 851–52.

For these reasons, enjoining the implementation of Section 2(a) in full is consistent with longstanding equitable tradition. Equity has long recognized that a plaintiff may obtain complete

relief from a nuisance—such as the sound of a neighbor "blasting loud music at all hours of the night"—even though such relief "will necessarily benefit the defendant's surrounding neighbors too." *CASA*, 606 U.S. at 851–52. Although such an injunction "might have the *practical effect* of benefiting nonparties, 'that benefit [is] merely incidental.'" *Id.* at 852 (quoting *Trump*, 585 U.S. at 717 (Thomas, J., concurring)). Because "there is no way 'to peel off just the portion of the nuisance that harmed the plaintiff,'" the prevailing plaintiff is entitled to relief from the entire nuisance, not a fraction of it. *Id.* (quoting *Rodgers v. Bryant*, 942 F.3d 451, 462 (8th Cir. 2019) (Stras, J., concurring in part and dissenting in part)). However, only the prevailing plaintiff—not any collaterally benefitted third parties—is entitled to enforce the injunction. *Id.* So too here: although the Court shall enjoin the implementation of Section 2(a), the Court's injunction shall run only in favor of the named Plaintiffs, and only they may enforce it.

Finally, as was true at the preliminary injunction stage, nothing in this Memorandum Opinion or the Court's accompanying Order should be taken to restrain the EAC or its Members from independently determining whether or not documentary proof of citizenship is or is not "necessary to enable" State election officials to assess voters' eligibility or from revising the Federal Form in accordance with the proper statutory procedures and notice-and-comment rulemaking process. *See* 52 U.S.C. §§ 20508(b)(1), 20928, 20929; *cf.* Def.-Intervenor's Mem. at 9–16 (arguing that it would be consistent with the NVRA to add a documentary-proof-of-citizenship requirement to the Federal Form). As the Court has explained, its holding today is limited to the conclusion that, under our Constitution's separation of powers, the President cannot unilaterally mandate that action by executive order. Doing so violates the Constitution by usurping power over federal election procedure that is vested in Congress and the States—not in the President. The proper remedy for that violation is an injunction that bars the appropriate

Defendants from implementing Section 2(a) of Executive Order No. 14,248; nothing less, and nothing more.

> **F.  Because the Democratic Party Plaintiffs have not alleged final agency action implementing Section 2(a), the Court shall dismiss their Administrative Procedure Act claims regarding Section 2(a) without prejudice.**

Finally, the Court agrees with the Federal Defendants that, on the present record, the Democratic Party Plaintiffs' Administrative Procedure Act ("APA") claims regarding Section 2(a) of Executive Order No. 14,248 cannot succeed because Plaintiffs have not alleged that any proper Defendant has yet taken "final agency action" in response to Section 2(a).  *See* Federal Defs.' Mem. at 12–13.  Final agency action is a prerequisite to a successful APA claim. 5 U.S.C. § 704.  Agency action is "final" and judicially reviewable under the APA when it "mark[s] the 'consummation' of the agency's decisionmaking process" and is an action "by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (first quoting *Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); and then quoting *Port of Boston Marine Terminal Assn. v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)).

As the Court has already explained, the President is not an "agency" within the meaning of the APA, so his issuance of Executive Order No. 14,248 is not "final agency action" that is reviewable within the APA framework.  *See supra* Section III.D; *Franklin*, 505 U.S. at 796.

Meanwhile, no other Defendant has taken final action in response to Section 2(a) because this Court promptly enjoined the implementation of that section.  *See* Order, Dkt. No. 103, at 2; Nonpartisan Pls.' Ex. 29, Tr. of Election Assistance Commission Technical Guidelines Development Committee Mt'g (July 2, 2025), Dkt. No. 145-32, at 53–54 (statement of Camden Kelliher, General Counsel, EAC) (explaining that after this Court preliminarily enjoined the

implementation of Section 2(a), the EAC "rescinded" an earlier consultation letter sent to State election officials, and noting that "[t]he preliminary injunction remains in effect").

Therefore, the Federal Defendants are correct that the Democratic Party Plaintiffs have not alleged that any Defendant has taken "final agency action" that is reviewable under the APA. *See* Federal Defs.' Mem. at 12–13.

As the Federal Defendants acknowledge, the proper remedy when a plaintiff does not identify final agency action is dismissal of the APA claim. *See id.* at 13; *Rtskhiladze v. Mueller*, 784 F. Supp. 3d 256, 263–65 (D.D.C. 2025) (CRC). Accordingly, the Court shall **DISMISS** Counts VI and X of the Democratic Party Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. Because Plaintiffs may be able to amend their factual allegations to identify a final agency action that was not articulated in their original Complaint, this dismissal shall be without prejudice. *See Givens v. Bowser*, 111 F.4th 117, 123 (D.C. Cir. 2024).

Finally, because the Democratic Party Plaintiffs have not challenged final agency action implementing Section 2(a), the Court declines the Defendant-Intervenor's invitation to rule on the merits of the Democratic Party Plaintiffs' APA challenges.[47] *See* Def.-Intervenor's Mem. at 22–32. The Court therefore does not resolve the substantive arguments underlying those claims, including Plaintiffs' arguments that implementing Section 2(a) would violate the National Voter Registration Act and impose an unconstitutional burden on the right to vote. *See id.* In the absence of final agency action, "the court . . . cannot reach the merits of the dispute." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 594 (D.C. Cir. 2001). Accordingly, on the present record, the Court cannot award judgment in favor of either party. The Court shall therefore **DENY** the Federal Defendants' and Defendant-Intervenor's cross-motions for

---

[47] The Democratic Party Plaintiffs have not sought summary judgment on these claims. *See* Dem. Pls.' Mem. at 33.

summary judgment on the Democratic Party Plaintiffs' APA claims.  These issues and the parties' arguments are preserved for resolution at a later point, if appropriate.

\*      \*      \*

## IV. CONCLUSION

For the foregoing reasons, the Court shall **GRANT** the Nonpartisan Plaintiffs' [145] Motion for Partial Summary Judgment, **GRANT** the Democratic Party Plaintiffs' [146] Motion for Partial Summary Judgment, and **PERMANENTLY ENJOIN** Defendants EAC, its Commissioners, and its Executive Director, from taking any action to implement or give effect to Section 2(a) of Executive Order No. 14,248, including taking any action based on the Executive Order to modify the content of the Federal Form to require documentary proof of U.S. citizenship.

The Court shall **GRANT IN PART** and **DENY IN PART** the Federal Defendants' [162] Cross-Motion and **DENY** the Defendant-Intervenor's [161] Cross-Motion, **DENYING** Defendants' cross-motions for summary judgment on Plaintiffs' claims regarding Section 2(a) but **GRANTING IN PART** the Federal Defendants' cross-motion insofar as it seeks dismissal of the Democratic Party Plaintiffs' Administrative Procedure Act claims for lack of final agency action. The Court shall **DISMISS** these claims **WITHOUT PREJUDICE**.

Because there is no just reason for delaying the ultimate resolution of the issues presented in Plaintiffs' constitutional separation-of-powers claims regarding Section 2(a), the Court shall enter a final, appealable judgment in Plaintiffs' favor on those claims.

Nothing in this Memorandum Opinion or the accompanying Order shall prevent the named Defendants from taking any lawful action that is not based on the challenged provisions of Executive Order No. 14,248 or any substantially similar instructions by the President.

An appropriate Order accompanies this Memorandum Opinion.


**Dated:** October 31, 2025

COLLEEN KOLLAR-KOTELLY
United States District Judge