**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 25-5476, 25-5478, 26-5099, 26-5102, 26-5182

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE D.C. CIRCUIT**

LEAGUE OF UNITED LATIN AMERICAN CITIZENS, et al.,

*Plaintiffs-Appellees*,

v.

EXECUTIVE OFFICE OF THE PRESIDENT, et al.,

*Defendants-Appellants*,

REPUBLICAN NATIONAL COMMITTEE,

*Intervenor-Defendant-Appellee.*

On Appeal from the U.S. District Court for the
District of Columbia, No. 1:25-cv-946-CKK

# Opening Brief of Appellee Republican National Committee

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com

*Counsel for Appellee*

## CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

### A. Parties and Amici

Appellants are (1) the Executive Office of the President; (2) United States Election Assistance Commission; (3) Brianna Schletz,[1] in her official capacity as Executive Director of the United States Election Assistance Commission; (4) Donald Palmer, in his official capacity as Commissioner and Chairman of the United States Election Assistance Commission; (5) Thomas Hicks, in his official capacity as Commissioner and Vice-Chair of the United States Election Assistance Commission; (6) Christy McCormick, in her official capacity as Commissioner of the United States Election Assistance Commission; (7) Benjamin Hovland, in his official capacity as Commissioner of the United States Election Assistance Commission; (8) United States Department of Justice; (9) Todd Blanche, in his official capacity as Attorney General of the United States; (10) United States Department of Defense; (11) Peter B. Hegseth, in his official capacity as United States Secretary of Defense; (12) Federal Voting

[11] Following resignations and removals, the Election Assistance Commission currently has no commissioners. *See Commissioners*, U.S. Election Assist. Comm. (Aug. 17, 2026), www.eac.gov/about/commissioners. When new commissioners are appointed, they will be "automatically substituted as a party." Fed. R. App. P. 43(c)(2).

Assistance Program; and (13) J. Scott Wiedmann, in his official capacity as Director of the Federal Voting Assistance Program.

Appellee who was an intervenor-defendant in the district court is the Republican National Committee. The RNC is appellant in appeal Nos. 25-5478 and 26-5102, consolidated with this case. Under Federal Rule of Appellate Procedure 26.1, the RNC states that it does not have a parent, subsidiary, or affiliate that has issued shares or debt securities to the public.

Appellees who were plaintiffs in the district court are the (1) League of United Latin American Citizens; (2) Secure Families Initiative; (3) Arizona Students' Association; (4) League of Women Voters of the United States; (5) League of Women Voters of Arizona; (6) Hispanic Federation; (7) National Association for the Advancement of Colored People; (8) OCA - Asian Pacific American Advocates; (9) League of Women Voters Education Fund; (10) Asian and Pacific Islander American Vote; (11) Democratic National Committee; (12) Democratic Governors Association; (13) Democratic Senatorial Campaign Committee; (14) Democratic Congressional Campaign Committee; (15) Charles E. Schumer; and (16) Hakeem S. Jeffries.

Amici in the district court were Lawyers Defending American Democracy, Inc., Kathy Boockvar, Leigh M. Chapman, Mary Estill Buchanan, and Joan Anderson Growe in support of Plaintiffs; and the Republican Party of Arizona, LLC, Restoring Integrity and Trust in Elections, Inc., and Robert Thomas Peterson in support of Defendants. Lawyers Defending American Democracy, Inc., has filed a notice of intent to participate as amicus curiae in this appeal.

**B. Rulings Under Review**

The RNC seeks review under 28 U.S.C. §1291 and Fed. R. App. P. 3 and 4 of the final judgment issued by U.S. District Judge Colleen Kollar-Kotelly of the U.S. District Court for the District of Columbia, *League of United Latin American Citizens v. Executive Office of the President*, Doc. 256, No. 1:25-cv-946 (D.D.C. Mar. 31, 2026), as well as the accompanying orders, *see* Doc. 217 (entered Oct. 31, 2026) and Doc. 235 (entered Jan. 30, 2026), and memorandum opinions, *see* Doc. 218 (entered Oct. 31, 2026) and Doc. 236 (entered Jan. 30, 2026).

**C. Related Cases**

This case has not previously been before this Court or any other court, other than the district court from which Appellants have appealed.

In the district court, case Nos. 25-cv-952 and 25-cv-955 were consolidated with this case.

Counsel for the RNC is aware of the following related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C):

- *Washington v. Trump*, No. 2:25-cv-602 (W.D. Wash.)
- *Washington v. Trump*, No. 26-1429 (9th Cir.)
- *California v. Trump*, No. 1:25-cv-10810 (D. Mass.)
- *California v. Trump*, No. 25-1726 (1st Cir.)

**TABLE OF CONTENTS**

Certificate as to Parties, Rulings & Related Cases ................................ i

Table of Authorities ................................................................................ vi

Glossary ................................................................................................ ix

Introduction .......................................................................................... 1

Statement of Jurisdiction ....................................................................... 3

Statement of the Issues .......................................................................... 3

Pertinent Statutes and Regulations ........................................................ 3

Joinder Statement .................................................................................. 3

Statement of the Case ............................................................................ 4

A. The President issues the Executive Order. ................................. 4

B. Plaintiffs sue. .................................................................................. 7

Summary of the Argument .................................................................... 12

Standard of Review ................................................................................ 13

Argument ............................................................................................... 14

I. The NVRA does not bar a citizenship assessment before distributing a registration form. ............................................... 15

II. Verifying already-required proof of citizenship does not add a signature-authentication requirement. ................................. 22

Conclusion ............................................................................................. 26

Certificate of Compliance ...................................................................... 28

Certificate of Service .............................................................................. 29

Addendum

## TABLE OF AUTHORITIES

### Cases

*Bauer v. FDIC*,
38 F.4th 1114 (D.C. Cir. 2022) .................................................... 13, 14

*California v. Trump*,
786 F. Supp. 3d 359 (D. Mass. 2025) ................................................ 12

*California v. Trump*,
No. 25-1726 (1st Cir.) ..................................................................... 12

*Ex Parte Yarbrough*,
110 U.S. 651 (1884) ......................................................................... 1

*Foley v. Connelie*,
435 U.S. 291 (1978) ......................................................................... 1

*Gonzalez v. Arizona*,
485 F.3d 1041 (9th Cir. 2007) .......................................... 13, 23, 25, 26

*Kennedy v. Comm'r*,
142 F.4th 769 (D.C. Cir. 2025) .......................................................... 25

*LULAC v. Exec. Off. of the President*,
780 F. Supp. 3d 135 (D.D.C. 2025) ................................................ 7, 19

*Maydak v. United States*,
630 F.3d 166 (D.C. Cir. 2010) ............................................................ 14

*Myers v. United States*,
272 U.S. 52 (1926) ........................................................................... 20

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
551 U.S. 644 (2007) ..................................................................... 19, 24

*Scott v. Schedler*,
771 F.3d 831 (5th Cir. 2014) ........................................................ 20, 21

*Trump v. California*,
2026 WL 2473573 ............................................................................ 22

*United States v. Hendrickson*,
949 F.3d 95 (3d Cir. 2020) .......... 24

*Washington v. Trump*,
814 F. Supp. 3d 1173 (W.D. Wash. 2026) .......... 11

*Washington v. Trump*,
No. 26-1429 (9th Cir.) .......... 11

**Statutes**

18 U.S.C. §1015 .......... 5

18 U.S.C. §611 .......... 5

28 U.S.C. §1291 .......... 3

28 U.S.C. §1331 .......... 3

28 U.S.C. §1651 .......... 3

28 U.S.C. §2201 .......... 3

28 U.S.C. §2202 .......... 3

52 U.S.C. §20501 .......... 26

52 U.S.C. §20506 .......... 2, 4, 5, 10, 12, 14, 16, 17, 18, 20, 23

52 U.S.C. §20507 .......... 22

52 U.S.C. §20511 .......... 22

8 U.S.C. §1611 .......... 1, 5, 15, 18

8 U.S.C. §1642 .......... 1, 5, 13, 14, 15, 16, 18, 19, 23, 24, 25

**Regulations**

*Exec. Order 14,248*, 90 Fed. Reg. 14,005
(Mar. 25, 2025) .......... 1, 2, 4, 5, 7, 9, 10, 12, 15, 16, 18, 22

*Interim Guidance on Verification of Citizenship*,
62 Fed. Reg. 61,344 (Nov. 17, 1997) .......... 18, 19

**Rules**

Fed. R. App. P. 28 .................................................................... 3

Fed. R. Civ. P. 56 .................................................................... 14

**Other Authorities**

*Authentication*, Black's Law Dictionary (6th ed. 1990) .......................... 23

*Five Charged in Pennsylvania, New Jersey, and Wisconsin with Illegally Voting, Fraudulent Registration in 2022 or 2024 Election*, Dep't of J. (Sept. 4, 2026), perma.cc/85CE-U5Z2 .................................................... 6

*Form*, Black's Law Dictionary (6th ed. 1990) ........................................ 24

*Formal*, Black's Law Dictionary (6th ed. 1990) ..................................... 23

*Four Aliens Charged With Election Fraud*, Dep't of J. (Sept. 24, 2026), perma.cc/5UJ7-M5PQ ................................................................ 6

H.R. Conf. Rep. 103-66 ............................................................. 25

H.R. Rep. No. 103-9 .................................................................. 25

*Notary Public*, Black's Law Dictionary (6th ed. 1990) ........................... 23

*Other*, Cambridge English Dictionary (2019) ........................................ 24

S. Rep. No. 103-6 ..................................................................... 25

Statement by Governor Mikie Sherrill, NJ.gov (July 21, 2026), perma.cc/95B7-V6JN ............................................................... 6

*Update and Statement from Governor Sherrill on MVC Issue*, NJ.gov (Aug. 19, 2026), perma.cc/NJG9-A7KU ....................................... 5, 6, 21

## GLOSSARY

NVRA ................. National Voter Registration Act

RNC .................... Republican National Committee

## INTRODUCTION

A principle "at the heart of our political institutions" is that "a democratic society is ruled by its people." *Foley v. Connelie*, 435 U.S. 291, 296 (1978). In pursuit of that principle, the government "must have the power to protect the elections on which its existence depends." *Ex Parte Yarbrough*, 110 U.S. 651, 657-58 (1884). Executive Order No. 14,248 seeks to protect those elections.

"Free, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." *Exec. Order 14,248*, *Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005, 14,006 (Mar. 25, 2025). The Executive Order directs various federal agencies to implement election-integrity measures. In particular, it directs federal agencies designated as "voter registration" agencies to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs." *Id.* at 14,007. Those public-assistance agencies already must verify citizenship before providing public benefits. 8 U.S.C. §§1611(a), 1642(a). The Executive Order directs federal agencies to conduct those citizenship checks "prior to providing a Federal voter registration form." 90 Fed. Reg. at 14,007.

The district court nevertheless held that the Executive Order violates federal law. It held that the public-assistance provision violates the National Voter Registration Act, which requires certain public-assistance agencies to distribute voter-registration forms to persons seeking public assistance. 52 U.S.C. §20506(a)(6)(A). But the Executive Order's public-assistance provision contradicts no part of that requirement. It neither prohibits nor conditions distribution of voter-registration forms. Rather, it merely directs federal agencies to conduct their already-mandatory citizenship assessments "prior to providing a Federal voter registration form." 90 Fed. Reg. at 14,007. No federal law prohibits that order of operations.

The government has strong interests in prohibiting noncitizens from registering to vote. By targeting processes in which applicants must already provide proof of citizenship, the public-assistance provision reduces the likelihood that noncitizens will receive voter-registration forms that they cannot lawfully submit, while imposing no burden on the applicants. It also provides useful information to officials that will reduce the likelihood of noncitizens registering and voting. The NVRA doesn't prohibit that sensible step. The district court erred in concluding otherwise.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §1331 because Plaintiffs asserted claims that allege violations of the U.S. Constitution and federal law. *See also* 28 U.S.C. §§1651, 2201, 2202. This Court has jurisdiction under 28 U.S.C. §1291 because the RNC appeals a final decision of the district court. In a final judgment issued on March 31, 2026, the district court disposed of the parties' cross-motions for summary judgment. JA.780-84. The RNC timely filed a notice of appeal on March 31, 2026. JA.785-86.

## STATEMENT OF THE ISSUES

The RNC joins the statement of issues in the Government's opening brief. The issue presented in this brief is whether Section 2(d) of Executive Order No. 14248 violates the National Voter Registration Act.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## JOINDER STATEMENT

The RNC joins the Opening Brief for Federal Defendants-Appellants and incorporates the arguments in that brief by reference. *See* Fed. R. App. P. 28(i).

## STATEMENT OF THE CASE

### A. The President issues the Executive Order.

Last year, President Trump issued Executive Order No. 14248 to "to enforce Federal law and to protect the integrity of our election process." *Protecting the Integrity of American Elections*, 90 Fed. Reg. 14,005, 14,006 (Mar. 25, 2025). Noting that "[f]ree, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic" the order found that "[t]he right of American citizens to have their votes properly counted and tabulated, without illegal dilution, is vital to determining the rightful winner of an election." *Id.* at 14,005. Among other things, the order found that widespread reliance "on self-attestation for citizenship" is an outdated and insufficient safeguard against "foreign nationals voting in Federal elections." *Id.* at 14,005-06. The order directs various federal agencies to formulate and implement measures to bolster the integrity of federal elections. This brief focuses on one directive.

The National Voter Registration Act permits States to designate federal offices as "voter registration agencies" so long as they obtain "the agreement of such offices." 52 U.S.C. §20506(a)(3)(B)(ii). Generally, those

offices must provide the federal voter-registration form to persons seeking public assistance. *Id.* §20506(a)(6)(A). Section 2(d) of the Executive Order requires federal agencies designated as "voter registration" agencies to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs." *Id.* at 14,007.

Federal law contemplates that citizens applying for benefits will provide documentation. It prohibits any "alien who is not a qualified alien" from receiving "any Federal public benefit." 8 U.S.C. §1611(a). Federal public assistance agencies thus "requir[e] verification that a person applying for a Federal public benefit … is a qualified alien and is eligible to receive such benefit." *Id.* §1642(a). Citizens establish eligibility by "provid[ing] proof of citizenship" when applying. *Id.* §1642(a)(2)-(b). If the enrollee is not a U.S. citizen, they would likely be unqualified to receive a public benefit, and would be unqualified to register to vote. *See* 18 U.S.C. §§611, 1015.

Recent registration problems demonstrate the necessity of citizenship checks. Just this summer, New Jersey removed 5,100 noncitizens from its voter rolls. *See Update and Statement from Governor Sherrill on MVC Issue*, NJ.gov (Aug. 19, 2026), perma.cc/NJG9-A7KU. New Jersey

officials discovered "a serious software error in New Jersey's Motor Vehicle System [that] led to the registration of roughly 6,600 people who indicated that they were not U.S. citizens between June 2023 and June 2024." Statement by Governor Mikie Sherrill, NJ.gov (July 21, 2026), perma.cc/95B7-V6JN. "[A]pproximately 340" of those noncitizens voted in New Jersey's elections. *Update and Statement*, *supra*. Meanwhile, the Justice Department has charged many individuals across the country for illegally voting or fraudulent registration as a non-citizen. *E.g.*, *Five Charged in Pennsylvania, New Jersey, and Wisconsin with Illegally Voting, Fraudulent Registration in 2022 or 2024 Election*, Dep't of J. (Sept. 4, 2026), perma.cc/85CE-U5Z2; *Four Aliens Charged With Election Fraud*, Dep't of J. (Sept. 24, 2026), perma.cc/5UJ7-M5PQ.

The Executive Order contained several other provisions challenged here. Sections 2(b) and 3(a) require certain federal agencies to share citizenship data with States and other federal agencies. Section 4(a) conditions funding to States on their acceptance and use of the federal mail voter-registration form (including Section 2(a)'s proof-of-citizenship requirement). And Section 7 directs the Attorney General and the Election

Assistance Commission to enforce a policy prohibiting States from counting mail-in ballots that are received after Election Day.

### B. Plaintiffs sue.

Within a week of the President issuing the Executive Order, three groups sued. JA.78, 160, 274. When Plaintiffs filed their complaints, the time period that the Commission had to take "appropriate action" to revise the national mail voter registration form to require proof of citizenship had not run. 90 Fed. Reg. at 14,006. President Trump specifically gave the Commission "30 days" to take such "appropriate action." *Id.* Yet in April, Plaintiffs moved for a preliminary injunction prohibiting the Commission from acting on the citizenship directive and other provisions in the Executive Order. The court preliminarily enjoined much of the Executive Order, including enforcement of Section 2(d)'s public-assistance provision. *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 225 (D.D.C. 2025).

The RNC then moved to intervene. The district court granted the motion, holding that "[t]he RNC has standing both in its own right ('organizational' standing) and standing to represent the interests of its members ('associational' standing) to defend those provisions of the

Executive Order that directly benefit the electoral prospects of Republican candidates for federal office." Order Granting Intervention at 6, Dkt. #135 (June 12, 2025). Because the RNC satisfied the remaining intervention elements, the Court granted the motion concerning Plaintiffs' "claims for relief from the implementation of Sections 2(a), 2(b), 2(d), 3(a), and 7(a)." *Id.* at 12. The parties cross-moved for summary judgment, briefing Section 2(a)'s proof-of-citizenship issues separate from the other issues.

On the Section 2(a) issues, the district court rejected the Government's argument that the claims were not ripe because the Election Assistance Commission had not even begun the rulemaking process for regarding the proof-of-citizenship requirement. JA.615-25. It then held that Plaintiffs had a right to seek equitable relief on their claims that the President's directive in Section 2(a) lies outside his constitutional powers and intrudes into the domain of regulating federal election procedure. JA.625-31. On the merits, the court held Section 2(a) invalid "because the Constitution grants the President no authority to direct the [Election Assistance Commission] to change the content of the Federal Form, and Congress has not delegated any such power to him." JA.631.

A few months later, the district court resolved the remaining claims, including the challenge to Section 2(d)'s requirement that "[t]he head of each Federal voter registration executive department or agency (agency) under the National Voter Registration Act" to "assess citizenship prior to providing a Federal voter registration form to enrollees of public assistance programs." 90 Fed. Reg. at 14,007. After finding that the Democratic Party Plaintiffs had standing to challenge Section 2(d), the court held that they also "have an equitable right of action to challenge Section 2(d) on constitutional separation-of-powers grounds." JA.725-26. Because Plaintiffs argued that the President "act[ed] in the total absence of authority from Congress in a domain that the Constitution assigns to Congress and the States," the court concluded that "Plaintiffs have an equitable right of action to raise this constitutional challenge in federal court, notwithstanding the absence of a viable APA claim or ultra vires challenge to an agency's compliance with a statute." JA.726.

On the merits, the district court held that "Section 2(d) is inconsistent with the constitutional separation of powers." JA.726. The court observed that under the NVRA, federal voter-registration agencies "shall" make the federal voter-registration form available and "provide it

'with each application' for 'service or assistance' unless the applicant declines 'in writing' to register to vote." JA.726 (quoting 52 U.S.C. §20506(a)(4)(A)(i), (6)(A)). The court reasoned that "[t]his mandatory duty … leaves no discretion for Executive Branch agencies to 'assess citizenship prior to providing' the Federal Form to 'enrollees of public assistance programs.'" JA.726 (quoting 90 Fed. Reg. at 14,007). The court also thought that Section 2(d) violated the NVRA's provision that the federal voter-registration form "may not include any requirement for notarization or other formal authentication." 52 U.S.C. §20508(b)(3). Finally, the district court found that the President lacked any constitutional or statutory authority to direct federal agencies to conduct citizenship checks in the manner required by Section 2(d). JA.728-30.

Based on those findings, the court concluded that "the NVRA leaves no role for agencies to assess citizenship, and the President lacks any lawful authority to contravene the NVRA by requiring agencies to do so." (cleaned up). JA.731. It thus granted summary judgment to Plaintiffs on their separation-of-powers claim, issuing a declaratory judgment and permanent injunction against enforcement of Section 2(d). JA.731-32. But because Plaintiffs had "not shown final agency action implementing

Section 2(d)," granted "summary judgment in Defendants' favor" on the claims challenging Section 2(d) under the Administrative Procedure Act. JA.720. The court deferred ruling on "the remaining claims regarding Section 2(d)," stating that they "would benefit from further factual development." JA.720. It issued a final judgment on March 31, 2026. JA.780.

Meanwhile, two other lawsuits in Washington and Massachusetts challenged Executive Order No. 14248 on grounds similar to those raised here. Both lawsuits proceeded on summary judgment, but the appeals are slightly ahead of this one. In the Washington case, the district court held that because Section 2(d)'s public-assistance provision "does not apply to any state-level agencies, Plaintiffs had not established Article III standing for their challenge to §2(d)." *Washington v. Trump*, 814 F. Supp. 3d 1173, 1201 (W.D. Wash. 2026). The court thus dismissed the challenges to Section 2(d) "for lack of subject matter jurisdiction." *Id.* at 1208. That case is on appeal, but briefing in the Ninth Circuit is stayed pending resolution of the district court proceedings. *See Washington v. Trump*, No. 26-1429 (9th Cir.).

In the Massachusetts case, the district court held that the President does not have power "to command agencies to 'assess citizenship prior to

providing' the Federal Form to 'enrollees of public assistance programs.'" *California v. Trump*, 786 F. Supp. 3d 359, 384 (D. Mass. 2025) (quoting 90 Fed. Reg. at 14,005). It thus preliminarily enjoined the federal defendants from "implementing Section 2(d)." *Id.* at 397. The Government appealed, and argument is currently scheduled for December 9, 2026. *See California v. Trump*, No. 25-1726 (1st Cir.).

## SUMMARY OF THE ARGUMENT

United States citizenship is a basic qualification for many privileges in American society. Many federal benefits, for example, require recipients to be either a citizen or qualified alien. And citizenship is baseline voter qualification in every State. Section 2(d) of the Executive Order recognizes both realities, directing federal agencies who provide public benefits to assess applicants' citizenship before they receive voter-registration forms. 90 Fed. Reg. at 14,007. No federal law forbids that order of operations.

**I.** The NVRA requires public-assistance agencies to hand out voter registration forms to applicants who want one. 52 U.S.C. §20506(a). But it doesn't bar them from assessing citizenship. To the contrary, other federal laws *require* those public-assistance agencies to assess citizenship. 8

U.S.C. §1642. Section 2(d) structures those two requirements by directing agencies to perform the citizenship check first, and then hand out the registration form. Nothing about that order of operations contradicts the NVRA's requirement to distribute the federal voter-registration form.

**II.** Nor does Section 2(d) conflict with the NVRA's prohibition on adding signature verification to the federal form. The NVRA generally prohibits adding a "requirement for notarization or other formal authentication" to the federal mail-registration form. 52 U.S.C. §20508(b)(3). In context, those words refer to attempts to verify "the signature of the applicant." *Id.* §20508(b)(1), (3). But a citizenship assessment required by federal law has nothing to do with verifying signatures. *See Gonzalez v. Arizona*, 485 F.3d 1041, 1050 (9th Cir. 2007).

For these reasons, the district court erred in holding that Section 2(d) of the Executive Order conflicts with the NVRA. This Court should reverse.

## STANDARD OF REVIEW

This Court reviews orders disposing of cross-motions for summary judgment de novo. *Bauer v. FDIC*, 38 F.4th 1114, 1121 (D.C. Cir. 2022). Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court likewise reviews de novo "purely legal questions of statutory and regulatory interpretation." *Bauer*, 38 F.4th at 1121. Defendants are "entitled to a judgment as a matter of law" on an issue if Plaintiffs "failed to make a sufficient showing on an essential element" of their case "with respect to which [they have] the burden of proof." *Maydak v. United States*, 630 F.3d 166, 181 (D.C. Cir. 2010) (cleaned up).

## ARGUMENT

Section 2(d) of the Executive Order creates no new requirements for voter-registration applicants. Instead, it orders two steps that executive officials are already required to take: first, they check the citizenship of an applicant. 8 U.S.C. §1642. Then, they hand them the federal voter-registration form. 52 U.S.C. §20506(a)(6)(B)(i). Section 2(d) requires nothing more. And no federal law prohibits that eminently sensible order of operations.

The district court found otherwise. It thought that because the NVRA requires "voter registration agencies" to provide public-assistance applicants with a voter-registration form, 52 U.S.C. §20506(a), those

voter-registration agencies must do so *immediately*, before they assess the applicants' citizenship for public benefits. The court also suggested that the NVRA's prohibition against signature "notarization or other formal authentication" implicitly prevents assessing citizenship before handing out voter-registration applications. 52 U.S.C. §20508(b)(1), (3). Neither provision conflicts with Section 2(d)'s modest timing requirement, which tells public-assistance agencies how to order two existing statutory commands.

## I. The NVRA does not bar a citizenship assessment before distributing a registration form.

Federal law prohibits any "alien who is not a qualified alien" from receiving "any Federal public benefit." 8 U.S.C. §1611(a). Federal public assistance agencies must ensure that anyone receiving covered benefits is either a citizen or a qualified alien. *Id.* §1642(a). Citizens meet this requirement by "provid[ing] proof of citizenship." *Id.* §1642(a)(2)-(b). Plaintiffs did not challenge any portion of this verification system. And the district court's order did not question any of those citizenship verifications for public benefits. The Executive Order, including Section 2(d)'s public-assistance provision, must be read "consistent" with this "applicable law," 90 Fed. Reg. at 14,010, which already requires federal agencies

to assess the citizenship status of persons seeking public assistance, 8 U.S.C. §1642(a)(1)-(2).

No federal law prohibits assessing citizenship of public-assistance applicants before doling out voter-registration forms. The district court found that the NVRA implicitly forbids assessing the citizenship of public-assistance applicants before they receive a voter-registration form. But no text supports that strained reading.

The NVRA carefully prescribes who, what, and how voter-registration forms are provided to public-assistance applicants. The statute requires "voter registration agencies" to provide public-assistance applicants with a voter-registration form after verifying that the applicant wants the form. 52 U.S.C. §20506(a). "[V]oter registration agencies" largely consist of state offices "that provide public assistance." *Id.* §20506(a)(2)(A). But States can designate federal offices as voter-registration agencies "with the agreement of such offices." *Id.* §20506(a)(3)(B)(2). Section 2(d) of the Executive Order applies only to those "Federal" offices that run "public assistance programs." 90 Fed. Reg. at 14,007.

Voter-registration agencies must follow a detailed process for handing out voter-registration forms. First, they must "provide a form" that asks public-assistance applicants if they would "like to apply to register to vote." 52 U.S.C. §20506(a)(6)(B)(i). The form must clarify that registering or declining to register will not affect the provision of public assistance. And the form must indicate that public officials can "help in filling out the voter registration application form." *Id.* §20506(a)(6)(B)(iv).

Only if the applicant chooses to register must the agency distribute one of two voter-registration forms. *Id.* §20506(a)(4)(A)(i), (a)(6). First, the agency can distribute the federal "mail voter registration application form" developed by the Election Assistance Commission. *Id.* §20506(a)(6)(A)(i). Alternatively, the agency can distribute their "office's own form if it is equivalent to the [federal mail-registration] form." *Id.* §20506(a)(6)(A)(ii). But the agency need not distribute either form if the "applicant, in writing, declines to register to vote." *Id.* §20506(a)(6)(A) (flush language).

Other federal laws require those same agencies to assess the citizenship status of public-assistance applicants. "Federal public benefit[s]" are generally available only to U.S. citizens or "qualified alien[s]." 8

U.S.C. §1611(a). Congress contemplated that a citizen applying for a public benefit would "provide proof of citizenship." *Id.* §1642(a)(2). And the agency must use "verification" procedures to ensure that the applicant "is a qualified alien and is eligible to receive such benefit." *Id.* §1642(a)(1); *see also Interim Guidance on Verification of Citizenship*, 62 Fed. Reg. 61,344, 61,348 (Nov. 17, 1997) (describing appropriate verification procedures).

Section 2(d) orders these procedures. Citizenship verification precedes voter application. Section 2(d) is nothing but a timing requirement: the "head" of each voter-registration agency "shall assess citizenship *prior to* providing a Federal voter registration form to enrollees of public assistance programs." 90 Fed. Reg. at 14,007 (emphasis added). Nothing in the NVRA or other federal statute prohibits that order of operations.

The district court resisted this plain reading by inventing a distinction between "applicants for public assistance" and "recipients of public assistance." JA.729 (cleaned up). Noting that voter-registration agencies must provide voter-registration forms "with each application" for "service or assistance," 52 U.S.C. §§20506(a)(4), (a)(6), the district court reasoned that "*[a]pplicants* for public assistance programs are entitled to the

Federal Form—not *recipients* of public assistance who have complied with whatever identification requirements those public assistance programs impose," *LULAC*, 780 F. Supp. 3d at 210. But the distinction between "applicants" and "recipients" is of the court's own making. It exists in neither the public-benefit statutes nor the NVRA.

Indeed, the public-benefit statutes contradict the district court's reading. They provide for "verification that a person *applying for* a Federal public benefit" is a citizen or qualified alien. 8 U.S.C. §1642(a) (emphasis added). The implementing regulations thus describe the law as "requiring verification that an *applicant* is a qualified alien eligible to receive federal public benefits under the Act." 62 Fed. Reg. at 61,345 (emphasis added). Because the citizenship checks for public benefits occur on the front end of the application process, §1642 imposes a coequal congressional command that agencies must execute in tandem with their NVRA obligations. The Executive Order "harmonizes the statutes" by providing federal agencies with an order of operations under which they can fulfill both statutory mandates. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 665 (2007). In this way, Section 2(d) "guide[s]" executive agents in their faithful implementation of §1642 and the NVRA

to ensure the "unitary and uniform execution of the laws." *Myers v. United States*, 272 U.S. 52, 135 (1926).

The NVRA leaves plenty of room for this citizenship check. The district court reasoned that "agencies have no discretion to apply their own programs' eligibility criteria when deciding which applicants should receive the Federal Form." JA.729. But Section 2(d) doesn't purport to give them that discretion. It says nothing about "which applicants" should receive the federal form. It merely requires that the citizenship assessment occur before the agency hands out the voter-registration form.

Nor does the NVRA require voter-registration agencies to distribute registration forms simultaneously with applications for services or benefits. Rather, the NVRA requires agencies to provide each applicant with a declination form that contains "boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote." 52 U.S.C. §20506(a)(6)(B)(iii). Only if the applicant checks "yes" must a voter registration agency provide the applicant with the federal voter-registration form. *Id.* The NVRA "clearly absolves the states of providing a voter registration form when the applicant checks 'no.'" *Scott v. Schedler*, 771 F.3d 831, 841 (5th Cir. 2014). The district court's

interpretation reads that sequence out of the NVRA, "introducing an inconsistency into the statute." *Cf. id.* at 840. There's no point giving an applicant the opportunity to decline the federal voter-registration form if the agency must give the applicant the form immediately—before even confirming that she wants it.

The federal government has an interest in knowing whether unqualified applicants are being handed a voter-registration application. And they have an interest in knowing who chooses to accept an application even after being "assessed" as a noncitizen. Those kinds of safeguards might have helped New Jersey, which had to remove 5,100 noncitizens from its voter rolls this summer. *Update and Statement*, *supra*. Those "individuals answered 'no' when asked on a keypad whether they were a U.S. citizen when applying for drivers' licenses and identification cards, but through no fault of their own, the system registered them anyway." *Id.* Confirming citizenship or non-citizenship before handing out registration applications is useful information for the federal government, election officials, and the applicant herself.

Any doubt about the ability to assess citizenship is put to rest by other provisions. The NVRA requires "inform[ing] applicants" of "voter

eligibility requirements; and penalties provided by law for submission of a false voter registration application." 52 U.S.C. §20507(a)(5). And it criminalizes any "person, including an election official" from "procur[ing] or submi[tting] voter registration applications that are known by the person to be materially false, fictitious, or fraudulent." *Id.* §20511(2)(A). The Executive Order must be read "consistent with applicable law." 90 Fed. Reg. at 14,010. And as the Supreme Court recently reminded, that instruction matters. *Trump v. California*, 2026 WL 2473573, at *3 (construing "18 years of age or older" to include properly registered 17-year-olds voting in primary elections). Nothing in the NVRA or any other law prohibits federal agencies from conducting the citizenship assessment required by §1642 before distributing a registration application.

## II. Verifying already-required proof of citizenship does not add a signature-authentication requirement.

The district court manufactured another conflict between Section 2(d) and the NVRA. It suggested that Section 2(d) violates the NVRA's prohibition on adding a "requirement for notarization or other formal authentication" to the federal mail-registration form. JA.728 (citing 52 U.S.C. §20508(b)(3)). But the prohibition against "notarization or other formal authentication" refers to attempts to verify "the signature of the

applicant." 52 U.S.C. §20508(b)(1), (3). It has nothing to do with "requiring documentary proof of citizenship." *Gonzalez*, 485 F.3d at 1050. Nor does it apply to the voter registration process at public-assistance agencies, which is governed by a different NVRA section. *See* 52 U.S.C. §20506(a)(6)(B)(i). And it says nothing to prohibit an agency from performing an already-required citizenship check before it hands out a voter-registration application. *See* 8 U.S.C. §1642.

Context confirms that "authentication" refers to signature verification, not other assessments of identity or qualifications. The role of a "notary public" is to "attest to the authenticity of signatures." *Notary Public*, Black's Law Dictionary (6th ed. 1990). In this context, "authentication" means "the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." *Authentication*, *id.* The notarization clause isn't a broad prohibition against other forms of "[i]dentifying information." 52 U.S.C. §20508(b)(1). The modifier "formal" drives the point home: it means "[r]elating to matters of form," rather than substance. *Formal*, Black's 6th ed., *supra*. "In contradistinction to 'substance,' 'form' means the legal or technical manner or order to be observed in legal instruments or juridical proceedings, or in the

construction of legal documents or processes." *see also Form*, Black's 6th ed., *supra*. So "formal authentication" refers to processes (like notarization) that confirm the document is authentic, not that the underlying substance is true.

Congress's use of the word "other" confirms that the forms of "formal authentication" it referenced are those similar to "notarization." *Id.* §20508(b)(3). "The word 'other' usually indicates that the term that follows it is 'of the same kind as the item or person already mentioned.'" *United States v. Hendrickson*, 949 F.3d 95, 99 n.5 (3d Cir. 2020) (quoting *Cambridge English Dictionary* (2019)). So "other formal authentication" refers to measures to confirm the validity of an application or signature—not evidence of the underlying requirements.

This limitation on formal authentication did not implicitly repeal Congress's command that federal agencies assess the citizenship of public-assistance applicants. *See* 8 U.S.C. §1642. Courts should "not infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all." *Home Builders*, 551 U.S. at 662 (cleaned up). And here, no gymnastics are required

to recognize that the signature-authentication prohibition "does not prohibit documentation requirements." *Gonzalez*, 485 F.3d at 1050.

The district court relied on a House conference report rejecting an amendment to the NVRA to suggest that Congress intended to prohibit requiring proof-of-citizenship. JA.728 (citing H.R. Conf. Rep. 103-66). But "legislative history is not the law and, insofar as it is ever a proper source for divining congressional intent, it is only to *resolve* an ambiguity, not to *create* one by muddying clear statutory language.'" *Kennedy v. Comm'r*, 142 F.4th 769, 781 (D.C. Cir. 2025) (cleaned up). The district court did not find that the NVRA is ambiguous. To the contrary, it thought that "in the specific context of voter registration agencies, Congress was unambiguous." JA.728. So its resort to legislative history was error. Regardless, the conference report shows at most that Congress was "particularly interested in ensuring that election officials continue to make determinations as to applicant's eligibility, such as citizenship, as are made under current law and practice." H.R. Rep. No. 103-9, at 8; *accord* S. Rep. No. 103-6, at 25. That is, Congress did not intend to displace pre-existing citizenship checks. *See* 8 U.S.C. §1642.

For these reasons, the NVRA "plainly allow[s]" the government "at least to some extent, to require their citizens to present evidence of citizenship when registering to vote." *Gonzalez*, 485 F.3d at 1050-51. After all, the NVRA begins with the legislative finding that "the right of *citizens of the United States* to vote is a fundamental right." 52 U.S.C. §20501(a)(1) (emphasis added). The NVRA's express purposes include "protect[ing] the integrity of the electoral process" and "ensur[ing] that accurate and current voter registration rolls are maintained." *Id.* §20501(b)(3)-(4).

Section 2(d) advances the NVRA's goals. It doesn't bar public-assistance applicants from registering to vote. It doesn't condition their receipt of a voter-registration application on proof of citizenship. It doesn't even condition receipt of a voter-registration application on them being a citizen. It merely requires public-assistance agencies to assess citizenship—as they're already required to do—before they distribute a voter-registration form. Nothing in the NVRA prohibits that common-sense practice.

**CONCLUSION**

The Court should reverse the district court's judgment.

Dated: October 14, 2026 Respectfully submitted,

*/s/ Gilbert C. Dickey*

Gilbert C. Dickey
Conor D. Woodfin
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
(703) 243-9423
gilbert@consovoymccarthy.com

*Counsel for Appellee Republican National Committee*

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7)(B) and this Court's scheduling order because it contains 4,819 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Century Schoolbook font.

Dated: October 14, 2026

*/s/ Gilbert C. Dickey*
Gilbert C. Dickey

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above brief was served on all counsel of record via the Court's electronic filing system this 14th day of October 2026.

Dated: October 14, 2026

*/s/ Gilbert C. Dickey*
Gilbert C. Dickey

# ADDENDUM

## TABLE OF CONTENTS


52 U.S.C. §20508 .................... A1

8 U.S.C. §1611 .................... A5

8 U.S.C. §1642 .................... A8

**52 U.S.C. §20506**
**§20506. Voter Registration Agencies**

**(a) Designation**

(1) Each State shall designate agencies for the registration of voters in elections for Federal office.

(2) Each State shall designate as voter registration agencies--

(A) all offices in the State that provide public assistance; and

(B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.

(3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

(B) Voter registration agencies designated under subparagraph (A) may include--

(i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph (2)(B) that provide services to persons with disabilities; and

(ii) Federal and nongovernmental offices, with the agreement of such offices.

(4)(A) At each voter registration agency, the following services shall be made available:

(i) Distribution of mail voter registration application forms in accordance with paragraph (6).

(ii) Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance.

(iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

(B) If a voter registration agency designated under paragraph (2)(B) provides services to a person with a disability at the person's home, the agency shall provide the services described in subparagraph (A) at the person's home.

(5) A person who provides service described in paragraph (4) shall not-

(A) seek to influence an applicant's political preference or party registration;

(B) display any such political preference or party allegiance;

(C) make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(D) make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

(6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall--

(A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance--

(i) the mail voter registration application form described in section 20508(a)(2) of this title, including a statement that--

(I) specifies each eligibility requirement (including citizenship);

(II) contains an attestation that the applicant meets each such requirement; and

(III) requires the signature of the applicant, under penalty of perjury; or

(ii) the office's own form if it is equivalent to the form described in section 20508(a)(2) of this title,

unless the applicant, in writing, declines to register to vote;

(B) provide a form that includes--

(i) the question, “If you are not registered to vote where you live now, would you like to apply to register to vote here today?”;

(ii) if the agency provides public assistance, the statement, “Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.”;

(iii) boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register for purposes of subparagraph (C)), together with the statement (in close proximity to the boxes and in prominent type), “IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.”;

(iv) the statement, “If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private.”; and

(v) the statement, “If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with __________.”, the blank being filled by the name, address, and telephone number of the appropriate official to whom such a complaint should be addressed; and

(C) provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application form as is provided by the office with

regard to the completion of its own forms, unless the applicant refuses such assistance.

(7) No information relating to a declination to register to vote in connection with an application made at an office described in paragraph (6) may be used for any purpose other than voter registration.

* * *

**8 U.S.C. § 1611**

**§ 1611. Aliens who are not qualified aliens ineligible for Federal public benefits**

**(a) In general**

Notwithstanding any other provision of law and except as provided in subsection (b), an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit (as defined in subsection (c)).

**(b) Exceptions**

(1) Subsection (a) shall not apply with respect to the following Federal public benefits:

(A) Medical assistance under title XIX of the Social Security Act (or any successor program to such title) for care and services that are necessary for the treatment of an emergency medical condition (as defined in section 1903(v)(3) of such Act) of the alien involved and are not related to an organ transplant procedure, if the alien involved otherwise meets the eligibility requirements for medical assistance under the State plan approved under such title (other than the requirement of the receipt of aid or assistance under title IV of such Act, supplemental security income benefits under title XVI of such Act, or a State supplementary payment).

(B) Short-term, non-cash, in-kind emergency disaster relief.

(C) Public health assistance (not including any assistance under title XIX of the Social Security Act) for immunizations with respect to immunizable diseases and for testing and treatment of symptoms of communicable diseases whether or not such symptoms are caused by a communicable disease.

(D) Programs, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General, in the Attorney General's sole and unreviewable discretion after consultation with appropriate Federal agencies and departments, which (i) deliver in-kind services at the

community level, including through public or private nonprofit agencies; (ii) do not condition the provision of assistance, the amount of assistance provided, or the cost of assistance provided on the individual recipient's income or resources; and (iii) are necessary for the protection of life or safety.

(E) Programs for housing or community development assistance or financial assistance administered by the Secretary of Housing and Urban Development, any program under title V of the Housing Act of 1949, or any assistance under section 1926c of Title 7, to the extent that the alien is receiving such a benefit on August 22, 1996.

(2) Subsection (a) shall not apply to any benefit payable under title II of the Social Security Act to an alien who is lawfully present in the United States as determined by the Attorney General, to any benefit if nonpayment of such benefit would contravene an international agreement described in section 233 of the Social Security Act, to any benefit if nonpayment would be contrary to section 202(t) of the Social Security Act, or to any benefit payable under title II of the Social Security Act to which entitlement is based on an application filed in or before August 1996.

(3) Subsection (a) shall not apply to any benefit payable under title XVIII of the Social Security Act (relating to the medicare program) to an alien who is lawfully present in the United States as determined by the Attorney General and, with respect to benefits payable under part A of such title, who was authorized to be employed with respect to any wages attributable to employment which are counted for purposes of eligibility for such benefits.

(4) Subsection (a) shall not apply to any benefit payable under the Railroad Retirement Act of 1974 or the Railroad Unemployment Insurance Act to an alien who is lawfully present in the United States as determined by the Attorney General or to an alien residing outside the United States.

(5) Subsection (a) shall not apply to eligibility for benefits for the program defined in section 1612(a)(3)(A) of this title (relating to the supplemental security income program), or to eligibility for benefits

under any other program that is based on eligibility for benefits under the program so defined, for an alien who was receiving such benefits on August 22, 1996.

**(c) "Federal public benefit" defined**

(1) Except as provided in paragraph (2), for purposes of this chapter the term "Federal public benefit" means--

(A) any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States; and

(B) any retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of the United States or by appropriated funds of the United States.

(2) Such term shall not apply--

(A) to any contract, professional license, or commercial license for a nonimmigrant whose visa for entry is related to such employment in the United States, or to a citizen of a freely associated state, if section 141 of the applicable compact of free association approved in Public Law 99-239 or 99-658 (or a successor provision) is in effect;

(B) with respect to benefits for an alien who as a work authorized nonimmigrant or as an alien lawfully admitted for permanent residence under the Immigration and Nationality Act qualified for such benefits and for whom the United States under reciprocal treaty agreements is required to pay benefits, as determined by the Attorney General, after consultation with the Secretary of State; or

(C) to the issuance of a professional license to, or the renewal of a professional license by, a foreign national not physically present in the United States.

**8 U.S.C. §1642**
**§1642. Verification of eligibility for Federal public benefits**

**(a) In general**

(1) Not later than 18 months after August 22, 1996, the Attorney General of the United States, after consultation with the Secretary of Health and Human Services, shall promulgate regulations requiring verification that a person applying for a Federal public benefit (as defined in section 1611(c) of this title), to which the limitation under section 1611 of this title applies, is a qualified alien and is eligible to receive such benefit. Such regulations shall, to the extent feasible, require that information requested and exchanged be similar in form and manner to information requested and exchanged under section 1320b-7 of Title 42. Not later than 90 days after August 5, 1997, the Attorney General of the United States, after consultation with the Secretary of Health and Human Services, shall issue interim verification guidance.

(2) Not later than 18 months after August 22, 1996, the Attorney General, in consultation with the Secretary of Health and Human Services, shall also establish procedures for a person applying for a Federal public benefit (as defined in section 1611(c) of this title) to provide proof of citizenship in a fair and nondiscriminatory manner.

(3) Not later than 90 days after August 5, 1997, the Attorney General shall promulgate regulations which set forth the procedures by which a State or local government can verify whether an alien applying for a State or local public benefit is a qualified alien, a nonimmigrant under the Immigration and Nationality Act, or an alien paroled into the United States under section 212(d)(5) of the Immigration and Nationality Act for less than 1 year, for purposes of determining whether the alien is ineligible for benefits under section 1621 of this title.

**(b) State compliance**

Not later than 24 months after the date the regulations described in subsection (a) are adopted, a State that administers a program that provides a Federal public benefit shall have in effect a verification system that complies with the regulations.

**(c) Authorization of appropriations**

There are authorized to be appropriated such sums as may be necessary to carry out the purpose of this section.

**(d) No verification requirement for nonprofit charitable organizations**

Subject to subsection (a), a nonprofit charitable organization, in providing any Federal public benefit (as defined in section 1611(c) of this title) or any State or local public benefit (as defined in section 1621(c) of this title), is not required under this chapter to determine, verify, or otherwise require proof of eligibility of any applicant for such benefits.